United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 05, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § | **Case No. 26-90338 (CML)** |
| | § | |
| **AXIP ENERGY SERVICES, LP, *et al*.,** | § | **(Chapter 11)** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |

**ORDER (A) APPROVING (I) BIDDING PROCEDURES,
(II) FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND
SALE HEARING, AND (III) ASSUMPTION AND ASSIGNMENT PROCEDURES;
(B) DESIGNATING STALKING HORSE BIDDER AND AUTHORIZING DEBTORS
TO PROVIDE BID PROTECTIONS; (C) SCHEDULING AUCTION, SALE HEARING,
AND RELATED DEADLINES; (D) APPROVING (I) SALE OF SUBSTANTIALLY ALL
OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, AND (II) ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-referenced debtors and debtors in

possession (collectively, the "***Debtors***") for entry of an order (this "***Order***") (a) authorizing and

approving the bidding procedures, substantially in the form attached hereto as **Exhibit 1** (the

"***Bidding Procedures***"), in connection with one or more sale transactions (each, a

"***Sale Transaction***") of: all or substantially of the Debtors' assets (collectively, the "***Assets***");

(b) authorizing the Debtors to designate Service Compression, LLC as the stalking horse bidder

(the "***Stalking Horse Bidder***") for substantially all of the Assets, offer the Stalking Horse Bidder

certain bid protections in accordance with the terms of the Stalking Horse Agreement (the

"***Bid Protections***"), and execute the agreement (the "***Stalking Horse Agreement***") with the

---

[1]     The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825). The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion and Bidding Procedures.

4911-9555-5460

Stalking Horse Bidder; (c) scheduling an auction in connection with the Sale Transaction(s) (the "*Auction*"), hearing dates in connection with the approval of the Sale Transaction(s) (the "*Sale Hearing*"), and other deadlines with respect to the Sale Transaction(s); (d) approving the form and manner of notice of the Sale Transaction(s), the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "*Sale Notice*"); and (e) approving procedures (the "*Assumption and Assignment Procedures*") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction(s) (collectively, the "*Assigned Contracts and Leases*"), and approving the form and manner of notice to each relevant non-Debtor counterparty (each, a "*Contract/Lease Counterparty*") to an executory contract or unexpired lease regarding the Debtors' proposed assumption and assignment of the Assigned Contracts and Leases, including notice of proposed amounts necessary to cure any defaults thereunder (the "*Cure Costs*"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "*Assumption and Assignment Notice*"); and granting related relief, all as more fully set forth in the Motion and the First Day Declaration and Pacha Declaration; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the First Day Declaration and Pacha Declaration; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors

4911-9555-5460

and their estates, is otherwise fair and reasonable and in the best interests of the Debtors and their estates, their creditors and other parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' property; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY FOUND AND DETERMINED THAT:[3]

1.      Jurisdiction and Venue. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 147 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Statutory and Legal Predicates. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014 of the Bankruptcy Rules, and Local Rules 2002-1, 6004-1, and 9006-1.

3.      Marketing and Sale Process. The Debtors and their advisors engaged in a robust and extensive marketing process before the commencement of these Chapter 11 Cases to solicit and develop the highest or otherwise best offer for the Assets.

4.      Bidding Procedures. The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate under the circumstances and designed to maximize the value of the

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4911-9555-5460

proceeds of the Sale Transaction(s).  The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in all or part of the Assets.  The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

5.     Stalking Horse Agreement.  The Stalking Horse Bid contemplated by the Stalking Horse Agreement satisfies the requirements necessary to be deemed a Qualified Bid.  The Stalking Horse Bid was negotiated by the parties at arms'-length and in good faith by the Debtors and the Stalking Horse Bidder.   The Debtors have demonstrated compelling and sound business justifications for approval of, and authorization to perform under the Stalking Horse Agreement. The Stalking Horse Agreement represents the highest or otherwise best offer the Debtors have received to date as a result of their efforts to market the assets for sale.  The Stalking Horse Bidder is providing a material benefit to the Debtors and their creditors by increasing the likelihood the best possible price for the Debtors' Assets will be received and have thus provided a substantial benefit to the Debtors and their estates.

6.     Bid Protections.  The Bid Protections, as set forth in and to the extent payable under the Stalking Horse Agreement, are an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as allowed superpriority administrative expense claims against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, subordinate only to the Carve-Out, the DIP Superpriority Claims, and the Adequate Protection Claims.  The Bid Protections shall be payable on the terms and under the circumstances set forth in the Stalking Horse Agreement.  The Bid Protections are commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder and are reasonable and appropriate in light of the size and

4911-9555-5460

nature of the proposed sale of the Assets and comparable transactions, the commitments and accommodations of the Stalking Horse Bidder that have been made for the benefit of the Debtors' estates, and the efforts that have and will be expended by the Stalking Horse Bidder. The Bid Protections are a material inducement for and condition of the Stalking Horse Bidder to be bound by the Stalking Horse Agreement.

7.      Designation of Stalking Horse Bidder. Service Compression, LLC shall act as the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, and the Stalking Horse Bid shall be subject to higher and better offers in accordance with the Bidding Procedures and the Stalking Horse Agreement. The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors.

8.      Assumption and Assignment Procedures. The Debtors have articulated good and sufficient business reasons for the Court to find that the Assumption and Assignment Procedures, as set forth in the Motion, are fair, reasonable, and appropriate. The Assumption and Assignment Procedures provide an adequate opportunity for all Contract/Lease Counterparties to raise any objections to the proposed assumption and assignment of the Potential Assigned Contracts and Leases, including the proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

9.      Notice. Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all

5

parties in interest, including those persons and entities entitled to notice pursuant to Bankruptcy Rule 2002.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.      Important Dates and Deadlines**

3.      The schedule set forth below and all other dates and deadlines set forth in the Bidding Procedures are approved, subject to modification in accordance with the Bidding Procedures.

4911-9555-5460

| Date and Time | Event or Deadline |
|---|---|
| **10 days after service of the Assumption and Assignment Notice** | **Assumption and Assignment Objection Deadline.**<br><br>Deadline by which parties must file any Assumption and Assignment Objection. |
| **March 23, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale Objection Deadline**.<br><br>Deadline by which parties must file any Sale Objection. |
| **March 30, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline**. |
| **April 1, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any)**.<br><br>The Auction will be held either (i) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, or (ii) or at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **April 2, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s)**.<br><br>The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **April 3, 2026 at 5:00 p.m. (prevailing Central Time)** | **Supplemental Sale Objection Deadline**.<br><br>Deadline by which parties must file any Supplemental Sale Objection. |
| **April 6, 2026 at 1:00 p.m. (prevailing Central Time)** | **Sale Hearing**. |
| **April 6, 2026** | **Deadline to obtain entry of the Sale Order(s).** |

## B.    Bidding Procedures

4.    The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety, are fully incorporated herein by reference, and shall govern the submission, receipt, and analysis of bids for, and the Auction and sale of, the Assets.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

5.    The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the

7

4911-9555-5460

effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

6.      Any party desiring to submit a bid for all or any of the Assets shall comply with the Bidding Procedures and this Order.  All parties submitting bids determined by the Debtors to be Qualified Bids in accordance with the Bidding Procedures are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the subject Assets.

7.      Subject to this Order, the Bidding Procedures, and the Debtors' obligations under the Stalking Horse Agreement, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, shall have the right to, without limitation, (a) determine which bidders are Qualified Bidders, (b) determine which bids are Qualified Bids, (c) determine which Qualified Bid is the highest or otherwise best offer, (d) designate the second or otherwise best bids as Back-Up Bids, each as it relates to the Auction, (e) reject any bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or this Order, or (iii) contrary to the best interests of the Debtors' estates and their creditors, (f) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates, (g) adjourn and/or cancel the Auction and/or the Sale Hearing in open court without further notice, and (h) withdraw the Motion at any time with or without prejudice.

8.      The Debtors shall have the right to, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, modify the Bidding Procedures, including to, among other things, (a) extend

8

or waive deadlines or other terms and conditions set forth in the Bidding Procedures, (b) adopt new rules and procedures for conducting the bidding and Auction process, or (c) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; *provided*, that such extensions, waivers, new rules and procedures, accommodations, and modifications do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Stalking Horse Agreement, the Bankruptcy Code, or any order of the Court; *provided further*, that, such modifications do not abrogate or modify the Bid Protections without the prior written consent of the Stalking Horse Bidder.

9.       Nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transactions with respect to any Asset with a Qualified Bidder. If the Debtors determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within one business day of the making of such determination.

**C.       Stalking Horse Bid and Bid Protections**

10.       The Debtors are authorized in an exercise of their reasonable business judgment to designate Service Compression, LLC, on account of its Stalking Horse Bid, as the Stalking Horse Bidder. The Bid Protections described in the Motion, the Order, and the Stalking Horse Agreement are approved. The Debtors are authorized, without further order of the Court, to pay the Expense Reimbursement and Break-Up fee on the terms provided in the Stalking Horse Agreement, each of which shall be treated as an allowed superpriority administrative expense claim in the Debtors' Chapter 11 Cases in an amount equal to the Break-Up Fee and Expense Reimbursement (as applicable) under sections 105(a), 503(b)(1), and 507(a)(2) of the Bankruptcy Code, subordinate only to the Carve-Out, the DIP Superpriority Claims, and the Adequate Protection Claims. The Bid Protections shall survive the termination of the Stalking Horse Agreement in accordance with the terms of the Stalking Horse Agreement.

4911-9555-5460

11. The Stalking Horse Bidder is a Qualified Bidder and the bid reflected in the Stalking Horse Agreement is a Qualified Bid, as set forth in the Bidding Procedures.  Subject to the terms of the Bidding Procedures, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids.

12. Except for the Stalking Horse Bidder (to the extent of the Bid Protections), no person or entity shall be entitled to any expense reimbursement, break-up fees, termination fees, or similar type of payment or reimbursement; and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

13. Any deposit provided by the Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures and/or the Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Stalking Horse Agreement (if applicable) and the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

**D.    Auction**

14. If more than one Qualified Bid, in addition to the Stalking Horse Bid, with respect to the same Assets is timely received, the Debtors may conduct an Auction to determine the Winning Bidder with respect to such Assets.

15. If an Auction is held, such Auction shall be held on April 1, 2026 at 9:00 a.m. (prevailing Central Time) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, or at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures.  Any Auction held may be conducted via remote video

4911-9555-5460

or in-person at the Debtors' election.  As set forth more fully in the Bidding Procedures, only Qualified Bidders will be eligible to participate in the Auction.

16.     If no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline, the Debtors shall not conduct an Auction for the Assets, and the Stalking Horse Bidder shall be deemed the Winning Bidder, and the Stalking Horse Bid shall be deemed the Winning Bid.  In such circumstance, the Debtors shall (a) notify this Court in writing that the Auction is cancelled and (b) file a notice of cancellation of the Auction.

**E.     Form and Manner of Sale Notice**

17.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. As soon as reasonably practicable after entry of this Order, the Debtors will cause the Sale Notice to be served upon the parties set forth in the Motion, posted on the Debtors' Case Website and published once in *USA Today* or another publication with similar national circulation.  No other or further notice of any proposed Sale Transaction(s) or Sale Hearing shall be required.

18.     No later than one business day after selection of a Winning Bidder, or as soon as reasonably practicable thereafter, the Debtors will serve upon the parties set forth in the Motion timely and proper notice of the proposed Sale Transaction(s), including, without limitation: (a) the Winning Bidder, (b) the Back-Up Bidder, if applicable, (c) the key terms of the proposed Sale Transaction, and (d) the date, time, and place of the Sale Hearing.

**F.     Sale Hearing and Sale Objection Deadline**

19.     If the Debtors elect to proceed with a Sale Transaction, including the sale contemplated by the Stalking Horse Agreement, pursuant to a sale under section 363 of the Bankruptcy Code, the Debtors will seek entry of an order (a "*Sale Order*") authorizing and approving, among other things, the Sale Transaction(s) in which some or all of the Assets will be sold to the applicable Winning Bidder(s).

11

20.     If any party fails to timely file with the Court and serve a Sale Objection according to the deadlines set forth in the table in paragraph three of this Order, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction(s), including (a) the transfer of all or any of the Assets to the Winning Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (b) the ability of the Stalking Horse Bidder to provide Adequate Assurance, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

21.     If any party fails to timely file with the Court and serve a Supplemental Sale Objection according to the deadlines set forth in the table in paragraph three of this Order, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief consummation and performance of the Sale Transaction(s) with the Winning Bidder, including in relation to (a) the selection of the Winning Bidder and (b) the ability of the Winning Bidder to provide Adequate Assurance, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

22.     The Sale Hearing will be held on **April 6, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)**.  The Sale Hearing may be adjourned by this Court or the Debtors from time to time without further notice than by announcement in open court or through the filing of a notice or other document on this Court's docket.

**G.      Assumption and Assignment Procedures**

23.     The Assumption and Assignment Procedures below are hereby approved and shall be the procedures by which the Debtors will notify Contract/Lease Counterparties to proposed Potential Assigned Contracts and Leases of proposed Cure Costs in the event the Debtors determine to assume and assign such Potential Assigned Contracts and Leases in connection with

4911-9555-5460

the sale of any of the Assets to one or more Winning Bidder(s).  Nothing in this Order shall be deemed to limit the Debtors' ability to negotiate partial assumption and/or assumption and assignment of any of the Potential Assigned Contracts and Leases with Contract/Lease Counterparties on a consensual basis.

a. **Assumption and Assignment Notice**. As soon as reasonably practical after entry of the Bidding Procedures Order, the Debtors will file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty the Assumption and Assignment Notice, which shall include as an exhibit a schedule (the "***Potential Assigned Contracts and Leases Schedule***"), that specifies each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with a Sale Transaction, including the name of each relevant Contract/Lease Counterparty, and the respective Cure Costs, if any, relating to such executory contract or unexpired lease.  The Assumption and Assignment Notice will also (i) state that the Debtors are or may be seeking the sale, assumption, and assignment of the Potential Assigned Contracts and Leases; (ii) state that assumption or assignment of any Potential Assigned Contract or Lease is not guaranteed and is subject to designation by a Winning Bidder and Court approval; (iv) prominently display the deadlines by which Contract/Lease Counterparties must file an Assumption and Assignment Objection (as defined below); and (v) prominently display the date, time, and location of the Sale Hearing.

b. **Assumption and Assignment Objections**. Any objections to the proposed assumption and assignment of any Potential Assigned Contract or Lease on any grounds, *excluding* the ability of the Stalking Horse Bidder or any other Winning Bidder to provide Adequate Assurance (each, an "***Assumption and Assignment Objection***"), must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection, including, if applicable, the cure amount alleged to be owed to the objecting Contract/Lease Counterparty, together with any applicable and appropriate documentation in support thereof; (iv) be filed with the Court no later than ten days after service of the Assumption and Assignment Notice (the "***Assumption and Assignment Objection Deadline***"); and (v) be served on the Objection Notice Parties (as defined below).

c. **Objection Notice Parties**. Each Assumption and Assignment Objection must be filed with the Court and served on the following parties (the "***Objection Notice Parties***") so as to be received no later than the Assumption and Assignment Objection Deadline: (i) counsel to the Debtors, Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas

13

77002, Attn: Paul E. Heath, Matthew J. Pyeatt, and Trevor G. Spears, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; (ii) counsel to the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue New York, New York 10017, Attn: Elisha D. Graff, Dov Gottlieb, and Zachary J. Weiner; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth (Jana.Whitworth@USDOJ.gov); and Ha Nguyen (Ha.Nguyen@USDOJ.gov); (iv) counsel to the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases; and (v) counsel to the Stalking Horse Bidder, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn: Jonathan B. Platt (jplatt@willkie.com); Jeffrey D. Pawlitz (jpawlitz@willkie.com); and Joseph R. Brandt (jbrandt@willkie.com).

d. **Resolution of Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such Assumption and Assignment Objection will be resolved at the Sale Hearing, but such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If an Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

e. **Modification of Assigned Contracts and Leases Schedule**. At any time prior to the closing of any Sale Transaction, the Debtors may: (i) supplement the Potential Assigned Contracts and Leases Schedule with executory contracts or unexpired leases inadvertently omitted therefrom; (ii) remove or add any Potential Assigned Contract or Lease from or to the list of executory contracts and unexpired leases ultimately selected as Potential Assigned Contracts and Leases that the Winning Bidder(s) proposes be assumed and assigned to it in connection with the Sale Transaction(s); and/or (iii) modify the proposed Cure Costs.

f. **Supplemental Assumption and Assignment Notice**. In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly file with the Court, cause to be published on the Case Website, and serve on each relevant Contract/Lease Counterparty a supplemental notice of assumption and assignment (the "*Supplemental Assumption and Assignment Notice*"). Each Supplemental Assumption and Assignment

14

Notice will include the same information as would have been included in the Assumption and Assignment Notice.

g. **Supplemental Assumption and Assignment Objections**. A Contract/Lease Counterparty listed on a Supplemental Assumption and Assignment Notice may file an objection (a "*Supplemental Assumption and Assignment Objection*") on the same bases set forth above. All Supplemental Assumption and Assignment Objections must comply with the requirements set forth above, and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (i) the Assumption and Assignment Objection Deadline; or (ii) seven calendar days following the service of such Supplemental Assumption and Assignment Notice.

h. **Resolution of Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files a Supplemental Assumption and Assignment Objection, the Winning Bidder(s) has designated that it intends to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court to resolve such objection, but such Potential Assigned Contract or Lease shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion. If a Supplemental Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

i. **Failure to Timely File Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty does not timely file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection: (i) the Cure Costs, if any, set forth in the Assumption and Assignment Notice (or Supplemental Assumption and Assignment Notice) shall be controlling, notwithstanding anything to the contrary in any Potential Assigned Contract or Lease or any other document; and (ii) the Contract/Lease Counterparty will be deemed to have consented to the assumption and assignment of the Potential Assigned Contract or Lease and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Potential Assigned Contract or Lease and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Potential Assigned Contract or Lease against the Debtors or the Winning Bidder.

15

4911-9555-5460

If no objections are received with respect to a Potential Assigned Contract or Lease, then the applicable Cure Cost set forth in the Potential Assigned Contracts and Leases Schedule will be binding upon the applicable Contract/Lease Counterparty for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment thereof.  In addition, any Contract/Lease Counterparty that fails to file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection, as applicable, in accordance with the Assumption and Assignment Procedures, will be (i) forever barred from objecting to the Cure Cost with respect to the applicable Potential Assigned Contract or Lease, and the Debtors and the applicable Winning Bidder will be entitled to rely solely upon the Cure Cost set forth in the Potential Assigned Contracts and Leases Schedule; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Winning Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied, or that there is any other objection or defense to the assumption or assignment of the applicable Potential Assigned Contract or Lease.

j.   **Reservation of Rights**. The inclusion of a Potential Assigned Contract or Lease on the Potential Assigned Contracts and Leases Schedule will not: (i) obligate the Debtors or the Winning Bidder to assume any Potential Assigned Contract or Lease listed thereon or obligate the Bidder to take assignment of such Potential Assigned Contract or Lease; or (ii) constitute any admission or agreement of the Debtors or the Winning Bidder that such Potential Assigned Contract or Lease is an executory contract or unexpired lease or that any stated Cure Cost constitutes a claim or right against the Debtors or the Winning Bidder.  Only those Potential Assigned Contracts and Leases that are included on a schedule of assumed and assigned contracts and leases attached to the definitive sale agreement with the Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Winning Bidder.

## H.   Miscellaneous

24.   All persons and entities that participate in the Auction or bidding for any Assets during the Sale Transaction(s) process shall be deemed to have knowingly and voluntarily (a) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, (b) waived any right to a jury trial in connection with any disputes relating to the Bidding

4911-9555-5460

Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, and (c) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

25. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

26. The Debtors are authorized, in consultation with the Consultation Parties, to make changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents in order to facilitate a value-maximizing sale of the Assets without further order of the Court, including, without limitation, the extension of various deadlines and changes to correct typographical and grammatical errors.

27. This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

28. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

29. In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, the Bidding Procedures shall govern in all respects.

30. Unless specifically provided herein, and notwithstanding any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an implication or admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors', or any party in

17

4911-9555-5460

interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, a waiver of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

31.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

32.     The requirements of Bankruptcy Rules 6003, 6004, and 6006, in each case to the extent applicable, are satisfied by the contents of the Motion.

33.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed:  March 05, 2026

_____

Christopher Lopez
United States Bankruptcy Judge

18

4911-9555-5460

## EXHIBIT 1

### Bidding Procedures

4911-9555-5460

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90338 (CML)** |
| | § | |
| **AXIP ENERGY SERVICES, LP**, *et al.*, | § | **(Chapter 11)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | |

## BIDDING PROCEDURES

### Overview

On February 22, 2026 (the "***Petition Date***"), Axip Energy Services, LP ("***Axip***") and its debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***"). The Debtors' chapter 11 cases have been consolidated for procedural purposes under the lead case, Axip Energy Services LP, *et al.*, Case No. 26-90338 (the "***Chapter 11 Cases***").

On [_], 2026, the Court entered an order [Docket No. [_]] (the "***Bidding Procedures Order***"),[2] which approved these procedures (the "***Bidding Procedures***") for the selection of the highest or otherwise best offer or collection of offers to acquire the Assets (as defined below) on the terms and conditions set forth herein.

### Summary of Important Dates

These Bidding Procedures provide interested parties the opportunity to submit competing bids for all or any portion of the Assets (as defined below), and to participate in an auction to be conducted by the Debtors (the "***Auction***"), if necessary.

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are: Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825). The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

[2]   Unless otherwise indicated, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, Bidding Procedures Order, or the Debtors' *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "***DIP Motion***"), as applicable.

4911-9555-5460

The key dates for the sale process are as follows.  Such dates may be extended or otherwise modified by the Debtors, in consultation with the Consultation Parties (as defined below), by filing a notice of such extension or modification on the Court's docket.

| Date and Time | Event or Deadline |
|---|---|
| **10 days after service of the Assumption and Assignment Notice** | **Assumption and Assignment Objection Deadline.** Deadline by which parties must file any Assumption and Assignment Objection. |
| **March 23, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale Objection Deadline**. Deadline by which parties must file any Sale Objection. |
| **March 30, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline**. |
| **April 1, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any)**. The Auction will be held either (i) at the offices of Vinson & Elkins, LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, or (ii) or at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **April 2, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s)**. The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **April 3, 2026 at 5:00 p.m. (prevailing Central Time)** | **Supplemental Sale Objection Deadline**. Deadline by which parties must file any Supplemental Sale Objection. |
| **April 6, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** | **Sale Hearing**. |
| **April 6, 2026** | **Deadline to obtain entry of the Sale Order(s).** |

## Property to Be Sold

The Debtors seek to sell all or substantially all of their assets, referred to herein as the "*Assets*" and, each sale in furtherance of the same, a "*Sale Transaction*".

## Stalking Horse Bidder and Bid Protections

The Debtors have (a) designated Service Compression, LLC as the stalking horse bidder (the "*Stalking Horse Bidder*"), whose Qualified Bid shall serve as the stalking horse bid (the

"*Stalking Horse Bid*") for the Assets, and (b) executed that certain Asset Purchase Agreement, dated as of February 16, 2026 (the "*Stalking Horse Agreement*"), with the Stalking Horse Bidder, which is subject to higher or otherwise better offers.  The Debtors obtained approval of (a) the designation of the Stalking Horse Bidder, (b) the designation of the terms of the Stalking Horse Agreement as the Stalking Horse Bid, and (c) the Bid Protections as defined in and as provided for in the Stalking Horse Agreement.

Without the need for any further action, the Stalking Horse Bidder is a Potential Bidder and a Qualified Bidder (each as defined below).  The Stalking Horse Bid constitutes a Qualified Bid (as defined below).

## Due Diligence

The Debtors have posted copies of all material documents related to the Assets to the Debtors' confidential electronic data room (the "*Data Room*").  To access the Data Room, an interested party must submit to the Debtors or their advisors the following:

1. an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement will govern); and

2. sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (a) has the financial wherewithal to consummate the applicable proposed Sale Transaction and (b) intends to access the Data Room for a purpose consistent with these Bidding Procedures.

Each interested party that meets the above requirements to the satisfaction of the Debtors will be a "*Potential Bidder*." As soon as reasonably practicable, the Debtors will provide all Potential Bidders access to the Data Room; *provided that*, such access will be terminated by the Debtors in their reasonable discretion at any time, including if (a) a Potential Bidder does not become a Qualified Bidder, (b) such Potential Bidder fails to comply with reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction, or (c) these Bidding Procedures are terminated.

Each Potential Bidder will comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction.

Until the Bid Deadline, the Debtors will provide any additional information requested by Potential Bidders that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests will be directed to the Debtors' advisors, Robert Pacha (Pacha@evercore.com), Kevin Putman (Kevin.Putman@evercore.com), and Momin Kahn (Momin.Khan@evercore.com).  Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder, (b) such Potential Bidder fails to comply with reasonable requests for information and due diligence access by the Debtors or their advisors

3

4911-9555-5460

regarding the ability of such Potential Bidder to consummate the applicable proposed Sale Transaction, or (c) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives will be obligated to furnish any information of any kind whatsoever relating to the Assets: (a) to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth above, (iii) if sharing such information would jeopardize the Debtors' trade secrets, or (iv) in the case of competitively sensitive information, is a competitor of the Debtors (except pursuant to "clean team" or other information sharing procedures reasonably satisfactory to the Debtors); and (b) to the extent not permitted by law; provided that nothing in these Bidding Procedures shall modify or limit in any respect the rights of the Stalking Horse Bidder to receive information pursuant to the Stalking Horse Agreement.

### Bidding and Auction Process

### Bid Deadline

A Potential Bidder that desires to make a bid (a "*Bid*") on some or all of the Assets will deliver electronic copies of the Bid, so as to be received no later than **March 30, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Bid Deadline*"); *provided*, that the Debtors may extend the Bid Deadline without further order of the Court subject to providing prior notice to counsel to the Stalking Horse Bidder, all Potential Bidders, counsel to the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent, and counsel to any official committee of unsecured creditors (a "*Committee*"). The submission of a Bid by the Bid Deadline will constitute a binding and irrevocable offer to acquire the Asset(s) specified in such Bid. Any party that does not submit a Bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction (if any).

Bids must be submitted by email to the following:

Vinson & Elkins, LLP
dmeyer@velaw.com
jpeet@velaw.com
pheath@velaw.com
mpyeatt@velaw.com
tspears@velaw.com

Evercore Partners, Inc.
Pacha@evercore.com
Kevin.Putman@evercore.com
Momin.Khan@evercore.com

### Form and Content of Qualified Bids

A Bid must contain a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be

participating in connection with the Bid.  To constitute a "***Qualified Bid***" a Bid must include, at a minimum, the following:[3]

1. <u>Identity of Bidder</u>. A Qualified Bid must fully disclose, the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each equity holder or financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Potential Bidder, Consultation Party, or Qualified Bidder, and/or any insider, officer, or director of the foregoing.  Under no circumstances will any undisclosed principals, equity holders, or financial backers be associated with any Bid.

2. <u>Acquired Property</u>. A Qualified Bid must clearly identify in writing that the Potential Bidder is bidding on all of the Assets, or, if the Potential Bidder is bidding on substantially all Assets or any portion of the Assets, which of the Assets the Potential Bidder is not including in its Bid.

3. <u>Assumed Liabilities</u>. A Qualified Bid must clearly identify the particular liabilities, if any, the Potential Bidder seeks to assume.

4. <u>Purchase Price</u>. A Qualified Bid must specify the price (the "***Purchase Price***") proposed to be paid for the Assets to be purchased.  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors, with the consent of the Consultation Parties.  If bidding for all Assets, the cash component of any Qualified Bid with respect to the Assets must be equal to or in excess of the sum of: (a) the Purchase Price (as defined under the Stalking Hose Agreement) under the Stalking Horse Bid with respect to the applicable Assets; (b) the Bid Protections; and (c) the Minimum Overbid Amount (as defined below); and, for the avoidance of doubt, must be sufficient to repay the DIP Loans in full in cash, provided that the Debtors, in consultation with the Consultation Parties, reserve the right to approve joint Bids that satisfy the foregoing conditions.

5. <u>Form of Consideration</u>. Each Bid (other than a Credit Bid) must be made for cash; provided that any Credit Bid shall include a cash component in an amount sufficient to satisfy the Bid Protections.

6. <u>Joint Bids</u>. The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis; provided that the Bid is otherwise in compliance with the Bidding Procedures and the Potential Bidders have adhered to the restrictions on communications between Potential Bidders, as set forth herein.

---

[3]   For the avoidance of doubt, the Stalking Horse Bid has been deemed a Qualified Bid under the Bidding Procedures Order.

5

7. <u>Deposit</u>. Except with respect to any credit bid, a Bid must be accompanied by a good faith Deposit (as defined below).

8. <u>Proposed Asset Purchase Agreement</u>. A Bid must include, in both PDF and MS-WORD format, an executed purchase agreement (the "***Proposed Purchase Agreement***") marked against the Stalking Horse Agreement pursuant to which the Potential Bidder proposes to effectuate a Sale Transaction, including: (a) a redlined copy of the Proposed Purchase Agreement to show all changes requested by the Qualified Bidder against the Stalking Horse Agreement; (b) specification of the proposed Purchase Price allocation, if applicable; and (c) any requested changed to any exhibits or schedules to the Stalking Horse Agreement.

9. <u>Financial and Adequate Assurance Information</u>. A Bid must contain financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the applicable Sale Transaction, including without limitation:

   a. financial and other information setting forth the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party,

   b. current financial statements or similar financial information certified to be true and correct as of the date thereof,

   c. proof of financing commitments (if needed) to close the applicable Sale Transaction(s) (not subject to, in the Debtors' sole discretion, any unreasonable conditions),

   d. contact information for verification of such information, including any financing sources, and

   e. any other information reasonably requested by the Debtors necessary to demonstrate that the Potential Bidder has the ability to close the applicable Sale Transaction(s) in a timely manner.

10. <u>No Financing or Diligence Outs</u>. A Bid must not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of diligence, or on the receipt of any regulatory or third party approvals other than as explicitly set forth herein, but may be subject to the accuracy at closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

11. <u>Representations and Warranties</u>. A Bid must include the following representations and warranties:

   a. statement that the Potential Bidder had an opportunity to conduct all due diligence regarding the Assets to be purchased under such Bid prior to submitting the Bid,

6

b.  statement that the Potential Bidder relied solely upon its own due diligence in making its Bid and that the Potential Bidder did not rely and will not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever (including by any of the Debtors or their advisors or other representatives) whether express, implied, by operation of law or otherwise, including regarding the completeness of any information provided in connection therewith or the Auction (if any),

c.  statement that the Potential Bidder acknowledges that the Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees,

d.  statement that the Potential Bidder agrees to serve as Back-Up Bidder if its Qualified Bid is selected as the second highest or otherwise best Qualified Bid after the Winning Bid with respect to any of the Assets,

e.  statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid,

f.  statement that all proof of financial ability to consummate the applicable Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct, and

g.  statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

12. Required Approvals

a.  If applicable, a statement that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and pay any related fees.

b.  If applicable, explanation or evidence of the Potential Bidder's plan and ability to obtain all governmental and regulatory approvals to operate or own the applicable Assets, including, an explanation from the Potential Bidder's legal counsel to the Debtors' legal counsel of such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed Purchase Agreement.

c.  Evidence that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties.

13. Authorization. A Bid must include evidence of corporate or other authorization with respect to the submission, execution, and delivery of the Bid, participation in the Auction,

7

4911-9555-5460

and closing the Sale Transaction(s) contemplated by the applicable Proposed Purchase Agreement.

14. <u>Other Requirements</u>.

    a.  A Potential Bidder must agree to serve as a Back-Up Bidder if such bidder's Qualified Bid is selected as the second highest or otherwise best bid after the Winning Bid with respect to the relevant Assets.

    b.  A Bid must be binding, unconditional, and irrevocable until the first business day following the close of any Sale Transaction(s) with the Winning Bidder(s) or, if applicable, the Back-Up Bidder(s), for the applicable Assets.

    c.  Other than the Stalking Horse Bidder, a Potential Bidder must submit a statement that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

    d.  Provide contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.

    e.  Written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the Proposed Purchase Agreement), and such other evidence of ability to consummate the transaction contemplated by the Proposed Purchase Agreement, the Bidding Procedures Order, and the Bidding Procedures, as acceptable in the Debtors' business judgment, in consultation with the Consultation Parties.

    f.  Covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

    g.  Detailed analysis of the value of any non-cash component of the Bid, if any, and back-up documentation to support such value.

**<u>Review of Bids; Designation of Qualified Bids</u>**

The Debtors will evaluate all Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate, in the exercise of their business judgment, based upon the Debtors' evaluation of each Bid.

The Debtors will determine, in their reasonable business judgment and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualify as Qualified Bids (each Potential Bidder that submits such a Qualified Bid being a "***Qualified Bidder***") and will

8

4911-9555-5460

notify each Qualified Bidder of its status as a Qualified Bidder as soon as commercially reasonable following the Bid Deadline.  Counsel to the Debtors will provide copies of the Bids received, or summaries of the material terms of each Qualified Bid, to counsel to the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent and the Committee prior to the Auction; for the avoidance of doubt, in no case will copies of the Bids received or summaries of the material terms of each Qualified Bid be provided to counsel to any Existing Lender unless the Existing Lender has waived, in writing, its right to submit a Bid, including a Credit Bid.

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of its Qualified Bid during the period that such Qualified Bid remains binding as specified herein; *provided*, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.  The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid and to clarify or otherwise improve such Bid such that it may be designated a Qualified Bid.

In evaluating the Bids, the Debtors may take into consideration the following non-binding and non-exclusive factors:

1. the assets and liabilities included in or excluded from the Bid, including any executory contracts or unexpired leases proposed to be assumed;

2. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates;

3. any benefit to the Debtors' estates from any assumption or waiver of liabilities;

4. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing, financial wherewithal to meet all commitments, and required governmental or other approvals;

5. the impact on employees;

6. the impact on trade creditors; and

7. any other factors the Debtors may reasonably deem relevant, consistent with their fiduciary duties.

## Credit Bidding

A Qualified Bidder who is a secured creditor shall be authorized subject to section 363(k) of the Bankruptcy Code to credit bid on a dollar-for-dollar basis any or all of the full amount of the respective secured claim, including any accrued interest, expenses, and fees, for any of the Assets constituting their respective collateral only with respect to the collateral by which such secured creditor is secured (such bid, a "***Credit Bid***"); *provided that*, except with respect to the Existing Lenders (as defined below), the Debtors' rights to contest the right of any Secured

9

4911-9555-5460

Creditor to credit bid are fully preserved; *provided*, *further*, that any Credit Bid shall include a cash component in an amount sufficient to satisfy the Bid Protections.

Notwithstanding anything to the contrary contained herein, DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent (together, the "***Existing Lenders***") or a designee of the foregoing shall be deemed Qualified Bidders for all purposes and shall have the right to bid or credit bid all or any portion of the loans under the DIP Facility, Prepetition Superpriority Facility, and Prepetition ABL Facility pursuant to section 363(k) of the Bankruptcy Code with respect to some or all of the Assets, and any such bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and shall not be prohibited, whether for "cause" under section 363(k) of the Bankruptcy Code or otherwise, from credit bidding; *provided that*, excluding any Credit Bid by the Existing Lenders, a Credit Bid shall not constitute a Qualified Bid if the bid does not (a) include a cash component sufficient to pay in full, all claims for which there are valid, perfected, and unavoidable liens on any Assets included in such Bid that are senior in priority to those of the party seeking to Credit Bid and (b) comply with the terms of any order approving (i) the DIP Motion and (ii) the Bidding Procedures and the Bidding Procedures Order. If a Credit Bid submitted by any Existing Lender has not been withdrawn prior to the commencement of the Auction, such bid shall become irrevocable, subject to the terms of these Bidding Procedures.

## **Deposit**

Notwithstanding anything herein to the contrary and the requirements set forth below, any Deposit required to be made by the Stalking Horse Bidder pursuant to the Stalking Horse Bid shall be governed solely by the terms of the Stalking Horse Agreement.

Other than a Credit Bid (if any), a Bid must be accompanied by a good faith cash deposit in the amount of no less than ten percent (10%) of the Purchase Price (a "***Deposit***"), unless otherwise agreed to by the Debtors (in consultation with the Consultation Parties) and a Potential Bidder. A Deposit must be deposited prior to the Bid Deadline with an escrow agent selected by the Debtors (the "***Escrow Agent***") pursuant to an escrow agreement to be provided by the Debtors. To the extent a Qualified Bidder increases the Purchase Price before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Deposit so that it equals ten percent of the increased Purchase Price.

Within ten business days after the Auction (if any), the Debtors will direct the Escrow Agent to return the Deposits of all bidders, together with interest accrued thereon (if any), other than the Deposits of the Winning Bidder(s) and Back-Up Bidder(s). Within five (5) calendar days after the Back-Up Bid Expiration Date, the Debtors will direct the Escrow Agent to return the Deposit(s) of the Back-Up Bidder(s), together with interest accrued thereon (if any). Upon the authorized return of any such Deposits, the Bid associated therewith will be deemed revoked and no longer enforceable.

Each Winning Bidder's (or, if applicable, Back-Up Bidder's) Deposit (if any) will be applied against the portion of the Purchase Price of its Winning Bid (or, if applicable, Back-Up Bid) upon the consummation of the applicable Sale Transaction. In addition to the foregoing, the Deposit of any Qualified Bidder will be forfeited to the Debtors if (a) the Qualified Bidder attempts

10

to modify, amend, or withdraw its Qualified Bid, except as permitted herein or with the Debtors' prior written consent, during the time the Qualified Bid remains binding and irrevocable or (b) except as provided herein, the Qualified Bidder is selected as a Winning Bidder and fails to enter into the required definitive documentation or to consummate the applicable Sale Transaction in accordance with these Bidding Procedures.

## Auction Procedures

If the Debtors receive more than one Qualified Bid with respect to any of the Assets, the Debtors will conduct the Auction on **April 1, 2026 beginning at 9:00 a.m. (prevailing Central Time)**, or such other date as may be determined by the Debtors in consultation with the Consultation Parties either (a) at the offices of Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, TX 77002, or (b) at such later date and time or other location, as selected by the Debtors.  The Auction will be conducted openly and will be transcribed or recorded.  Only Qualified Bidders and their professionals will be eligible to attend and participate in the Auction. Professionals and/or other representatives of the Debtors and of any of the Consultation Parties will be permitted to attend and observe the Auction.

Each Qualified Bidder will be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any Bid, the bidding, or the Auction.

At the Auction, bidding for the Assets will start with the highest or otherwise best purchase price and/or terms received as determined by the Debtors, in consultation with the Consultation Parties, and will proceed thereafter in minimum bid increments of not less than $500,000.00 (a "*Minimum Overbid Amount*"). The Debtors reserve the right to adapt and may increase or decrease the Minimum Overbid Amount at any time during the Auction; *provided*, *that*, the Minimum Overbid Amount shall not be decreased to an amount less than $250,000.00.  Qualified Bidders may increase their bids at the Auction, including with cash, cash equivalents, or other forms of consideration, including the right of an Existing Lender to credit bid any remaining amount of its secured claims.

The Debtors may, in the exercise of their business judgment, adopt rules for the Auction consistent with these Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse Agreement that the Debtors, in consultation with the Consultation Parties, reasonably determine to be appropriate to promote a competitive auction; *provided that*, such modifications do not abrogate or modify the Bid Protections without the prior written consent of the Stalking Horse Bidder.  Any rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders.  Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction.  The Auction will be conducted openly and will be transcribed or recorded.

11

4911-9555-5460

The Debtors may, in the exercise of their business judgment and upon consultation with the Consultation Parties and subject to any consent rights of the DIP Agent provided in the DIP Documents, identify the highest or otherwise best Qualified Bid(s) as the winning bid(s) (each a "***Winning Bid***" and, the bidder(s) submitting such Bid(s), each a "***Winning Bidder***").  The Debtors, in consultation with the Consultation Parties, may identify which Qualified Bid(s) constitute the second highest or otherwise best Qualified Bid(s) and deem such second or otherwise best Bid(s) as back-up bid(s) (each a "***Back-Up Bid***," and the bidder(s) submitting such Bid(s), each a "***Back-Up Bidder***").  Back-Up Bid(s) will remain open and irrevocable until the earliest to occur of: (a) the applicable "outside date" for consummation of the Sale Transaction(s) contemplated by the Back-Up Bid(s), (b) consummation of the Sale Transaction(s) with a Winning Bidder, and (c) release of such Back-Up Bid(s) by the Debtors in writing (such date, the "***Back-Up Bid Expiration Date***").  If a Sale Transaction with a Winning Bidder is terminated prior to the applicable Back-Up Bid Expiration Date, the applicable Back-Up Bidder with respect to the applicable Asset(s) will be deemed the Winning Bidder for such asset(s) and will be obligated to consummate the Back-Up Bid as if it were the Winning Bid for such asset(s).

Within one business day after the Auction, (a) the Winning Bidder(s) will submit to the Debtors fully executed documentation memorializing the terms of the Winning Bid(s) and (b) the Back-Up Bidder(s) will submit to the Debtors execution versions of the documentation memorializing the terms of the Back-Up Bid(s).  Neither a Winning Bid nor a Back-Up Bid may be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

Subject to the terms of the Stalking Horse Agreement with respect solely to the Stalking Horse Bid, at any time before entry of an order approving any Sale Transaction, the Debtors reserve the right to and may reject the applicable Qualified Bid if such Qualified Bid, in the Debtors' judgment (and in consultation with the Consultation Parties), is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (c) contrary to the best interests of the Debtors and their estates.

### Selection of Winning Bid(s) and Back-Up Bid(s)

No later than one business day following the selection of one or more Winning Bidder(s), the Debtors will file with the Court and post on the website of the Debtors' claims and noticing agent a notice of the Winning Bid(s), Winning Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s), as applicable.  The Debtors will not consider any bids submitted after the conclusion of the Auction unless they determine in good faith, after consulting with the Consultation Parties, that their fiduciary duties require otherwise.

### Consultation Parties

The term "***Consultation Parties***" as used in these Bidding Procedures means (a) the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent and their advisors, (b) the advisors to any official committee of unsecured creditors or other statutory committee appointed in these Chapter 11 Cases, and (c) any other party that the Debtors deem appropriate; *provided that*, that to the extent any Consultation Party submits a Bid for any Assets (including a Credit

12

Bid), such party shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures; *provided further*, notwithstanding anything herein to the contrary, the Debtors will only be required to reasonably consult with any Consultation Party, and any such Consultation Party will not have any consent rights with respect to these Bidding Procedures, except that, for the avoidance of doubt, the Existing Lenders shall retain any consent rights provided under the relevant DIP Documents.  The Debtors will regularly and timely consult and confer with the Consultation Parties in respect of all aspects of the bidding and Auction process in order to maximize value for all parties in interest.

## Notices Regarding Assumption and Assignment

The Debtors will provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Hearing

The Debtors will seek entry of an order authorizing and approving, among other things, the applicable Sale Transaction(s) at a hearing before the Court to be held on **April 6, 2026 at [●] (prevailing Central Time)** (the "*Sale Hearing*").  The Sale Hearing may be adjourned or continued to a later date by the Debtors, in consultation with the Consultation Parties and the Stalking Horse Bidder in the event that the Stalking Horse Bid is a Winning Bid, by sending notice prior to or making an announcement at the Sale Hearing.  No further notice of any such adjournment or continuance will be required to be provided to any party.

The Debtors may elect to seek approval of a Sale Transaction in advance of the Sale Hearing.  To the extent the Debtors determine to do so, notice will be provided for alternative hearing dates and related timelines.

Each Winning Bidder will appear at the Sale Hearing and be prepared to have a representative testify in support of its Winning Bid and the Winning Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under all executory contracts and unexpired leases to be assumed and assigned as part of the applicable Sale Transaction.

Any objection (each such objection a "*Sale Objection*") to (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, (b) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance ("*Adequate Assurance*") or (c) entry of a Sale Order approving the Sale Transaction with the Stalking Horse Bidder must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection, including, if applicable, the Adequate Assurance alleged to be required and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (e) be filed with the Court and be served on the Objection Notice

13

Parties (as defined in the Sale Notice) by the Sale Objection Deadline; *provided*, that the Debtors may extend such Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection will be heard by the Court at the applicable sale hearing (which may be the Sale Hearing).

If the Stalking Horse Bidder is not selected as the Winning Bidder, any objection (each such objection a "*Supplemental Sale Objection*") to (a) the identity of the Winning Bidder, (b) the ability of such Winning Bidder(s) to provide Adequate Assurance, or (c) entry of a Sale Order approving the Sale Transaction(s) with such Winning Bidder(s) must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state with particularity the basis and nature of any objection, including, if applicable, the Adequate Assurance alleged to be required and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (e) be filed with the Court and be served on the Objection Notice Parties (as defined in the Sale Notice) by the Supplemental Sale Objection Deadline; *provided*, that the Debtors may extend such Supplemental Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Supplemental Sale Objection cannot otherwise be resolved by the parties, such objection will be heard by the Court at the applicable sale hearing (which may be the Sale Hearing).

Any party who fails to file a Sale Objection or Supplemental Sale Objection with the Court and serve it on the Objection Notice Parties by the Sale Objection Deadline or Supplemental Sale Objection Deadline, as applicable, will be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the consummation of the applicable Sale Transaction and any related relief requested by the Debtors.

### Consent to Authority as a Condition to Bidding

All Potential Bidders that participate in the bidding process will be deemed to have (a) consented to the core jurisdiction of the Court with respect to these Bidding Procedures, the bid process, the Auction, any Sale Transaction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; (b) waived any right to a jury trial in connection with any disputes relating to any of the foregoing; and (c) consented to the entry of a final order or judgment in any way related to any of the foregoing if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

### Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment in order to facilitate a value-maximizing sale of the Assets, and in consultation with the Consultation Parties, in a manner consistent with their fiduciary duties, applicable law, and the Local Rules and Procedures for Complex Cases in the Southern District of Texas: (a) modify these Bidding Procedures; (b) waive terms and conditions set forth herein with respect to all Potential Bidders; (c) extend the deadlines set forth herein; and (d) announce at the Auction the modified or additional procedures for conducting the Auction; *provided that*, any such modification, extension, or waiver (a) is not

14

inconsistent with the Stalking Horse Agreement, the Bidding Procedures, or any order of this Court entered in connection herewith, and (b) does not abrogate or modify the Bid Protections without the prior written consent of the Stalking Horse Bidder; *provided further* that (a) the Debtors shall not amend these Bidding Procedures, the Bidding Procedures Order, or the bidding process to modify any obligation the Debtors may have under the terms of such document or otherwise to (i) consult with the Existing Lenders and their advisors or (ii) obtain the consent of the Existing Lenders and/or the Required Lenders (as that term is defined in the DIP Credit Agreement), without, in case of either (i) or (ii) above, the consent of the Existing Lenders and/or the Required Lenders, as applicable, and (b) notwithstanding anything to the contrary herein, the Debtors shall not adopt new rules, procedures, or deadlines, or otherwise modify these Bidding Procedures or the Bidding Procedures Order in a manner that alters, limits, or imposes additional requirements on the Existing Lenders and/or the Required Lenders, including (i) requiring the Existing Lenders to include a deposit as part of a Credit Bid (subject to the terms of the DIP Documents) or (ii) imposing additional conditions on their rights to submit a Credit Bid (subject to the terms of the DIP Documents) or to be deemed a Qualified Bidder (and their Bids deemed Qualified Bids). If an Existing Lender determines in good faith that any modification to these Bidding Procedures or the Bidding Procedures Order or any adoption of new rules, procedures, or deadlines would not be consistent with this paragraph, such Existing Lender may seek expedited review before the Bankruptcy Court.

For the avoidance of doubt, nothing in the preceding paragraph shall be interpreted to require the Debtors to consult with any Existing Lender or its advisors with respect to the evaluation and qualification of competing Bids for the Assets included in the Bid or with respect to seeking and/or obtaining information about other Bids, to the extent such Existing Lender submits a Credit Bid.

If a Consultation Party or the U.S. Trustee determines in good faith that any modification to these Bidding Procedures or the Bidding Procedures Order, or any adoption of new rules procedures or deadlines, would not be consistent with this paragraph or these Bidding Procedures or the Bidding Procedures Order, such Consultation Party or U.S. Trustee may file an objection with the Court, and no such modification or adoption shall become effective until such objection is resolved.  Nothing in these Bidding Procedures will obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

## Fiduciary Out

Subject to the terms of the Stalking Horse Agreement with respect solely to the Stalking Horse Bid, nothing in these Bidding Procedures will require the independent member of the executive committee  to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines in good faith, after consultation with counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

15

4911-9555-5460

**EXHIBIT 2**

**Sale Notice**

4911-9555-5460

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | § | Case No. 26-90338 (CML) |
| | § | |
| **AXIP ENERGY SERVICES, LP,** *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | |

---

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that, on February 23, 2026, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed the *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Designating Stalking Horse Bidder; (C) Scheduling Auction, Sale Hearing, and Related Deadlines; (D) Approving (I) Sale Of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief]* [Docket No. [●]] (the "***Bidding Procedures Motion***").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered that certain order [Docket No. [●]] (the "***Bidding Procedures Order***")[2] approving, among other things, the Bidding Procedures, which establishes the key dates and times related the sale of all or substantially all of the Debtors' assets (collectively, the "***Assets***"), including an Auction (if necessary) and a Sale Hearing.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1]  The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825). The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

[3]  To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms in the Bidding Procedures shall control in all respects.

1

4911-9555-5460

> Copies of the Bidding Procedures Order, the Bidding Procedures, the Stalking Horse Agreement, and any other related documents are available: upon visiting the Debtors' restructuring website at  https://dm.epiq11.com/AXIP

### Important Dates and Deadlines

- **Bid Deadline**. Any person or entity interested in bidding on any of the Assets must submit a Qualified Bid on or before **March 30, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Bid Deadline*").

- **Auction**. If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction, which has been scheduled for **April 1, 2026 at 9:00 a.m. (prevailing Central Time)** either (a) the offices of Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002,  or (b) at such later date and time and such other location as selected by the Debtors in accordance with the Bidding Procedures.

- **Sale Objection Deadline**. Any objection (each such objection a "*Sale Objection*") to (a) the sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, (b) the ability of the Stalking Horse Bidder to provide Adequate Assurance, or (c) entry of the Sale Order approving the sale to the Stalking Horse Bidder must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, including, if applicable, the Adequate Assurance alleged to be required and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court by no later than the Sale Objection Deadline, and (e) be served on the Objection Notice Parties (as defined herein) on or before **March 23, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Sale Objection Deadline*").

- **Supplemental Sale Objection Deadline**. If the Stalking Horse Bidder is not selected as the Winning Bidder, any objection (each such objection a "*Supplemental Sale Objection*") to (a) the identity of the Winning Bidder, (b) the ability of such Winning Bidder to provide Adequate Assurance, or (c) entry of the Sale Order approving the sale to such Winning Bidder must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, including, if applicable, the Adequate Assurance alleged to be required and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court by no later than the Supplemental Sale Objection Deadline, and (e) be served on the Objection Notice Parties (as defined herein) on or before **April 3, 2026 at 5:00 p.m. (prevailing Central Time)** (the "*Supplemental Sale Objection Deadline*").

- **Sale Hearing**. A hearing to approve and authorize the sale of any of the Assets to one or more Winning Bidders will be held before the Court on or before **April 6, 2026 at [●] [p.m. / a.m.] (prevailing Central Time)** or such other date as determined by the Court.

2

**Filing Objections**

Sale Objections and Supplemental Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, including, if applicable, the Adequate Assurance alleged to be required and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court by no later than the Sale Objection Deadline or Supplemental Sale Objection Deadline, as applicable, and (e) be served on: (i) counsel to the Debtors, Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath, Matthew J. Pyeatt, and Trevor G. Spears, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; (ii) counsel to the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue New York, New York 10017, Attn: Elisha D. Graff, Dov Gottlieb, and Zachary J. Weiner; (iii) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas, 77002, Attn: Jana Whitworth (Jana.Whitworth@USDOJ.gov); and Ha Nguyen (Ha.Nguyen@USDOJ.gov); (iv) counsel to the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases; and (v) counsel to the Stalking Horse Bidder, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn: Jonathan B. Platt (jplatt@willkie.com); Jeffrey D. Pawlitz (jpawlitz@willkie.com); and Joseph R. Brandt (jbrandt@willkie.com), (such parties, collectively, the "*Objection Notice Parties*").

The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

Any party interested in submitting a Qualified Bid should contact the Debtors' advisors: (a) Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath, Matthew J. Pyeatt, and Trevor G. Spears, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; or (b) Evercore Partners, Inc., 909 Fannin Street, Two Houston Center, 18th Floor, Houston, Texas, 77010, Attn: Robert Pacha, Kevin Putman, and Momin Khan.

**Reservation of Rights**

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures; waive terms and conditions set forth therein with respect to all Potential Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; and alter the assumptions set forth therein; *provided* that the Debtors will not be authorized to make material modifications to the Bidding Procedures without further order of the Court. The Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order. All

3

4911-9555-5460

parties reserve their rights to seek Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE APPLICABLE DEADLINE WILL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A WINNING BIDDER AT THE AUCTION.**

4911-9555-5460

Dated: [_] [_], 2026
Houston, Texas


*/s/  [Draft]*

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew J. Pyeatt (TX 24086609)
Trevor G. Spears (TX 24106681)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
        mpyeatt@velaw.com
        tspears@velaw.com

-and-

David S. Meyer (*pro hac vice* pending)
Jessica C. Peet (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: dmeyer@velaw.com
        jpeet@velaw.com

***Proposed Counsel to the Debtors and Debtors
in Possession***

5

# EXHIBIT 3

## Assumption and Assignment Notice

4911-9555-5460

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90338 (CML)** |
| | § | |
| **AXIP ENERGY SERVICES, LP,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Joint Administration Requested)** |
| | § | |

NOTICE OF PROPOSED ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

---

**PLEASE TAKE NOTE OF THE FOLLOWING DEADLINES:**

**Assumption and Assignment Objection Deadline: Ten days after service of the Assumption and Assignment Notice or such deadline set forth in the applicable Supplemental Assumption and Assignment Notice.**

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On February 23, 2026, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed the *Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Designating Stalking Horse Bidder; (C) Scheduling Auction, Sale Hearing, and Related Deadlines; (D) Approving (I) Sale of Substantially all of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. [●]] (the "***Bidding Procedures Motion***").

2.      On [●], 2026, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered that certain order [Docket No. [●]] (the "***Bidding Procedures Order***") approving, among other things, the Bidding Procedures, which establish the key dates and times related the sale of all or substantially all of the Debtors' assets (collectively, the "***Assets***"), and the Assumption and Assignment Procedures to facilitate the fair and orderly assumption or assumption and assignment of certain executory contracts (the "***Contracts***") or unexpired leases (the "***Leases***") of the Debtors.[2]

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825). The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

[2]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

4911-9555-5460

3.      Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice (this "*Assumption and Assignment Notice*") that they may seek to assume and assign to a Winning Bidder the Contracts or Leases listed on **Exhibit A** attached hereto (each, a "*Potential Assigned Contract or Lease*"). **You are receiving this Assumption and Assignment Notice because you may be a counterparty to a Potential Assigned Contract or Lease (a "*Contract/ Lease Counterparty*") that may be proposed to be assumed and assigned to a Winning Bidder in connection with a Sale Transaction.**

4.      If the Debtors assume and assign to a Winning Bidder a Potential Assigned Contract or Lease to which you are a party, on the closing date of the Sale Transaction, or as soon thereafter as practicable, you will be paid the amount the Debtors' records reflect is owing for **pre-bankruptcy filing arrearages** as set forth on **Exhibit A** (the "*Cure Cost*"). The Debtors' records reflect that all postpetition amounts owing under your Potential Assigned Contract or Lease have been or will be paid and will continue to be paid in the ordinary course until the assumption and assignment of the Potential Assigned Contract or Lease, and that other than the Cure Cost, there are no other defaults under the Potential Assigned Contract or Lease.

5.      The Debtors' inclusion of a Potential Assigned Contract or Lease on **Exhibit A** does not: (a) obligate the Debtors to assume any Potential Assigned Contract or Lease listed thereon or obligate a Winning Bidder to take assignment of such Potential Assigned Contract or Lease; or (b) constitute any admission or agreement of the Debtors that such Potential Assigned Contract or Lease is an executory contract or unexpired lease. Only those Potential Assigned Contracts and Leases that are included on a schedule of assumed and assigned Contracts and Leases attached to the definitive sale agreement with any Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Winning Bidder.

6.      Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each Potential Assigned Contract or Lease listed on **Exhibit A** hereto will be subject to the Debtors' or any Winning Bidder(s)'s right to conduct further confirmatory diligence with respect to the Cure Cost of each Potential Assigned Contract or Lease and to modify such Cure Cost accordingly. In the event that the Debtors or any Winning Bidder(s) determine that your Cure Cost should be modified, you will receive a notice pursuant to the Assumption and Assignment Procedures below, which will provide for additional time for you to object to such modification.

## I.      Assumption and Assignment Procedures

7.      These Assumption and Assignment Procedures set forth below regarding the assumption and assignment of the Potential Assigned Contracts and Leases proposed to be assumed by the Debtors and assigned to the Winning Bidder(s) in connection with one or more Sale Transactions will govern the assumption and assignment of all of the Potential Assigned Contracts and Leases, subject to the payment of any Cure Costs:

**Assumption and Assignment Objections.** Any objections to the proposed assumption and assignment of any Potential Assigned Contract or Lease on any grounds, including without limitation, the amount of the proposed Cure Costs, *excluding* the ability of the Stalking Horse Bidder or any other Winning Bidder to provide adequate assurance of future performance (each,

2

4911-9555-5460

an "***Assumption and Assignment Objection***"), must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order governing the administration of these Chapter 11 Cases; (c) state with specificity the nature of the objection, including, if applicable, the cure amount alleged to be owed to the objecting Contract/Lease Counterparty, together with any applicable and appropriate documentation in support thereof; (d) be filed with the Court no later than ten days after service of the Assumption and Assignment Notice (the "***Assumption and Assignment Objection Deadline***"); and (e) be served on the Objection Notice Parties (as defined below).

**Objection Notice Parties**. Each Assumption and Assignment Objection must be filed with the Court and served on the following parties (the "***Objection Notice Parties***") so as to be received no later than the Assumption and Assignment Objection Deadline: (a) counsel to the Debtors, Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath, Matthew J. Pyeatt, and Trevor G. Spears, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; (b) counsel to the DIP Agent, Prepetition Superpriority Agent, and Prepetition ABL Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue New York, New York 10017, Attn: Elisha D. Graff, Dov Gottlieb, and Zachary J. Weiner; (c) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth (Jana.Whitworth@USDOJ.gov); and Ha Nguyen (Ha.Nguyen@USDOJ.gov); (d) counsel to the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases;  and (e) counsel to the Stalking Horse Bidder, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn: Jonathan B. Platt (jplatt@willkie.com); Jeffrey D. Pawlitz (jpawlitz@willkie.com); and Joseph R. Brandt (jbrandt@willkie.com).

**Resolution of Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files an Assumption and Assignment Objection and the Winning Bidder has designated that it wishes to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such Assumption and Assignment Objection will be resolved at the Sale Hearing, but such contract or lease shall be assumed and assigned only upon satisfactory resolution of the Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion.  If an Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

**Modification of Assigned Contracts and Leases Schedule.** At any time prior to the closing of any Sale Transaction, the Debtors may (a) supplement the Potential Assigned Contracts Schedule with executory contracts or unexpired leases inadvertently omitted therefrom; (b) remove or add any Potential Assigned Contract or Lease from or to the list of executory contracts and unexpired leases ultimately selected as Potential Assigned Contracts and Leases that the Winning Bidder(s) proposes be assumed and assigned to it in connection with the Sale Transaction(s); and/or (c) modify the proposed Cure Costs.

**Supplemental Assumption and Assignment Notice.** In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly file with the Court, cause to

3

be published on the Case Website, and serve on each relevant Contract/Lease Counterparty a supplemental notice of assumption and assignment (the "*Supplemental Assumption and Assignment Notice*").  Each Supplemental Assumption and Assignment Notice will include the same information as would have been included in this notice.

**Supplemental Assumption and Assignment Objections**. A Contract/Lease Counterparty listed on a Supplemental Assumption and Assignment Notice may file an objection (a "*Supplemental Assumption and Assignment Objection*") on the same bases set forth above. All Supplemental Assumption and Assignment Objections must comply with the requirements set forth above, and be filed with the Court and served on the Objection Notice Parties no later than the date that is the later of (a) the Assumption and Assignment Objection Deadline; or (b) seven calendar days following the service of such Supplemental Assumption and Assignment Notice.

**Resolution of Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty timely files a Supplemental Assumption and Assignment Objection, the Winning Bidder(s) has designated that it intends to take assignment of such contract or lease, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court to resolve such objection, but such Potential Assigned Contract or Lease shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assumption and Assignment Objection, to be determined in the Winning Bidder's discretion.  If a Supplemental Assumption and Assignment Objection is not satisfactorily resolved, the Winning Bidder may determine that such contract or lease should not be assigned in connection with the Winning Bidders' Sale Transaction(s), in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Assurance with respect to such executory contract or unexpired lease.

**Failure to Timely File Assumption and Assignment Objections or Supplemental Assumption and Assignment Objections**. If a Contract/Lease Counterparty does not timely file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection: (a) the Cure Costs, if any, set forth in this notice (or Supplemental Assumption and Assignment Notice) shall be controlling, notwithstanding anything to the contrary in any Potential Assigned Contract or Lease or any other document; and (b) the Contract/Lease Counterparty will be deemed to have consented to the assumption and assignment of the Potential Assigned Contract or Lease and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Potential Assigned Contract or Lease and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Potential Assigned Contract or Lease against the Debtors or the Winning Bidder.

If no objections are received with respect to a Potential Assigned Contract or Lease, then the applicable Cure Cost set forth in the Potential Assigned Contracts and Leases Schedule will be binding upon the applicable Contract/Lease Counterparty for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment thereof.  In addition, any Contract/Lease Counterparty that fails to file an Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection, as applicable, in accordance with these Assumption and Assignment Procedures, will be (a) forever barred from objecting to the Cure Costs with respect to the applicable Potential Assigned Contract or Lease, and the Debtors and the applicable Winning

4911-9555-5460

Bidder will be entitled to rely solely upon the Cure Cost set forth in the Potential Assigned Contracts and Leases Schedule; (b) deemed to have consented to the assumption and assignment; and (c) forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Winning Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied, or that there is any other objection or defense to the assumption or assignment of the applicable Potential Assigned Contract or Lease.

## II.    Additional Information

8.    Unless otherwise provided in the Sale Order, the Debtors will have no liability or obligation with respect to defaults relating to the Potential Assigned Contracts and Leases arising, accruing, or relating to a period on or after the effective date of assignment of such Potential Assigned Contract or Lease.

9.    Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Sale Notice may be obtained free of charge at the website https://dm.epiq11.com/AXIP dedicated to the Debtors' Chapter 11 Cases maintained by their claims and noticing agent and administrative advisor, Epiq Corporate Restructuring, LLC.

*[Remainder of page intentionally left blank]*

4911-9555-5460

Dated: [_] [_], 2026
Houston, TX


*/s/  [Draft]*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew J. Pyeatt (TX 24086609)
Trevor G. Spears (TX 24106681)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
        mpyeatt@velaw.com
        tspears@velaw.com

-and-

David S. Meyer (*pro hac vice* pending)
Jessica C. Peet (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: dmeyer@velaw.com
        jpeet@velaw.com

***Proposed Counsel to the Debtors and Debtors
in Possession***

6

4911-9555-5460