United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 07, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90338 (CML)** |
| | § | |
| **AXIP ENERGY SERVICES, LP,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**ORDER (I) APPROVING (A) THE
SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND
(B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (II) GRANTING RELATED RELIEF**

Upon the *Emergency Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Designating Stalking Horse Bidder and Authorizing Debtors to Provide Bid Protections; (C) Scheduling Auction, Sale Hearing, and Related Deadlines; (D) Approving (I) Sale of Substantially all of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 20] (the "*Motion*"),[2] filed by the above-referenced debtors and debtors in possession (collectively, the "*Debtors*") seeking, among other things, entry of an order (the "*Sale Order*") (a) authorizing the sale of the Acquired Assets (as defined in the Stalking Horse Agreement) free and clear of all Liens, Claims, and Interests (as defined herein) (other than Assumed Liabilities and Permitted

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825). The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the DIP Orders (as defined herein), or the Stalking Horse Agreement (as defined herein), as applicable.

1

4910-0832-6797

Encumbrances); (b) authorizing the assumption and assignment of certain Assigned Contracts (as defined in the Stalking Horse Agreement); and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the *Declaration of Robert A. Pacha in Support of the Debtors' (I) Emergency Motion to Obtain Debtor-In-Possession Financing and (II) Motion to Approve Bidding Procedures and Sale* [Docket No. 18] (the "**Pacha Declaration**"), as supplemented by the *Declaration of Robert A. Pacha in Support of Sale* (the "**Supplemental Pacha Declaration**"), to be filed contemporaneously herewith; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the *Order (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Designating Stalking Horse Bidder and Authorizing Debtors to Provide Bid Protections; (C) Scheduling Auction, Sale Hearing, and Related Deadlines; (D) Approving (I) Sale of Substantially all of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 135] (the "**Bidding Procedures Order**"), approving, among other things, the Bidding Procedures for the Assets and the Bid Protections for the Stalking Horse Bidder; and upon the Purchaser and Debtors having executed that certain *Asset Purchase Agreement* dated as of February 16, 2026, by and among the Sellers (as defined in the Stalking Horse Agreement) and

4910-0832-6797

Service Compression, LLC, as Purchaser (together with all ancillary documents, as may be amended, modified, or supplemented, the "***Stalking Horse Agreement***")[3] with respect to the sale of the Acquired Assets (the "***Sale Transaction***") and Service Compression, LLC (the "***Purchaser***") having been chosen as the Winning Bidder for the Acquired Assets pursuant to the Stalking Horse Bid in accordance with the Bidding Procedures; and the Court having conducted a hearing on April 6, 2026, (the "***Sale Hearing***") to consider the relief requested in the Motion as set forth in this Sale Order; and all parties in interest having been heard or having had the opportunity to be heard regarding the Motion, the Sale Transaction, the Stalking Horse Agreement, and all relief set forth herein; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and upon the record of the Sale Hearing and all of the proceedings had before this Court; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary, it is HEREBY FOUND AND DETERMINED THAT:

A.    **Findings and Conclusions**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[3]    A copy of the Stalking Horse Agreement is attached hereto as **Exhibit 1**.

4910-0832-6797

B.    **Jurisdiction**. The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  Without limiting the generality of the foregoing, this Court has exclusive *in rem* jurisdiction over the Assets, including the Acquired Assets, pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b); this Court has the authority to enter a Final Order.

C.    **Venue**. Venue of these chapter 11 cases and approval of the Motion and the Sale Transaction is proper in this district under 28 U.S.C. §§ 1408 and 1409.

D.    **Basis for Relief**. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, and Rules 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019 of the Bankruptcy Rules, rules 4002-1(e) and 9013-1 of the Local Rules, and the Complex Case Procedures. The consummation of the transactions contemplated by the Stalking Horse Agreement and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and the Debtors and the Purchaser have complied with all of the applicable requirements of such sections and rules with respect to such transactions.

E.    **Final Order; Immediate Effect**. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, and notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and

4

4910-0832-6797

authorizes the closing of all transactions contemplated hereby, including, without limitation, the Sale Transaction, without regard to any stay or delay in its implementation.

F. **Incorporation by Reference**. Findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference.

G. **Notice and Opportunity to Object**. Notice of the Motion, the executory contracts and unexpired leases to be assumed and assigned in connection with the Sale Transaction, the Auction, the Sale Hearing, the Sale Transaction, and the deadlines related thereto was provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the DIP Agent, Superpriority Agent, and the Prepetition ABL Agent; (c) counsel to the Prepetition 2L Agent; (d) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (e) counsel to the Committee; (f) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (g) the Internal Revenue Service; (h) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (i) all state attorneys' generals in states where the Assets are located; (j) all municipalities in which the Assets are located; (k) all entities known to have asserted a lien or security interest against any of the Assets; (l) counsel to the Stalking Horse Bidder; (m) all potential bidders previously identified or solicited; and (n) all counterparties to the executory contracts and unexpired leases to be assumed and assigned in connection with the Sale Transaction. *See Certificate of Service* [Docket No. 141].

H. The Debtors served notice substantially in the form of the *Notice of Sale, Bidding Procedures, Auction, and Sale Hearing* attached to the Bidding Procedures Order as **Exhibit 2** (the "*Sale Notice*") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. *See Certificate of Service* [Docket No. 173]. The Debtors

4910-0832-6797

published such Sale Notice in the *Wall Street Journal*. *See Affidavit Re: Publication of Notice of Sale, Bidding Procedures, Auction and Sale Hearing* [Docket No. 143]. Additionally, the Debtors posted the Sale Notice to the Debtors' case information website located at https://dm.epiq11.com/AXIP.

I.       The Debtors served notice substantially in the form of the *Notice of Proposed Assumption and Assignment of Executory Contracts* attached to the Bidding Procedures Order as **Exhibit 3** (the "***Assumption and Assignment Notice***") [Docket No. 155] on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. *See Certificate of Service* [Docket No. 162].

J.       In accordance with the Bidding Procedures, the Debtors filed and served the *Notice of (A) Winning Bidder and (B) Cancellation of Auction* [Docket No. 234]. The Debtors subsequently filed the *Amended Notice of (A) Winning Bidder and (B) Cancellation of Auction* [Docket No. 236]. *See Certificate of Service*. [Docket No. 240].

K.       The notices described in the foregoing paragraphs G-J are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the assumption and/or assignment of the Assigned Contracts, the Auction, the identity of the Winning Bidder, the Sale Hearing, the Sale Transaction, the Cure Costs, the deadline to submit any Assumption and Assignment Objection or Supplemental Assumption and Assignment Objection, the deadline to submit any Sale Objection or Supplemental Sale Objection, and all other deadlines related thereto is or shall be required.

L.       **Assets Property of the Estate**. The Acquired Assets sought to be sold and assigned by the Debtors to the Purchaser pursuant to the Stalking Horse Agreement are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

6

M.     **Compliance with Bidding Procedures**. On March 5, 2026, the Court entered the Bidding Procedures Order approving, among other things, the implementation of the Bidding Procedures, in connection with one or more sales of all, substantially all, or any combination of the Debtors' assets.  The Debtors, the Purchaser, and each of their respective professionals have complied, in good faith and in a non-collusive manner, in all respects with the Bidding Procedures Order and the bidding process was free of any fraud, collusion, or unfair dealing. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets, including the Acquired Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

N.     **Sale Process**.  As demonstrated by the Pacha Declaration, Supplemental Pacha Declaration, and the evidence set forth at the Sale Hearing, the Debtors and their professionals (i) adequately marketed the Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures and (ii) conducted a fair and open sale process.  The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase all or any portion of the Assets, and the process conducted by the Debtors pursuant to the Bidding Procedures Order obtained the highest or best value for the Acquired Assets, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Acquired Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective Bidders have been afforded a reasonable and fair opportunity to bid for the Assets, including the Acquired Assets, or file an

7

objection to the assumption and assignment of any Assigned Contract and/or the Sale Transaction, as the case may be. The sale process undertaken by the Debtors and their professionals and each of their respective agents and other representatives with respect to the Assets, including the Acquired Assets, has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all stakeholders in all respects. The Bid Deadline passed on March 30, 2026, at 5:00 p.m. (prevailing central time).

O.    **Cancellation of Auction**. The Stalking Horse Bidder's Qualified Bid was the only Qualified Bid received by the Bid Deadline with respect to the Acquired Assets. The Debtors therefore determined, in their reasonable business judgment and in a manner consistent with their fiduciary duties and in compliance with the Bidding Procedures Order, to cancel the Auction and identify the Stalking Horse Bidder as the Winning Bidder, pursuant to the notices filed at Docket Nos. 234 and 236. The transactions contemplated by the Stalking Horse Agreement constituted a Qualified Bid in accordance with the Bidding Procedures Order. As established by the record of the Sale Hearing, the Bidding Procedures established by the Bidding Procedures Order, including as it relates to the Auction and cancellation thereof, have been complied with in all material respects by the Debtors and the Purchaser and all of their respective representatives, professionals, and affiliates.

P.    **Highest and Best Offer**. The Sale Transaction, including the form and total consideration to be realized by the Debtors under the Stalking Horse Agreement, (i) constitutes the highest or otherwise best offer received by the Debtors for the Acquired Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

4910-0832-6797

Q.  **Winning Bidder**.  The Purchaser is the designated Winning Bidder, and the Stalking Horse Agreement is designated the Winning Bid for the Acquired Assets enumerated therein in accordance with the Bidding Procedures Order.

R.  **Purchaser**.  On the terms and subject to the conditions contained in the Stalking Horse Agreement, the Purchaser agreed to provide, as aggregate consideration for the Acquired Assets (the "*Purchase Price*"): (i) the assumption of the Assumed Liabilities (including the Purchaser's payment of the Cure Costs) and (ii) the Cash Payment, as that term is defined in the Stalking Horse Agreement.  The allocation of the Purchase Price, determined in accordance with the Stalking Horse Agreement, is valid and enforceable for all purposes.  The Purchaser's and the Debtors' allocations of the Purchase Price are the good faith determination of the value thereof.

S.  **Business Justification; Fiduciary Duties**. The Debtors have demonstrated that entry into and consummation of the Stalking Horse Agreement constitutes the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  The Debtors have demonstrated compelling circumstances for the Sale Transaction outside (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization or liquidation (as the case may be), in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to preserve and to maximize the value of the Debtors' estates.  This Court finds that the Debtors have articulated good and sufficient business reasons justifying the sale of the Acquired Assets to the Purchaser pursuant to the terms and conditions set forth in the Stalking Horse Agreement.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the

4910-0832-6797

Assigned Contracts is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. The Assigned Contracts being assigned to the Purchaser are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates.

T.       The Debtors' decision to enter into the Stalking Horse Agreement and consummate the Sale Transaction constitutes a proper exercise of the fiduciary duties of the Debtors and their directors, officers, and managers. Because the entry into and consummation of the Stalking Horse Agreement constitutes the exercise by the Debtors of sound business judgment, the Debtors, their respective current and former members, managers, officers, directors, employees, advisors, professionals or agents, and the Consultation Parties shall have or incur no liability to the estates or any holder of a Claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Stalking Horse Agreement or the consummation of the Sale Transaction contemplated thereunder, other than liability of the Debtors arising out of or relating to any act or omission that constitutes a breach of the Stalking Horse Agreement, willful misconduct, or fraud, in each case as determined by a court of competent jurisdiction.

U.       **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute the Stalking Horse Agreement and all other documents contemplated thereby, (ii) have all of the power and authority necessary to consummate the Sale Transaction, and (iii) have taken all corporate action necessary to authorize and approve the Stalking Horse Agreement and any actions required to be performed by the Debtors to consummate the Sale Transaction. No further consents or approvals of the Debtors, are required for the Debtors to consummate the Sale Transaction.

10

4910-0832-6797

V.      **Arm's-Length Sale and Purchaser's Good Faith**. The Stalking Horse Agreement was negotiated and is undertaken by the Debtors and Purchaser at arm's length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser (i) recognizes that the Debtors were free to deal with any other party interested in acquiring any of the Assets, including the Acquired Assets, (ii) complied with the Bidding Procedures Order in all respects, and (iii) willingly subjected its Bid to the competitive Bidding Procedures. All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale Transaction have been disclosed, and the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction. As a result of the foregoing, the Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and the Purchaser has proceeded in good faith in all respects in connection with the Sale Transaction specifically and these chapter 11 cases generally.

W.      **No Fraudulent Transfer**. The total consideration provided by the Purchaser pursuant to the Stalking Horse Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, or possession thereof, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Stalking Horse Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia,

11

4910-0832-6797

or any other applicable law. Neither the Debtors nor the Purchaser has entered into the Stalking Horse Agreement or is consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

X. **Free and Clear Transfer Required by Purchaser**. If the Debtors did not sell the Acquired Assets free and clear of all Liens, Claims, and Interests (other than the Assumed Liabilities and Permitted Encumbrances) such a sale would have yielded substantially lower value for the Debtors' estates, with less certainty than the Sale Transaction. The Purchaser would not have submitted a Bid, entered into the Stalking Horse Agreement, and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, their creditors, and holders of their equity interests, if the Sale Transaction and the assignment of the Assigned Contracts to the Purchaser were not free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances). Therefore, the Sale Transaction contemplated by the Stalking Horse Agreement free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

Y. As of the Closing Date, pursuant and subject to the terms of the Stalking Horse Agreement and this Sale Order, the transfer of the Acquired Assets and the Sale Transaction will effect a legal, valid, enforceable, and effective transfer of the Acquired Assets and will vest the Purchaser with all of the Debtors' respective rights, title, and interests in the Acquired Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (other than Assumed Liabilities and Permitted Encumbrances). Notwithstanding anything to the contrary in the Stalking Horse Agreement, neither the Purchaser, nor any person or entity claiming by, through, or on behalf of the Purchaser (including, but not limited to, by operation of law, sale,

12

4910-0832-6797

assignment, conveyance, or otherwise) shall pursue, prosecute, litigate, institute, use offensively or defensively, assert, sell, convey, assign, or file any claim that relates to actual or potential claims and Actions of the Debtors' bankruptcy estates under Sections 547 and 548 of the Bankruptcy Code to the extent such claims constitute Acquired Assets to be transferred to the Purchaser pursuant to the terms of the Stalking Horse Agreement.

Z.      **Satisfaction of Bankruptcy Code Requirements**.  The consummation of the Sale Transaction and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction contemplated hereby.

AA.     **Satisfaction of Section 363(f) Standards**. The Debtors are authorized to sell the Acquired Assets free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each creditor or other person or entity asserting a Lien, Claim, or Interest in the Acquired Assets (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Liens, Claims, and Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Motion are deemed to have consented to the Motion and Sale Transaction pursuant to section 363(f)(2) of the

13

Bankruptcy Code.  Creditors or other persons or entities asserting a Lien, Claim, or Interest in or against the Acquired Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest.  Those holders of Liens, Claims, and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code by having their Liens, Claims, and Interests, if any, in each instance against the Debtors, their estates, or any of the Acquired Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the Acquired Assets in which such holder alleges Liens, Claims, and Interests.

BB.    **No Successor or Other Derivative Liability**. The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not, as of the Petition Date, an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or equity holders exists now or has ever existed between the Purchaser and the Debtors.  The conveyance of the Acquired Assets does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.  The Purchaser's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing Date.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Acquired Assets.  The Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

14

4910-0832-6797

CC.     **Assigned Contracts**. Each and every provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assigned Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code. All counterparties of the Assigned Contracts that did not or do not timely file an objection to the assumption and/or assignment of the Assigned Contract(s) to which they are a counterparty are deemed to consent to the assumption and assignment by the Debtors of their Assigned Contract to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.  Upon the assignment and sale to the Purchaser in accordance with the terms of the Stalking Horse Agreement, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their predecessors, successors or assigns, shall have no further liability or obligation under the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of the Stalking Horse Agreement and, other than with respect to Assumed Liabilities and Permitted Encumbrances, the Purchaser shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date (as defined in the Stalking Horse Agreement) and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any

15

right of recoupment) with respect to such Assigned Contract, that relates to any acts or omissions that arose or occurred prior to the Closing Date (as defined in the Stalking Horse Agreement). The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Purchaser are an integral part of the Sale Transaction and, accordingly, their assumption and assignment are reasonable and an enhancement to the value of the Debtors' estates.

DD.    **Cure Costs and Adequate Assurance**. Pursuant to the Stalking Horse Agreement, the Cure Costs (as defined in the Stalking Horse Agreement) will be paid by the Purchaser in accordance with the terms of the Stalking Horse Agreement. The Purchaser has demonstrated adequate assurance of future performance of each Assigned Contract within the meaning of section 365 of the Bankruptcy Code that is assumed by the Purchaser or any of its permitted assignees to which such Assigned Contract is assumed and assigned by the Debtors, including a promise to perform the Debtors' obligations under such Assigned Contract for periods at or after the Closing Date. The Cure Costs are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts that are assumed. The Purchaser's payment of Cure Costs in accordance with the terms of the Stalking Horse Agreement and promise under the Stalking Horse Agreement to perform the obligations under the Assigned Contracts as of the Closing Date, after the Closing Date, shall constitute adequate assurance of future performance under such Assigned Contracts. Any objections to the Cure Costs, to the extent not otherwise resolved, are hereby overruled. To the extent that any counterparty failed to timely

16

4910-0832-6797

object to its Cure Cost or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Assigned Contract(s) to the Purchaser and to have waived any other defaults or breaches.  The Court finds that with respect to all Assigned Contracts, the payment of the Cure Costs as provided in the Stalking Horse Agreement is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Purchaser, of each Assigned Contract to be assumed and assigned to the Purchaser as of the Closing Date.

EE.    **Assets Assignable**. Each and every provision of the documents governing the Acquired Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Acquired Assets, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.

FF.    **Sale as Exercise of Business Judgment**. Entry into and consummation of the Stalking Horse Agreement constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying the sale of the Acquired Assets to the Purchaser.  Additionally: (i) the Stalking Horse Agreement constitutes the highest and best offer for the Acquired Assets; (ii) the Stalking Horse Agreement and the closing thereon presents the best opportunity to realize the maximum value of the Acquired Assets and avoid a decline and devaluation of the Acquired Assets; (iii) there is risk of deterioration of the value of the Acquired Assets if the Sale Transaction is not consummated

17

promptly; and (iv) the Stalking Horse Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the sale prior to, and outside of, a chapter 11 plan.

GG.   **No Sub Rosa Plan**. The Stalking Horse Agreement and the Sale Transaction do not constitute a *sub rosa* chapter 11 plan.  The Stalking Horse Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

HH.   **DIP Obligations and Application of Proceeds**.  On February 25, 2026, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket. No. 83] (the "**Interim DIP Order**" and the order granting such relief on a final basis [Docket No. 178], the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**").  Pursuant to the DIP Orders, the Assets, including the Acquired Assets, are subject to the DIP Liens, the Adequate Protection Liens, and the Prepetition Secured Liens (in each case, as such terms are defined in the DIP Orders).  For the avoidance of doubt, the sale of the Acquired Assets to the Purchaser shall be free and clear of the DIP Liens, Adequate Protection Liens and Prepetition Secured Liens.  Upon the closing of the Sale Transaction, notwithstanding anything to the contrary herein or in the DIP Orders (but subject to the proviso in this sentence), the Debtors shall use the proceeds from the Sale Transactions to immediately (i) repay in full in cash all of the DIP Obligations (the "**DIP Repayment**"), (ii) pay in full in cash any Adequate Protection payments

18

4910-0832-6797

then due and owing under the DIP Orders, and (iii) pay down in cash with the remainder of the sale proceeds the Prepetition ABL Obligations (the "**ABL Paydown**"); *provided* that the Debtors shall first reserve cash proceeds in an amount equal to the Holdback Amount, as that term is defined herein.  The DIP Repayment and ABL Paydown are integral term of the Sale Transaction and the ABL Paydown constitutes adequate protection of the interests of the Prepetition ABL Secured Parties in their collateral, which is being sold pursuant to the Sale Transaction.  Absent the DIP Repayment and ABL Paydown, the DIP Secured Parties and the Prepetition ABL Secured Parties, respectively, would not have consented to the Sale Transaction and the Debtors would not have been able to provide adequate protection of the Prepetition ABL Secured Parties' interest in their collateral.  The treatment of the DIP Obligations pursuant to the DIP Repayment, and the allocation of proceeds included herein have been negotiated in good faith and at arm's-length among the Debtors and the DIP Secured Parties, and such treatment shall be deemed to have been agreed upon in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The use of the proceeds from the sale of the Acquired Assets to pay the DIP Agent, on behalf of itself and the other DIP Lenders, complies with the requirements of the Final DIP Order and the DIP Documents and is supported by good, sufficient, and sound business reasons.

II.     **Time of the Essence; Waiver of Stay.**  Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the Sale Transaction must be approved and consummated within the time constraints set forth in the Bidding Procedures Order and the Stalking Horse Agreement to preserve and maximize the value of the Acquired Assets.  Time, therefore, is of the essence in effectuating the Stalking Horse Agreement.  As such, the Debtors and the Purchaser intend to close the sale of the Acquired Assets, will be acting in good

19

4910-0832-6797

faith pursuant to section 363(m) of the Bankruptcy Code in doing so, and may close the Transactions contemplated by the Stalking Horse Agreement at any time after the entry of this Sale Order subject to the terms and conditions of the Stalking Horse Agreement. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Stalking Horse Agreement. Accordingly, cause has been shown as to why this Sale Order should not be subject to any stay, including, without limitation, as provided by Bankruptcy Rules 6004(h), 6006(d), and any applicable Local Bankruptcy Rule.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1. **Approval of Sale Transaction**. The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Stalking Horse Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, is authorized and approved.

2. **Objections Overruled**. Any objections and responses to the Motion or the relief requested therein that relate to the Sale Transaction and that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3. **Approval of Stalking Horse Agreement**. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Stalking Horse Agreement is hereby approved as set forth herein and the Debtors are authorized to take any and all actions necessary to consummate the Sale Transaction, including the sale, transfer, and assignment of all of the Debtors' respective right, title, and interest in, to, and under the Acquired Assets to the Purchaser free and clear of any and all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) in

20

4910-0832-6797

accordance with the terms the Stalking Horse Agreement, with such Liens, Claims, and Interests attaching to the proceeds of the Sale Transaction. The Debtors have satisfied all requirements of §§ 363(b) and 363(f) of the Bankruptcy Code and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) (as defined herein).

4.      **Sale and Transfer of Assets Free and Clear**. Pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, the Debtors shall transfer to the Purchaser, upon the Closing Date, all of the Debtors' respective right, title, and interest in and to, and possession of, the Acquired Assets, which shall be immediately vested in Purchaser, and, other than Assumed Liabilities and Permitted Encumbrances, such title to the Acquired Assets shall be transferred to Purchaser shall be, free and clear of all Liens, Claims, and Interests including, without limitation:

(a)      any and all charges, liens (statutory or otherwise), claims, mortgages, hypothecations, deeds of trust, pledges, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of setoff, successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests, or any other restrictions or limitations of any kind with respect to the Acquired Assets;

(b)      any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under (x) any labor, employment, or pension laws, (y) health or welfare, compensation or other employee plan, agreements, practices, and programs (including any Employee Benefit Plan) of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or (z) any workers' compensation, occupational disease, or unemployment or temporary disability related law, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third-party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective

21

4910-0832-6797

affiliates, subsidiaries, directors, officers, managers, agents, or successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Acquired Assets, the Assigned Contracts, or the transactions contemplated by the Stalking Horse Agreement; and

(c)     any and all equity or other interests of any kind or nature whatsoever in or with respect to (i) any of the Debtors or their respective affiliates, subsidiaries, or successors or assigns, (ii) the Acquired Assets, or (iii) the Assigned Contracts.

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing Date (collectively, the "***Liens, Claims, and Interests***"). Any and all such Liens, Claims, and Interests shall attach to the proceeds of the Sale Transaction.

5.      **Preservation of Certain Causes of Action**. For the avoidance of doubt, any avoidance actions under Chapter 5 of the Bankruptcy Code or other claims, causes of action, or defenses of the Debtors or their estates which are not expressly identified as Acquired Assets in the Stalking Horse Agreement, including any claims, causes of action or defenses the Debtors or their estates may have against current and former officers and directors, shall be retained by the Debtors and their estates to the extent any such claims and causes of action exist.

6.      **DIP Repayment and ABL Paydown.** Upon the occurrence of the Closing Date and concurrently with the closing, the Debtors shall direct the full amount of the sale proceeds (other than the Holdback Amount) in accordance with the terms of this Sale Order to effectuate the irrevocable DIP Repayment and the ABL Paydown. Each of the DIP Repayment and ABL

22

4910-0832-6797

Paydown is absolute and unconditional and shall not be subject to any defense, setoff, counterclaim, surcharge, marshalling, deduction, recoupment, or reduction of any kind. The DIP Repayment and ABL Paydown are integral terms of the Sale Transaction and, absent the DIP Repayment and ABL Paydown, the DIP Secured Parties would not have consented to the Sale Transaction. The DIP Repayment and ABL Paydown shall each be final and irrevocable and each such payment may not be unwound, disgorged, voided or otherwise challenged and shall be free and clear of any and all liens and claims of any kind other than any liens or claims of the DIP Agent in accordance with the DIP Documents and Prepetition ABL Agent in accordance with the Prepetition ABL Documents, as applicable, and until the DIP Obligations and Prepetition ABL Obligations are satisfied in full in cash, respectively, the DIP Liens and Prepetition ABL Liens, respectively, shall attach to the sale proceeds with the same priorities as provided for in the DIP Orders. The DIP Repayment and Prepetition ABL Paydown complies with the requirements of the DIP Orders, the DIP Documents and the Prepetition ABL Documents, as applicable, and is supported by good, sufficient and sound business reasons. The DIP Agent is hereby authorized to apply the proceeds of the DIP Repayment in accordance with the DIP Orders and the DIP Documents and the Prepetition ABL Agent is hereby authorized to apply the proceeds of the ABL Paydown in accordance with the DIP Orders and the Prepetition ABL Documents.

7.      **Binding Effect of Order**. This Sale Order and the Stalking Horse Agreement shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, and Interests in, against, or on all or any portion of the Acquired Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons," or other fiduciaries in

23

these chapter 11 cases or upon a conversion to case under chapter 7 of the Bankruptcy Code, and the Stalking Horse Agreement shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted to the Purchaser hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest. The Stalking Horse Agreement, this Sale Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Purchaser. To the extent of any conflict between this Sale Order or the Stalking Horse Agreement and such future plan or order, the terms of this Sale Order and the Stalking Horse Agreement shall control.

8.      **No Material Modifications**. The Stalking Horse Agreement and any related agreements, documents, or other instruments in effect as of the date hereof may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement does not (x) have an adverse effect on the Purchaser or the Debtors or their estates or (y) adversely affect the rights of the DIP Lenders or Prepetition ABL Lenders as to the proceeds of the Sale Transaction; *provided further* that any such proposed modification, amendment, supplement, or restatement that would have an adverse effect on the Debtors or their estates shall require a further order of this Court.

9.      **No Bulk Sales**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction, the Motion, and this Sale Order.

4910-0832-6797

10.     **Valid Transfer**. Effective upon the Closing Date, the transfer to the Purchaser of the Debtors' respective right, title, and interest in the Acquired Assets pursuant to the Stalking Horse Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' respective right, title, and interest in the Acquired Assets, and vests with or will vest in the Purchaser all right, title, and interest of the Debtors in the Acquired Assets, free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances).

11.     **Fair Consideration**.  The consideration provided by the Purchaser for the Acquired Assets under the Stalking Horse Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, or possession thereof, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law.  The Stalking Horse Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or any other applicable law.  Neither the Debtors nor the Purchaser have entered into the Transaction Agreements, including the Stalking Horse Agreement, or any agreement contemplated thereby or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose.

12.     The Stalking Horse Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors, the Purchaser, or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns have

25

4910-0832-6797

engaged in any conduct that would cause or permit the Stalking Horse Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

13.     **Good Faith Purchaser**. The Sale Transaction contemplated by the Stalking Horse Agreement is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser has acted without collusion in undertaking the Sale Transaction contemplated by the Stalking Horse Agreement.   Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the sale of the Acquired Assets to the Purchaser (including the assumption and assignment by the Debtors of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.   The Purchaser is a good faith purchaser of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14.     **Exculpation and Release**.   None of the Purchaser (solely in its capacity as such) or any of its members or their respective affiliates, successors, assigns, and advisors (in each case, solely in their capacity as such) shall be subject to any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever by the Debtors, their estates, their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns arising out of the negotiation, due diligence in respect of, preparation, execution or delivery of the Stalking Horse Agreement, and the entry into and consummation of the Sale Transaction and the agreements and ancillary documents memorializing and effectuating the Sale Transaction, other

26

4910-0832-6797

than the Assumed Liabilities and Permitted Encumbrances being assumed by the Purchaser; *provided, however*, that the foregoing shall not release any claims or liability related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

15.     None of the Debtors, their estates, their respective current and former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns shall be subject to any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever by the Purchaser or any of its members or their respective affiliates, successors, assigns, and advisors arising out of the negotiation, due diligence in respect of, preparation, execution or delivery of the Stalking Horse Agreement, and the entry into and consummation of the Sale Transaction and the agreements and ancillary documents memorializing and effectuating the Sale Transaction, but excluding the obligations of the Debtors under the Stalking Horse Agreement; *provided, however*, that the foregoing shall not release any claims or liability related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

16.     For the avoidance of doubt, (i) nothing in paragraph 14 shall prevent the Purchaser from enforcing all terms of the Stalking Horse Agreement or any Transaction Agreement against the Sellers or release or exculpate the Sellers from any liability thereunder, and (ii) nothing in paragraph 13 shall prevent the Debtors from enforcing any and all terms of the Stalking Horse Agreement or any Transaction Agreement against the Purchaser or release or exculpate the Purchaser for any liability thereunder.

27

4910-0832-6797

17.     In consideration and exchange for the valuable consideration being given by each of the DIP Secured Parties and Prepetition Senior Secured Parties, (collectively, the "**Consenting Secured Parties**") in connection herewith, upon the Closing Date, each of the Consenting Secured Parties and their respective past and present affiliates, representatives, agents, attorneys, advisors, partners, investors, professionals, officers, directors, and employees, including but not limited to any such parties that presently act or previously acted as a director, manager, or officer of the Debtors (collectively, the "**Released Parties**"), shall be deemed released and discharged by each and all of the Debtors, the Debtors' estates, and any party acting on behalf of the Debtors or their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, in each case who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors and the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Debtors' estates, and their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors, solely to the extent such claims arise or relate to the Sale Transaction or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale Transaction, the distribution of proceeds from the Sale Transaction (including the DIP Repayment and ABL Paydown) or any other related agreement, or otherwise, or upon any related act or omission, transaction, agreement, transfer, event, or occurrence taking place on or before the Closing Date; *provided* that any right to enforce this Sale Order is not so released; and *provided further* that notwithstanding anything

28

herein to the contrary, the entry of this Sale Order is without prejudice to, and does not constitute a waiver or release of, any rights or claims of any of the Prepetition Secured Parties under the Prepetition Intercreditor Agreement. The releases provided for herein are an integral part of the Sale Transaction; absent the releases provided for herein, the Consenting Secured Parties would not have consented to the Sale Transaction and the Debtors did not have an alternate means of providing adequate protection of the Consenting Secured Parties' claims to their collateral.

18. **Governmental Authorization to Effectuate Sale and Assignments**. Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction. Except as otherwise provided in this Sale Order, to the greatest extent available under applicable law upon the Closing Date, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date. No governmental unit may revoke or suspend any lawful right, license, trademark, or other permission relating to the use of the Acquired Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction. For the avoidance of doubt, the Sale Transaction authorized herein shall be of full force and effect, regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

19. **Authorization to Assign**. Notwithstanding any provision of any contract governing the Acquired Assets, including any Assigned Contract to be assumed and assigned to

4910-0832-6797

the Purchaser as of the Closing Date, pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Acquired Assets, including any Assigned Contract, at or after the Closing Date, the Debtors are authorized to (i) assign the Acquired Assets to the Purchaser and (ii) assume and assign the Assigned Contracts to the Purchaser as of the Closing Date, in each case, which assignments shall take place on and be effective as of the Closing Date or such other date after the Closing Date, in each case, as provided in the Stalking Horse Agreement or as otherwise provided by a separate order of this Court.

(a)     There shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assignment of the Acquired Assets or the assumption and/or assignment of the Assigned Contracts.

(b)     The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts that are to be assumed and assigned to the Purchaser as of the Closing Date.  Notwithstanding the foregoing, unless required by the Purchaser under the Stalking Horse Agreement for the Debtors to assume and assign any Assigned Contract, no Debtor shall be required by the Court to assume and assign any Assigned Contract, and, if no such assumption and assignment occurs, no Cure Costs shall be due and no adequate assurance of future performance shall be required with respect to any such Assigned Contract.

(c)     The Debtors' assumption and assignment of the Assigned Contracts is subject to the consummation of the Sale Transaction with the Purchaser.  To the extent that an Assumption and Assignment Objection (or Supplemental Assumption and Assignment Objection) by a counterparty to any Assigned Contract, including an objection related to the applicable Cure Cost, is not resolved prior to the Closing Date, the Purchaser, may, without any further approval of the Court or notice to any party, elect to (i) not have the Debtors assume and assign such Assigned Contract to it, or (ii) have the Debtors postpone the assumption of such Assigned Contract until the resolution of such Assumption and Assignment Objection (or Supplemental Assumption and Assignment Objection); *provided*, *however*, that the Debtors, the Purchaser, and the relevant non-debtor counterparty under each Assigned Contract shall have authority to compromise, settle, or otherwise resolve any objections to proposed Cure Costs without further order of, or notice to, this Court, with any such agreed upon Cure Costs being paid to the

4910-0832-6797

appropriate counterparty by the Purchaser as a condition subsequent to such assumption and/ assignment of the relevant Assigned Contract.

20. **Assigned Contracts.** As of the Closing Date, subject to the provisions of this Sale Order and in accordance with the Stalking Horse Agreement, the Purchaser shall succeed to the entirety of the Debtors' respective rights and obligations in the Assigned Contracts first arising and attributable to the time period occurring on or after the Closing Date (as defined in the Stalking Horse Agreement) and shall have all rights thereunder; *provided that*, for the avoidance of doubt, any and all proceeds, coverage, and recoveries available under any of the Debtors' directors' and officers' liability policies, whether purchased prior to or after the Petition Date, shall not constitute Assigned Contracts and do not otherwise constitute Acquired Assets to be transferred to the Purchaser.

(a) Upon Closing, (i) all defaults (monetary and non-monetary) under the Assigned Contracts shall be deemed cured and satisfied in full through the payment of the Cure Costs, (ii) no other amounts will be owed by the Debtors, their estates, or, other than the Assumed Liabilities, the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before the Closing Date with respect to the Assigned Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Purchaser, or the Assets that any additional amounts are due or defaults exist under the Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing Date (other than claims against Purchaser with respect to the Assumed Liabilities). The Purchaser's promise pursuant to the terms of the Stalking Horse Agreement to pay the Cure Costs and the Purchaser's promise to perform the Debtors' obligations under the Assigned Contracts for the period on or after the Closing Date shall constitute adequate assurance of Purchaser's future performance under the Assigned Contracts being assigned to it as of the Closing Date within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

(b) Upon assumption of those Assigned Contracts to be assumed by the Debtors and assigned to the Purchaser as of the Closing Date, such Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in such Assigned Contract or other restrictions prohibiting

31

4910-0832-6797

assignment or transfer.  To the extent any Assigned Contract is assumed and assigned to the Purchaser under this Sale Order, such assumption and assignment will not take effect until the Closing Date.  Furthermore, other than the Assigned Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of such Assigned Contract.

(c)     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of or obligations under any Assigned Contract following the effective date of such assumption and assignment to the Purchaser, subject to the payment of the Cure Costs by the Purchaser in accordance with the terms of the Stalking Horse Agreement.

(d)     All counterparties to the contracts to be assumed and assigned to Purchaser as of the Closing Date shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

(e)     Notwithstanding the foregoing, the Debtors may, at the Purchaser's direction, amend the list of Potential Assigned Contracts and Leases Schedule to add or remove any Assigned Contract to or from such list of Potential Assigned Contracts and Leases Schedule prior to the Closing Date of the Sale Transaction in accordance with the terms of the Stalking Horse Agreement.

21.     **Injunction**. Except as expressly provided in the Stalking Horse Agreement or this Sale Order, effective upon the Closing Date, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons or entities holding Liens, Claims, or Interests (other than Assumed Liabilities and Permitted Encumbrances) against or in the Debtors or the Debtors' interests in the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent,

32

4910-0832-6797

liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims, or Interests against the Purchaser or any of its members or their respective affiliates, agents, advisors, representatives, officers, successors and assigns, the Acquired Assets, or the interests of the Debtors or the Purchaser in such Acquired Assets, including, without limitation, taking any of the following actions with respect to an interest (other than, with respect to the Purchaser only, the Assumed Liabilities and Permitted Encumbrances): (a) commencing or continuing in any manner any action or other proceeding against such parties or Acquired Assets; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against such parties or Acquired Assets; (c) creating, perfecting or enforcing any liens, claims, encumbrances or other interests against such parties or Acquired Assets; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its affiliates, agents, advisors, representatives, officers, successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof.  All persons and entities are hereby enjoined from taking any action that would interfere with or adversely affect the Debtors' ability to transfer the Acquired Assets in accordance with the terms of the Stalking Horse Agreement and this Sale Order.  Following the Closing Date, no holder of a Lien, Claim, or Interest (including an "interest" as such term is used in section 363(f)) against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets.

22.     **No Successor Liability**.  As of and following the Closing Date, except as provided in the Stalking Horse Agreement, the entry of this Order and the approval of the terms of the Stalking Horse Agreement shall mean that the Purchaser (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Stalking Horse Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, or the transfer or operation of the Acquired Assets, shall not be deemed to: (a) be a legal successor or successor employer to any Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to any Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into any Debtor; (c) be an alter ego or a mere continuation or substantial continuation of any Debtor or the enterprise of any Debtor; or (d) be liable or have any liability for any acts or omissions of any Debtor in the conduct of their businesses or arising under or related to the Acquired Assets other than as expressly set forth and agreed in the Stalking Horse Agreement, including, in the case of each of (a)-(d), without limitation, (i) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("*WARN*"), to the greatest degree allowed by applicable law, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (as amended) ("*CERCLA*"), the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (ii) in respect of (1) to the greatest degree allowed by applicable law, any

34

4910-0832-6797

environmental liabilities, debts, claims or obligations arising from conditions first occurring or first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (2) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (3) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

23.     Without limiting the generality of the foregoing, and except as otherwise provided in the Stalking Horse Agreement or this Order, neither the Purchaser nor any of its affiliates shall have any responsibility for any (a) liability or other obligation of the Debtors related to the sale and transfer of the Acquired Assets to the Purchaser or with respect to the Excluded Liabilities, other than the Assumed Liabilities, or (b) claims against the Debtors or any of their predecessors or affiliates. By virtue of the Purchaser's purchase of the Acquired Assets, neither the Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, to the greatest degree allowed by applicable law environmental (including, but not limited to, CERCLA), successor or transferee liability, de facto merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on

35

account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing Date (collectively, with the potential claims set forth in paragraph 22, "***Successor Liability***"). The Purchaser has given substantial consideration under the Stalking Horse Agreement, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from any potential claims of Successor Liability of the Purchaser. The Purchaser would not have acquired the Acquired Assets but for the foregoing protections against Successor Liability or transferee liability.

24. **Surrender of Possession**. Any and all Acquired Assets in the possession or control of any person or entity, including any vendor, supplier, or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) and shall be delivered to the Purchaser and deemed delivered at the time of Closing (or such other time as provided in the Stalking Horse Agreement).

25. **Release of Liens, Claims, and Interests**. Effective upon the Closing Date, this Sale Order: (a) is and shall be effective as a determination that all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; (b) is and shall be binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by

4910-0832-6797

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets conveyed to the Purchaser; (c) and all recorded Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances) against the Acquired Assets shall be deemed stricken from such persons' and entities' records, official and otherwise.

26. **Approval to Release Interests**. If any person or entity that has filed financing statements, mortgages, mechanic's liens or other documents or agreements evidencing Liens, Claims, or Interests in or against the Acquired Assets shall not have delivered to the Debtors before the Closing Date, in proper form for filing and executed by the appropriate parties, the appropriate documentation with respect to the release of such Liens, Claims, or Interests, the Purchaser is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably requested by the Purchaser, in each case, at the Seller's sole expense, to release its Liens, Claims or other Interests in the Acquired Assets, if any, other than Permitted Encumbrances, as such encumbrances may have been recorded or may otherwise exist. Subject to the occurrence of the DIP Repayment and ABL Paydown, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, or Interests against the Acquired Assets (other than the Assumed Liabilities and Permitted Encumbrances).  This Sale Order is deemed to be in recordable form sufficient to be placed in the

37

filing or recording system of each and every federal, state or local government agency, department or office.

27.     **Transfer of Marketable Title**. As of the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' respective right, title and interest in the Acquired Assets and/or a bill of sale transferring good and marketable title in such Acquired Assets to the Purchaser at the Closing pursuant to the terms of the Stalking Horse Agreement, free and clear of all Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances).

28.     **Governmental Entities**. Nothing in this Sale Order or the Stalking Horse Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any person or entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  Nothing in this Sale Order or the Stalking Horse Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

29.     Nothing in this Sale Order or related documents (including but not limited to the Stalking Horse Agreement) discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("*Governmental Unit*") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any such claim of a Governmental Unit arising upon or after the entry of an order confirming any chapter 11 plan; (iii) any liability to a Governmental Unit

4910-0832-6797

under police and regulatory statutes or regulations that any person or entity would be subject to as the owner or operator of property after the entry of an order confirming any chapter 11 plan; or (iv) any liability to a Governmental Unit on the part of any person or entity other than the Debtors. Nor shall anything in this Sale Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

30. **Texas Taxing Authorities**. For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order or the Stalking Horse Agreement, the Texas Taxing Authorities'[4] ad valorem tax liens securing payment of any delinquent personal property taxes, including any penalties and interest that had accrued prior to the Petition Date, owed to the Texas Taxing Authorities by the Debtors with respect to the Acquired Assets (the "***Delinquent Taxes***"), shall attach to the sales proceeds and that the closing agent or the Debtors shall pay all Delinquent Taxes owed incident to the Acquired Assets as soon as reasonably practicable after closing, but, in any event, no later than ten (10) business days after closing; *provided, however*, the Debtors shall ensure that an amount sufficient to satisfy such Delinquent Taxes is set aside from the sale proceeds immediately upon closing and prior to making any disbursement of such proceeds to any other person or entity. Further, solely to the extent (i) attributable to the Acquired Assets, and (ii) attributable to any tax period beginning on or after the Closing Date, the personal property taxes for tax year 2026 pertaining to the Acquired Assets shall become the responsibility of the Purchaser and any 2026 ad valorem tax liens with respect to any said taxes shall be retained against

---

[4]  The term Texas Taxing Authorities is defined as all ad valorem taxing jurisdictions represented by the firms of Linebarger Goggan Blair & Sampson, LLP, Perdue, Brandon, Fielder, Collins & Mott LLP, and McCreary Veselka Bragg and Allen, including but not limited to Cotulla ISD, Dallas County, Ector CAD, Gregg County, Hood CAD, City of Houston, Houston City College, Houston Independent School District, La Salle County, Live Oak CAD, Matagorda County, Parker CAD, Reeves County, Winkler County, Zavala CAD, Midland County, Kermit Independent School District, Tidehaven Independent School District, Bay City Independent School District, Karnes County Tax Office, Brazos County, Midland CAD, and Reeves County Tax Districts.

4910-0832-6797

the Acquired Assets to the extent provided by applicable state law, until said taxes, including any penalties and interest that may accrue, are paid in full. For the avoidance of doubt, the Texas Taxing Authorities' 2026 tax liens on account of any tax period ending prior to the Closing date shall attach to the sale proceeds in their relative priority as they existed on the Petition Date. To the extent there is any proration for the 2026 taxes between the Debtors and the Purchaser with respect to the Acquired Assets, such proration shall be determined in accordance with the terms of the Stalking Horse Agreement.

31.     **Application of Proceeds.** The Debtors shall apply the cash proceeds received on account of the Sale Transaction to make the DIP Repayment and ABL Paydown, provided that an amount as agreed between the Prepetition ABL Agent, the Committee, and the Debtors, but in the event such agreement cannot be reached before the Closing Date, no less than $8,500,000.00 of such cash proceeds (the "*Holdback Amount*") shall be applied to the Debtors' estates prior to making the DIP Repayment and ABL Paydown.  Among other things, and subject as applicable to further order of this Court confirming a chapter 11 plan following consummation of the Sale Transaction, the Debtors may use the Holdback Amount to:

(a)     pay the fees and costs of (i) Estate Professionals (as that term is defined in the DIP Orders) including, for the avoidance of doubt, the allowed fees and costs incurred by Evercore in connection with the Sale Transaction and (ii) Simpson Thacher & Bartlett LLP, Huron Consulting Group Inc. as advisors to the DIP Agent and Prepetition ABL Agent ;

(b)     pay other administrative and operating costs incurred by the Debtors' estates;

(c)     fund certain cash distributions to be made under a chapter 11 plan, including but not limited to a distribution of $100,000 to holders of allowed claims under the Prepetition ABL Facility; and

(d)     fund the winddown of the Debtors' estates.

40

4910-0832-6797

32.     **Access to Books and Records**.  Notwithstanding anything to the contrary in the Stalking Horse Agreement or this Sale Order, following the Closing Date, the Purchaser shall use commercially reasonable efforts to cooperate with any reasonable request for access to books and records from the Debtors and their respective estates, successors and assignees, as applicable, and any representative of any of the foregoing persons, including any trustee or estate representative appointed in these chapter 11 cases (or any successor chapter 7 cases), and each of their respective advisors, to the extent such requested books and records relate to the Stalking Horse Agreement, the Acquired Assets, or the Assumed Liabilities and are necessary or appropriate for such requesting party to facilitate the winddown or other resolution of these chapter 11 cases (or any successor chapter 7 cases); *provided* that the party making the request shall bear its own costs and expenses with respect to the procurement of and access to the books and records.

33.     **Provision Regarding Coastal Chemical**.  Notwithstanding anything to the contrary in this Sale Order or in the Stalking Horse Agreement, (a) Coastal Chemical Co., L.L.C. ("*Coastal Chemical*") retains ownership and title to the storage tanks and other equipment and materials located on the Debtors' sites utilized and maintained by Coastal Chemical in connection with the provision of products and services to the Debtors, solely to the extent that Coastal Chemical had ownership and title in such storage tanks and other equipment and materials prior to the Closing Date (collectively, the "*Coastal Chemical Materials*"), (b) the Coastal Chemical Materials are not property of the Debtors' estates under section 541 of the Bankruptcy Code, and (c) the Coastal Chemical Materials are not assets sold or otherwise transferred by the Debtors under the Stalking Horse Agreement or this Sale Order.

34.     In the event that the Coastal Chemical Master Supply Agreement is not assumed by the Debtors and assigned to the Purchaser as part of the Sale (or is otherwise rejected by the

41

Debtors), the Debtors will take all reasonable measures to safeguard promptly the Coastal Chemical Materials and cooperate with Coastal Chemical on the disposition of the Coastal Chemical Materials.

35.     In full and final resolution of the objection filed by Coastal Chemical Co., L.L.C. [Docket No. 200] ("*Coastal Chemical*"), the Debtors and Coastal Chemical agree that the Cure Cost (as defined in the Stalking Horse Agreement) as it relates to the MSA (as defined in Coastal Chemical's objection at Docket No. 200) shall be $1,116,822.80.

36.     **Provision Regarding Cannon**. In full and final resolution of the objection filed by Cannon Compression Services LLC [Docket No. 164] ("*Cannon*"), the Debtors and Cannon agree that the Cure Cost (as defined in the Stalking Horse Agreement) as it relates to the Cannon Agreement (as defined in Cannon's objection at Docket No. 164) shall be $847,876.36.

37.     **Provision Regarding Northbase.**  Notwithstanding anything to the contrary in this Sale Order or the Stalking Horse Agreement, the assumption and assignment of the Master Equipment Lease Agreement dated October 1, 2024, by and between Axip Leasing Company, LLC, as Lessee, and Axip Energy Services, LP, as Lease Guarantor, and Northbase Finance Inc. ("*Northbase*"), as Lessor, together with Lease No. NB-2405 and Lease No. NB-2406 (collectively, the "*Northbase Master Lease*"), shall not be free and clear of, and shall remain subject to, the security interest granted to Northbase under the Northbase Master Lease. The Purchaser shall, upon the Closing Date, (i) assume all obligations, including, subject to the terms of the Stalking Horse Agreement, taxes that have accrued prior to the Closing Date but are not payable until after the Closing Date, under the Northbase Master Lease and (ii) cooperate with Northbase in filing appropriate UCC financing statement amendments to reflect the assignment of the Northbase Master Lease and the continuation of Northbase's security interest therein. The Cure

42

4910-0832-6797

Costs payable with respect to the Northbase Master Lease shall be $37,000, inclusive of all amounts accrued through the effective date of assumption and assignment and all attorneys' fees. To the extent the Debtors' estates retain liability for any portion of such taxes pursuant to the Stalking Horse Agreement, Northbase reserves all rights to assert claims against and pursue recovery of such amounts from the Debtors' estates.

38.     **Provision Regarding the Outstanding Objections**.  Notwithstanding anything to the contrary in this Sale Order, with respect to the objection to Cure Cost filed by Odessa American Industrial Machine LLC [Docket No. 193] (the "***Outstanding Objection***" and such objecting party the "***Objecting Counterparty***"), the Debtors and the Objecting Counterparty shall use good faith efforts to consensually resolve the Outstanding Objection prior to the Closing Date.  Pending resolution of the Outstanding Objection and pursuant to Section 1.5(b) of the Stalking Horse Agreement, the Purchaser may, in its sole discretion at any time prior to the Closing Date and without further order of the Court, elect to (a) exclude the applicable Assigned Contract from the Sale Transaction or (b) defer the assumption and assignment of such Assigned Contract until the Outstanding Objection is resolved.  If the parties are otherwise unable to resolve the Outstanding Objection, the Debtors, the Purchaser, and the Objecting Counterparty consent to the Court's determination of the Outstanding Objection on an emergency basis by not later than April 13, 2026, and any such determination shall be final and binding on the Debtors, the Purchaser, and the Objecting Counterparty, subject to the Purchaser's right to exclude the applicable Assigned Contract from the Sale Transaction under the Stalking Horse Agreement.

39.     **Satisfaction of Conditions Precedent**. Neither the Purchaser nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Stalking Horse

Agreement to each of their respective obligations to close the Sale Transaction have been met, satisfied, or waived in accordance with the terms of the Stalking Horse Agreement.

40. **Retention of Jurisdiction**. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Sale Order, including, without limitation, the authority to: (i) interpret, implement and enforce the terms and provisions of this Sale Order (including the exculpation, release and injunctive provisions in this Sale Order) and the terms of the Stalking Horse Agreement, all amendments thereto and any waivers and consents thereunder; (ii) protect the Purchaser, or the Acquired Assets, from and against any Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Encumbrances); (iii) compel delivery of all Acquired Assets to the Purchaser; (iv) compel the Debtors and the Purchaser to perform all of their respective obligations under the Stalking Horse Agreement; and (v) resolve any disputes arising under or related to the Stalking Horse Agreement or the Sale Transaction.

41. **Automatic Stay**. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order.

42. **Immediate Effect**. Notwithstanding any provision of the Bankruptcy Rules, including Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction, and the Debtors and the Purchaser are free to close the Sale Transaction under the Stalking Horse Agreement at any time pursuant to the terms thereof and take any other action or perform any act authorized by this Sale Order.

43. **Failure to Specify Provisions**. The failure to specifically reference any particular provisions of the Stalking Horse Agreement or other related documents in this Sale Order shall not

44

4910-0832-6797

45

diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Stalking Horse Agreement and other related documents be authorized and approved in their entirety.

44.     **Provisions Non-Severable**. The provisions of this Sale Order are non-severable and mutually dependent.

Signed:  April 06, 2026

_____
Christopher Lopez
United States Bankruptcy Judge

4910-0832-6797