*Solicitation Version*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 26-90338 (CML)** |
| | § | |
| **AXIP ENERGY SERVICES, LP,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

## DEBTORS' COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION

Paul E. Heath (TX 09355050)
Matthew J. Pyeatt (TX 24086609)
Trevor G. Spears (TX 24106681)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email:  pheath@velaw.com
        mpyeatt@velaw.com
        tspears@velaw.com

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email:  dmeyer@velaw.com
        jpeet@velaw.com

**VINSON & ELKINS LLP**

*Counsel to the Debtors and Debtors in Possession*

Dated: May 15, 2026

---

[1]	The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Axip Energy Services, LP (9220); Axip Energy Services Management, LLC (9986); Axip Holdings, LLC (6302); Axip Leasing Company, LLC (5678); Axip Producer Services - Marcellus I, LLC (3312); Axip Producer Services, LLC (4792); and E3 Compression Holdings LLC (0825).  The location of the Debtors' corporate headquarters is: 1221 McKinney, Suite 3175, Houston, Texas 77010.

4922-0660-6194

**TABLE OF CONTENTS**

ARTICLE I INTRODUCTION AND GENERAL OVERVIEW ................................................3

    **A.**    Company Overview ........................................................................3

    **B.**    The Debtors' Corporate Structure........................................................3

    **C.**    Commencement of the Chapter 11 Cases .................................................4

    **D.**    The Refinancing Process.................................................................4

    **E.**    Forbearance and Pivot to Sales Process..................................................4

    **F.**    Summary of Capital Structure as of the Petition Date.....................................7

    **G.**    Negotiation of the DIP Facility..........................................................8

    **H.**    The Debtors' Operational First-Day Motions and Certain Related Relief .............8

    **I.**    Independent Investigation................................................................8

    **J.**    Postpetition Sales Process and the Approval and Closing of the 363 Asset Sale....9

    **K.**    Distributions.............................................................................9

    **L.**    Treatment and Estimated Recoveries of Claims and Interests under the Combined Disclosure Statement and Plan............................................................9

    **M.**    Releases and Exculpation ...............................................................11

ARTICLE II CONFIRMATION AND VOTING PROCEDURES ........................................11

    **A.**    Confirmation Procedure.................................................................11

        1.    Confirmation Hearing .......................................................11

        2.    Procedure for Objections ....................................................11

        3.    Eligibility to Vote on the Combined Disclosure Statement and Plan........12

        4.    Solicitation Notice .........................................................12

        5.    Procedure/Voting Deadlines for Classes 3, 4, and 5.................................12

        6.    Acceptance of the Combined Disclosure Statement and Plan...................13

        7.    Elimination of Vacant Classes................................................13

    **B.**    Statutory Requirements for Confirmation ............................................14

4922-0660-6194

1.    Classification of Claims and Interests..........................................................14

2.    Impaired Claims or Interests....................................................................14

3.    Best Interests Test and Liquidation Analysis.............................................15

4.    Feasibility..............................................................................................15

ARTICLE III TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS.................16

A.    Administrative Claims. ...........................................................................16

B.    Statutory Fees.......................................................................................16

C.    Administrative Claims Bar Date. ..............................................................17

D.    Professional Claims. ..............................................................................17

1.    Final Fee Applications and Payment of Professional Claims....................17

2.    Professional Fee Reserve Account..........................................................17

3.    Professional Claim Reserve Amount. .....................................................18

4.    Post-Plan Effective Date Professional Fees and Expenses. .......................18

E.    DIP Claims...........................................................................................18

F.    Adequate Protection Claims ....................................................................18

G.    Priority Tax Claims................................................................................18

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......19

A.    Classification of Claims and Interests........................................................19

B.    Treatment of Claims and Interests. ...........................................................20

1.    Class 1 – Senior Priority Lien Claims.....................................................20

2.    Class 2 – Other Priority Claims .............................................................21

3.    Class 3– Prepetition ABL Claims...........................................................21

4.    Class 4 – Prepetition 2L Claims.............................................................22

5.    Class 5 – General Unsecured Claims.......................................................22

6.    Class 6 – Intercompany Claims .............................................................23

ii

7.      Class 7 – Subordinated Claims ...................................................................23

8.      Class 8 – Intercompany Interests ...............................................................24

9.      Class 9 – E3 Holdings Interests ..................................................................24

C.    Special Provision Governing Unimpaired Claims. ..................................................24

D.    Elimination of Vacant Classes. ................................................................................24

E.    Voting Classes, Presumed Acceptance by Non-Voting Classes ...........................24

F.    Controversy Concerning Impairment .....................................................................25

G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
      Code ..........................................................................................................................25

H.    Subordinated Claims ................................................................................................25

ARTICLE V  MEANS FOR IMPLEMENTATION  OF THE COMBINED DISCLOSURE
      STATEMENT AND PLAN ........................................................................................25

A.    Vesting of Certain Assets and Abandonment of Certain Assets ...........................25

B.    Post-Sale Estates ......................................................................................................25

C.    Plan Administrator ...................................................................................................25

D.    Abandonment of Other Assets ................................................................................25

E.    General Settlement of Claims and Interests. ..........................................................26

F.    Segregated Accounts for Distributions ...................................................................27

      1.      Claims Reserve ...........................................................................................27

      2.      Professional Claim Reserve Escrow Account ...........................................27

G.    Corporate Existence and Dissolution Transactions ...............................................29

H.    Cancellation of Existing Securities and Agreements. ...........................................27

I.    Release of Liens .......................................................................................................29

J.    Corporate Governance, Directors, and Officers. ...................................................29

      1.      Certificates of Incorporation and Bylaws .................................................29

      2.      Directors and Officers ................................................................................29

iii

**K.**     Director and Officer Liability Insurance....................................................29

**L.**     Preservation of Causes of Action............................................................30

**M.**     Substitution in Pending Legal Actions....................................................30

**N.**     Effectuating Documents; Further Transactions .....................................30

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
..........................................................................................................................31

**A.**     Rejection of Executory Contracts and Unexpired Leases......................31

**B.**     Claims Based on Rejection of Executory Contracts or Unexpired Leases............31

**C.**     Insurance Contracts................................................................................32

**D.**     Reservation of Rights..............................................................................32

**E.**     Nonoccurrence of Effective Date............................................................33

**F.**     Contracts and Leases Entered into After the Petition Date....................33

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS....................................33

**A.**     Distributions for Claims Allowed as of the Effective Date. ..................33

**B.**     Entitlement to Distributions ...................................................................33

**C.**     Disbursing Agent. ...................................................................................34

**D.**     Rights and Powers of Disbursing Agent.................................................34

     1.     Powers of the Disbursing Agent. ...................................................34

     2.     Expenses Incurred on or After the Effective Date. ........................34

     3.     No Liability....................................................................................34

**E.**     Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..........35

     1.     Record Date for Distribution. ........................................................35

     2.     Delivery of Distributions in General..............................................35

     3.     Minimum Distributions..................................................................35

     4.     Undeliverable Distributions and Unclaimed Property....................35

     5.     Surrender of Cancelled Instruments or Securities. ........................35

iv

| | F. | Manner of Payment. | 36 |
|---|---|---|---|
| | G. | Compliance with Tax Requirements. | 36 |
| | H. | Allocations. | 37 |
| | I. | No Postpetition Interest on Claims. | 37 |
| | J. | Foreign Currency Exchange Rate. | 37 |
| | K. | Setoffs and Recoupment. | 37 |
| | L. | No Double Payment of Claims. | 37 |
| | M. | Claims Paid or Payable by Third Parties. | 37 |
| | | 1. Claims Paid by Third Parties. | 38 |
| | | 2. Claims Payable by Third Parties. | 38 |
| | | 3. Applicability of Insurance Contracts. | 38 |

ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .......... 39

| | A. | Allowance of Claims. | 39 |
|---|---|---|---|
| | B. | Claims and Interests Administration Responsibilities. | 39 |
| | C. | Authority to Amend Schedules | 39 |
| | D. | Estimation of Claims. | 39 |
| | E. | Adjustment to Claims or Interests without Objection. | 40 |
| | F. | Time to File Objections to Claims | 40 |
| | G. | Disallowance of Claims or Interests. | 40 |
| | H. | Amendments to Claims. | 41 |
| | I. | No Distributions Pending Allowance. | 41 |
| | J. | Distributions After Allowance. | 41 |

ARTICLE IX SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ... 41

| | A. | Release and Channeling of Claims and Termination of Interests. | 41 |
|---|---|---|---|
| | B. | Releases by the Debtors. | 42 |

v

4922-0660-6194

**C.** Releases by the Releasing Parties Other Than the Debtors. ..................................43

**D.** Exculpation. ..................................................................................................43

**E.** Injunction. ....................................................................................................45

**F.** Protections Against Discriminatory Treatment. ....................................................46

**G.** Document Retention. .......................................................................................46

**H.** Reimbursement or Contribution. ........................................................................46

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN................................47

**A.** Conditions Precedent to Confirmation.................................................................47

**B.** Conditions Precedent to the Effective Date. .........................................................47

**C.** Waiver of Conditions.......................................................................................48

**D.** Effect of Failure of Conditions. .........................................................................48

**E.** Substantial Consummation. ...............................................................................48

ARTICLE XI MODIFICATION, REVOCATION, OR  WITHDRAWAL OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ...................................................48

**A.** Modification and Amendments...........................................................................48

**B.** Effect of Confirmation on Modifications. ............................................................49

**C.** Revocation or Withdrawal of Plan......................................................................49

ARTICLE XII CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ......50

**A.** General Bankruptcy Law and Combined Disclosure Statement and Plan Considerations................................................................................................50

    1. The Combined Disclosure Statement and Plan May Not Be Accepted.....50

    2. The Debtors May Not Be Able to Secure Confirmation of the Combined Disclosure Statement and Plan or Confirmation May Be Delayed............50

    3. Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes................................................................................................50

    4. Failure to Consummate the Combined Disclosure Statement and Plan. ...51

4922-0660-6194

5. Plan Releases May Not Be Approved..........................................................51

B. Risks Associated with Forward Looking Statements. ...........................................51

C. Alternatives to Confirmation and Consummation of the Combined Disclosure Statement and Plan..........................................................................................51

ARTICLE XIII  CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN................................55

A. Certain U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Prepetition ABL Claims .........................................................................................50

1. Taxable Exchange. .....................................................................................50

2. Accrued Interest. ........................................................................................50

3. Market Discount..........................................................................................50

B. Backup Withholding and Information Reporting ...................................................50

ARTICLE XIV  RETENTION OF JURISDICTION ....................................................................55

ARTICLE XV   MISCELLANEOUS PROVISIONS ...................................................................57

A. Injunctions or Stays................................................................................................57

B. Severability ............................................................................................................57

C. Binding Effect........................................................................................................57

D. Notices ...................................................................................................................57

E. Governing Law .......................................................................................................57

F. Withholding and Reporting Requirements ............................................................57

G. Headings .................................................................................................................58

H. Computation of Time..............................................................................................58

I. Reference to Monetary Figures...............................................................................58

J. Exhibits/Schedules..................................................................................................58

K. Filing of Additional Documents ............................................................................59

L. No Admissions........................................................................................................59

4922-0660-6194

**M.**    Successors and Assigns...................................................................................59

**N.**    Reservation of Rights......................................................................................59

**O.**    Implementation ..............................................................................................59

**P.**    Inconsistency...................................................................................................59

**Q.**    Dissolution of the Committee .........................................................................59

**R.**    Closing of the Chapter 11 Cases ....................................................................60

**S.**    Request for Expedited Determination of Taxes..............................................60

**T.**    Votes Solicited in Good Faith.........................................................................60

ARTICLE XVI DEFINITIONS AND CONSTRUCTION OF TERMS.......................................60

**A.**    Definitions.......................................................................................................60

**B.**    Rules of Interpretation. ..................................................................................80

EXHIBIT A: Liquidation Analysis

4922-0660-6194

**Important Disclaimers**

This combined disclosure statement and chapter 11 plan of liquidation (as may be revised, amended, or modified from time to time in accordance with the terms hereof, this "***Combined Disclosure Statement and Plan***") describes certain statutory provisions, events in the Chapter 11 Cases, the proposed terms of, and certain documents related to the Combined Disclosure Statement and Plan that may be attached and are incorporated by reference.  Although the Debtors believe that the information set forth herein is fair and accurate, the summaries set forth herein are qualified in their entirety by the specific provisions of the Bankruptcy Code and the underlying documents being summarized.

The information contained herein or attached hereto is made only as of the date of this Combined Disclosure Statement and Plan unless another time is specified.  No representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' business.  Except where specifically noted, the financial information contained in this Combined Disclosure Statement and Plan and in the related exhibits has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles in the United States or any other jurisdiction.

This Combined Disclosure Statement and Plan has been prepared in accordance with sections 1123 and 1125 of the Bankruptcy Code and Bankruptcy Rule 3016.  This Combined Disclosure Statement and Plan is not an offer to sell any securities and is not soliciting an offer to buy any securities.  The information contained in this Combined Disclosure Statement and Plan is included for the purpose of soliciting acceptances of the Combined Disclosure Statement and Plan and may not be relied upon for any purpose other than to determine how to vote on the Combined Disclosure Statement and Plan.  The Debtors are proposing the Combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Debtors are the proponents of the Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code and will ask the Bankruptcy Court to approve this Combined Disclosure Statement and Plan.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving the Debtors or any other party or be deemed conclusive evidence of the tax or other legal effects of the Combined Disclosure Statement and Plan. Certain statements contained herein, by nature, are forward-looking and contain estimates and assumptions.  **There can be no assurance that such statements, including estimated potential recoveries of claimants, will reflect actual outcomes.**

This Combined Disclosure Statement and Plan should not be construed as providing any business, financial, legal, or tax advice.  Therefore, each Holder of a Claim or Interest should consult with its own business, financial, legal, and tax advisors as to any such matters concerning the Combined Disclosure Statement and Plan and the transactions contemplated hereby.

**The Debtors support approval of the Combined Disclosure Statement and Plan and recommend all Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan vote to accept the Combined Disclosure Statement and Plan.**

4922-0660-6194

2

However, prior to deciding whether or how to vote on this Combined Disclosure Statement and Plan, each Holder of a Claim that is entitled to vote should carefully review all of the information in this Combined Disclosure Statement and Plan, including the risk factors described in greater detail herein.

# ARTICLE I
## INTRODUCTION AND GENERAL OVERVIEW

### A.  Company Overview

As of the Petition Date and prior to the Closing of the 363 Asset Sale, the Company[2] was a leading provider of natural gas compression services to upstream and midstream customers in major natural gas producing basins in the United States and offshore in the Gulf of Mexico, with a primary focus on the Permian Basin.  The Company operated a network of seven facilities across Texas, New Mexico, and North Dakota to service the seven states and offshore regions in which it provides compression services.  Through its network of facilities, the Company deployed approximately 940 compression units generating a total of approximately 326,070 horsepower ("***HP***") to provide customers with state of-the-art gas lift and gathering compression services.

As described in greater detail below, following the Sales Process the Bankruptcy Court entered the Sale Order approving the sale of the Acquired Assets to the Stalking Horse Bidder on April 15, 2026.

### B.  The Debtors' Corporate Structure

As of the Petition Date, the Debtors' and non-Debtors' organizational structure consisted of twelve Entities.  Seven of the Entities are Debtors in these Chapter 11 Cases.[3] The principal operating Entity is Axip. The below is a simplified organizational chart of the Company as of the Petition Date, with the Debtor Entities highlighted in yellow.[4]



---

[2]  Capitalized terms not immediately defined in this Combined Disclosure Statement and Plan have the meanings ascribed to them in Art. XVI(A) hereto.

[3]  Each of the Non-Debtor Affiliates is a non-operating Entity with no assets or liabilities.

[4]  Copies of all Filings in the Chapter 11 Cases can be obtained and viewed free of charge at the following website: *https://dm.epiq11.com/AXIP*.

4922-0660-6194

E3 Holdings is the immediate parent company of Axip Management. E3 Holdings is a holding company whose primary assets consist of its direct and/or indirect ownership of the equity interests of each of (a) the other Debtors, and (b) the Non-Debtor Affiliates. E3 Holdings owns 100% of the limited partnership interests in Axip and 100% of the membership interests in Axip Management. As of the Petition Date, E3 Holdings was a guarantor under the Prepetition ABL Credit Agreement and the Prepetition Superpriority Credit Agreement, but was not an obligor under the Prepetition 2L Credit Agreement.

Axip Management owns 100% of the general partnership interests of Axip. Axip Management has no material investments or ownership interests other than its direct ownership of the general partnership interests of Axip. As of the Petition Date, Axip Management was a guarantor under the Prepetition Credit Agreements.

Axip is the Company's primary operating entity and the direct owner of 100% of the equity interests of each of Axip Services; Axip Holdings; and Axip Leasing. As of the Petition Date, Axip was the borrower under each of the Prepetition Credit Agreements. As of the Petition Date, Axip Services, Axip Holdings, and Axip Leasing were each guarantors under the Prepetition Credit Agreements. Axip Services' primary assets consist of its 100% ownership of the equity interest of Axip Marcellus. Axip Leasing owns substantially all of the Company's compression units.

Axip Marcellus is a wholly owned subsidiary of Axip Services. As of the Petition Date, Axip Marcellus was a guarantor under the Prepetition Credit Agreements.

## C.   **Commencement of the Chapter 11 Cases**

As explained more fully in the First Day Declaration, the Company's acquisition by Energy Spectrum in 2022 represented a growth opportunity. Post-acquisition, the Company began executing on its strategy to capitalize on that opportunity by (a) renewing its focus on contracting idle compression units; (b) filling gaps in the market for large, high HP compression units and electric compression units; and (c) optimizing operations. As described in greater detail in the First Day Declaration, when several challenging circumstances with large customer accounts coalesced in 2024, the impact of those challenges was felt across the business, ultimately contributing to the occurrence of events of default under, and the Debtors' inability to secure refinancing for, the Prepetition ABL Facility, a credit facility upon which the Debtors depended for liquidity.

As described below, following these challenges, the Debtors pursued the Refinancing Process and subsequently the Sales Process before commencing these Chapter 11 Cases to continue the Sales Process pursuant to the Bidding Procedures in order to maximize the value of their Estates.

## D.   **The Refinancing Process**

In the face of the looming maturity and upcoming potential defaults under the Prepetition ABL Facility, the Debtors engaged Evercore in March 2025 as their investment banker to assist with refinancing the Prepetition ABL Credit Agreement over the spring and summer of 2025.

4

Although it did not result in a transaction, the Refinancing Process was extensive and thorough. In connection with the Refinancing Process, Evercore contacted approximately 85 parties, which resulted in approximately 51 parties entering into confidentiality agreements and receiving initial diligence materials with more than a dozen providing indications of interest. Nine of those parties proceeded to a second round of due diligence. Throughout the Refinancing Process, Evercore assisted with the resolution of hundreds of questions regarding diligence materials both in a virtual data room and on calls. Although the Refinancing Process was initially intended to close in July 2025, it ultimately extended into early September 2025.

Despite running a robust out-of-court marketing and diligence process over this period, however, the Debtors were unable to identify any party willing to transact on terms and at a level sufficient to meet their financial objectives.

Although the Debtors continued to diligently pursue the Refinancing Process, when the process extended past July 2025 without any actionable proposals, the Debtors needed to address the defaults under the Prepetition ABL Credit Agreement. The Debtors engaged V&E, as restructuring counsel, and Ankura, as financial advisor. The Prepetition ABL Lenders retained the Consenting Creditor Representatives.

### E.   **Forbearance and Pivot to Prepetition Sales Process**

In tandem with the Refinancing Process, the Debtors and the Advisors began working with the Prepetition ABL Lenders and the Consenting Creditor Representatives to comprehensively address the Debtors' funded debt and liquidity constraints. As an initial matter, the Debtors and the Advisors engaged in extensive arm's-length, good-faith negotiations with the Prepetition ABL Lenders and the Consenting Creditor Representatives to negotiate and enter into the Forbearance Agreement with respect to the outstanding defaults. While the parties worked to reach agreement, Energy Spectrum provided additional equity to fund certain interim obligations in August 2025 as the Debtors lacked other capital.

The Forbearance Agreement was initially intended to provide relief related to the defaults while the Debtors completed the Refinancing Process. However, by early September, when the Refinancing Process proved unsuccessful, the parties pivoted to negotiate the Prepetition Superpriority Credit Agreement to provide the Debtors both time and liquidity necessary to pursue the Sales Process described below and engage in certain contingency planning initiatives, including preparing for the filing of these Chapter 11 Cases. Subsequently, the Debtors entered into the Second Forbearance Agreement and Third Forbearance Agreement to provide additional time for the Debtors to continue the Sales Process and prepare for the filing of these Chapter 11 Cases. Critically, the liquidity provided under the Prepetition Superpriority Facility allowed the Debtors to prepare for smooth and expeditious chapter 11 cases, rather than be forced into an emergency, value-destructive filing.

In early September 2025, the Debtors began the Sales Process. As part of the Sales Process, Ben Chesters, a senior managing director at Ankura, was appointed to serve as the Debtors' Chief Restructuring Officer in September 2025 and Peter Laurinaitis joined E3 Holdings as an independent member of the executive committee of E3 Holdings, which has governing and

5

4922-0660-6194

oversight authority over the Debtors, and was granted a formal delegation of authority.[5]  E3 Holdings is the ultimate parent of, and has control over, the other Debtors in these Chapter 11 Cases.

The prepetition Sales Process conducted by Evercore was robust, extensive, and conducted in an attempt to achieve a value-maximizing going concern transaction.  In connection with the prepetition Sales Process, Evercore facilitated a diligence process that included executing confidentiality agreements and providing initial diligence materials to approximately 21 parties and answering more than 125 questions from prospective bidders through a virtual data room and on calls.  At the initial bid deadline, the Debtors had received multiple indications of interest.  The Debtors, with the assistance of their Advisors, management team, and executive committee, including Peter Laurinaitis, negotiated extensively with bidders up to and after the initial bid deadline to improve and define those bids in an effort to increase competitive tension and maximize value, with a particular focus on identifying and developing a value-maximizing bid that could be implemented on an out-of-court basis, while also continuing to engage with any other prospective bidders.

The Debtors attempted to negotiate additional funding during this period, but the Prepetition Superpriority Lenders and Prepetition ABL Lenders were unwilling to provide such funding outside of a bankruptcy process, although the Prepetition ABL Lenders agreed to provide debtor-in-possession financing if a bankruptcy process was necessary.  To continue funding the business while advancing the Sales Process, the Debtors, with the assistance of their Advisors, negotiated with the Prepetition Senior Secured Parties to obtain access to receivables, which had previously been swept pursuant to the Prepetition ABL Credit Agreement.  The Debtors also attempted to source additional funding from other parties, but were unable to reach agreed terms with any such parties.

Ultimately, despite a robust Sales Process, no bid exceeded amounts owed under the Prepetition ABL Facility.  After evaluating all the bids, the Debtors, together with their Advisors and the Prepetition Senior Secured Parties, determined that Service Compression, LLC ("*SC*") had the highest, most actionable, and, therefore, best bid.  It was clear, however, that SC's bid could not be implemented out-of-court and would require a process within a chapter 11 case.  As a result, the Debtors determined to select SC as a stalking-horse bidder for a sale process, which the Debtors would implement through the Chapter 11 Cases to "market check" the SC bid.

F.      **Summary of Capital Structure as of the Petition Date**

The Debtors entered these Chapter 11 Cases with approximately $240.68 million in funded debt liabilities as summarized directly below:

---

[5]   Peter Laurinaitis is an accomplished financial advisor with 30 years of relevant financial, special situations, capital-raising, M&A, and restructuring advisory experience.  Prior to being appointed as an independent member of the executive committee of E3 Holdings, Peter Laurinaitis was not affiliated with the Debtors.

6

4922-0660-6194

| Debt Facilities[6] | Approximate Total Amount Outstanding as of the Petition Date | Maturity |
|---|---|---|
| Prepetition Superpriority Facility | $13.16 million | November 9, 2025 |
| Prepetition ABL Facility | $208.02 million | September 23, 2025 |
| Prepetition 2L Facility | $19.50 million | March 22, 2026 |
| *Total Funded Debt* | *$240.68 million* | |

### 1.    Prepetition Superpriority Facility

On September 23, 2025, the Debtors entered into the Prepetition Superpriority Credit Agreement.  The Prepetition Superpriority Credit Agreement provided for a first lien secured term loan credit facility in an aggregate principal amount of up to $15,653,000.  As of the Petition Date, the obligations under the Prepetition Superpriority Credit Agreement were secured by a first-priority lien on substantially all of the Debtors' prepetition Assets, and the obligations thereunder had payment priority over the obligations under the Prepetition ABL Credit Agreement.

As of the Petition Date, the Debtors' aggregate principal amount of the funded debt obligations under the Prepetition Superpriority Credit Agreement totaled approximately $13,160,147.  In addition, as of the Petition Date, the Debtors owed accrued and unpaid interest under the Prepetition Superpriority Facility.

### 2.    Prepetition ABL Credit Facility

On September 23, 2022, the Debtors entered into the Prepetition ABL Credit Agreement. The Prepetition ABL Credit Agreement provided for a revolving credit and letter of credit facility. As of the Petition Date, the aggregate revolving commitments under the Prepetition ABL Credit Agreement totaled approximately $208,016,181. The obligations under the Prepetition ABL Credit Agreement are secured by a first-priority lien on substantially all of the Debtors' prepetition Assets (subject to the priority structure referenced in the paragraph above regarding the Prepetition Superpriority Credit Agreement).  In addition, the Debtors owe accrued and unpaid interest under the Prepetition ABL Facility.

### 3.    Prepetition 2L Credit Facility

Axip is also the borrower under the Prepetition 2L Credit Agreement which provided initial term loans in an amount equal to $17,581,191.  In connection with their entry into the Prepetition 2L Credit Agreement, the Debtors party thereto granted the lenders thereunder a second-priority security interest in substantially all of the Debtors' prepetition Assets.

The Prepetition 2L Credit Agreement had a scheduled maturity date of March 22, 2026. As of the Petition Date, the Debtors' aggregate principal amount of the funded debt obligations

---

[6]    More information on each of these debt facilities is set forth in the First Day Declaration.

4922-0660-6194

under the Prepetition 2L Credit Agreement totaled approximately $19,500,550. In addition, the Debtors owe accrued and unpaid interest under the Prepetition 2L Credit Agreement.

### G.    Negotiation of the DIP Facility

Prior to the Petition Date, the Debtors and their Advisors engaged in extensive arm's-length, good-faith negotiations with the Prepetition Senior Secured Parties and the Consenting Creditor Representatives to negotiate the DIP Facility. As described in greater detail in the DIP Motion, the DIP Facility, which was approved by the Bankruptcy Court on a final basis on March 18, 2026 consisted of (a) $25,514,587 in new money commitments and (b) loans representing a "roll up" of (i) the full principal amount of the Prepetition Superpriority Loans (including accrued and unpaid interest thereon) and (ii) $66,852,865.34 of Prepetition ABL Loans outstanding under the Prepetition ABL Facility. The proceeds available under the DIP Facility and access to Cash Collateral enabled the Debtors to, among other things, honor employee benefits and wages, procure goods and services, and fund general and corporate operating needs, and the administration of these Chapter 11 Cases. The DIP Facility was repaid from proceeds of the 363 Asset Sale in accordance with the Sale Order on April 15, 2026.

### H.    The Debtors' Operational First-Day Motions and Certain Related Relief

In addition to the DIP Motion, to minimize disruption to the Debtors' operations, upon the commencement of these Chapter 11 Cases, the Debtors filed various first day motions seeking authority to, among other things, (a) continue using the Debtors' existing cash management system; (b) pay certain prepetition claims owed to employees and on account of employee benefit programs and to continue offering employee benefit programs postpetition; (c) pay prepetition claims owed to taxing authorities and continue paying taxes in the ordinary course of business; (d) provide adequate assurance of payment to utility companies; (e) pay certain prepetition claims owed to insurance carriers and continue, extend, or renew the Debtors' insurance programs in the ordinary course of business; and (f) pay certain vendor claims in the ordinary course of business. All of the relief granted by the related first-day Orders and throughout these Chapter 11 Cases are subject to the DIP Orders. On February 24, 2026, the Bankruptcy Court granted the first day relief sought by the Debtors.

### I.    Independent Investigation

In January 2026 the Independent Member hired Davis Polk to serve as his counsel to conduct an independent investigation of certain potential claims and causes of action held by the Debtors and their Estates (the "**Investigation**"). The Investigation covered the four-year period prior to the Petition Date. As part of the Investigation, Davis Polk reviewed over 1,000 documents obtained from the Company and conducted five interviews with key personnel and stakeholders. The Investigation covered, among other things, a review of any transfer activity by the Debtors in the relevant time period; certain related party transactions; and the conduct of Executive Committee members and officers. The Investigation examined potential claims and causes of action of the Debtors arising under bankruptcy law, federal law, state law, or common law, including claims and causes of action for (a) actual fraudulent transfer; (b) constructive fraudulent transfer; (c) avoidance of preferential transfers; (d) breach of fiduciary duty; and (e) recharacterization. In addition to considering factual and legal issues related to potential claims

8

4922-0660-6194

and causes of action, the Investigation also assessed other factors to determine whether any colorable claims and causes of action are worth pursuing, including, among others: likelihood of success in litigation, cost of litigation, disruption to the Debtors and to management that litigation would cause, magnitude of potential damages, and recoverability/collectability.

Based on the Investigation, and considering the totality of the circumstances, the Independent Member has concluded that the Debtors do not have any colorable claims or causes of action that are worth pursuing and, as a result, the proposed releases by the Debtors described in Article IX of the Combined Disclosure Statement and Plan are reasonable and appropriate.

## J.   Postpetition Sales Process and the Approval and Closing of the 363 Asset Sale

On March 5, 2026, the Bankruptcy Court entered the Bidding Procedures Order, approving the Debtors' Bidding Procedures to continue the Sales Process after the Petition Date and approving the designation of SC as the Stalking Horse Bidder. On April 1, 2026, after receiving no other Qualified Bid, the Debtors selected the Stalking Horse Bidder as the Winning Bidder.

On April 7, 2026, the Bankruptcy Court entered the Sale Order, approving the Debtors' entry into the 363 Sale Documents and consummation of the 363 Asset Sale. The 363 Asset Sale closed on April 15, 2026. Following the closing of the 363 Asset Sale, the Net Sale Proceeds were used to irrevocably repay in full all remaining DIP Claims and irrevocably pay certain of the Prepetition ABL Claims in accordance with the Sale Order. In accordance with the Sale Order, the Post-Sale Estates retained approximately $8,600,000 in cash proceeds from the 363 Asset Sale in order to make distributions under the Combined Disclosure Statement and Plan and fund the Wind Down.

## K.  Distributions

On the Effective Date, the Debtors or the Plan Administrator on behalf of the Post-Sale Estates will (a) fund the Claims Reserve in the Claims Reserve Amount and (b) fund the Professional Fee Escrow Account in the Professional Fee Reserve Amount to satisfy certain estimated Claims.

The Debtors or the Plan Administrator on behalf of the Post-Sale Estates will then distribute any remaining proceeds in accordance with the terms of the Combined Disclosure Statement and Plan and Confirmation Order.

## L.   Treatment and Estimated Recoveries of Claims and Interests under the Combined Disclosure Statement and Plan

The Debtors expect to be able to pay all Administrative Claims and Priority Claims in full from proceeds of the 363 Asset Sale. As set forth in the summary table below, Holders of

9

4922-0660-6194

Prepetition ABL Claims will not receive a full recovery[7] and Holders of Prepetition 2L Claims and General Unsecured Claims are expected to receive limited recovery.

The following table sets forth the high-level treatment and estimated recoveries of different stakeholders. The summary is qualified in its entirety by the more detailed descriptions of treatment of Claims and Interests set forth in Articles III and IV and below. As described in further detail herein, Holders of Prepetition ABL Claims received approximately $102.08 million in Cash upon the closing of the 363 Asset Sale on account of (a) Prepetition ABL Claims that were converted into DIP Claims pursuant to the DIP Orders and (b) remaining Prepetition ABL Claims. After accounting for these sale proceeds and the distributions under the Combined Disclosure Statement and Plan set forth below, the estimated aggregate recovery for Holders of Prepetition ABL Claims is 49%.

In exchange for, among other things, such Holders' agreement to support the Combined Disclosure Statement and Plan, Holders of Prepetition 2L Claims received the 2L Payments during the Chapter 11 Cases pursuant to the settlement agreement under the DIP Orders. The estimated recovery throughout the Chapter 11 Cases for Holders of Prepetition 2L Claims on account of the 2L Payments is 4.87%.

As set forth below, pursuant to the Global Settlement between the Debtors, the Holders of Prepetition ABL Claims, and the Committee, Holders of Allowed General Unsecured Claims will receive their pro rata share of the GUC Recovery, subject to the terms set forth herein. The estimated recovery under the Combined Disclosure Statement and Plan for Holders of General Unsecured Claims on account of the GUC Recovery is 40%.

| Class | Claim or Interest | Estimated Size of Pool | Summary of Treatment[8] | Estimated Recovery Under the Combined Disclosure Statement and Plan | Estimated Aggregate Recovery[9] |
|---|---|---|---|---|---|
| 1 | Senior Priority Lien Claims | N/A | N/A | 0% | 0% |
| 2 | Other Priority Claims | N/A | N/A | 0% | 0% |
| 3 | Prepetition ABL Claims | $110.99[10] million | Cash | 0.09% | 49% |

---

[7]   The Prepetition Superpriority Claims became DIP Claims under the DIP Facility. As such, the Prepetition Superpriority Claims are not classified under the Combined Disclosure Statement and Plan.

[8]   For additional detail see Article IV.B below.

[9]   For Holders of Prepetition ABL Claims and Prepetition 2L Claims, the estimated aggregate recovery includes such Holders' recoveries throughout the Chapter 11 Cases, including payments made upon the closing of the 363 Asset Sale and the 2L Payments discussed above.

[10]  Since the interest on the Prepetition ABL Claims is payable in kind, the final Allowed amount of Prepetition ABL Claims will be determined on the Effective Date.

4922-0660-6194

| Class | Claim or Interest | Estimated Size of Pool | Summary of Treatment[8] | Estimated Recovery Under the Combined Disclosure Statement and Plan | Estimated Aggregate Recovery[9] |
|---|---|---|---|---|---|
| 4 | Prepetition 2L Claims | $19.5 million | N/A | 0% | 4.87% |
| 5 | General Unsecured Claims | $1.2 million | Cash | 40% | 40% |
| 6 | Intercompany Claims | N/A | N/A | 0% | 0% |
| 7 | Subordinated Claims | N/A | N/A | 0% | 0% |
| 8 | Intercompany Interests | NA | NA | 0% | 0% |
| 9 | E3 Holdings Interests | NA | NA | 0% | 0% |

**M.  Releases and Exculpation**

**As more fully detailed in Article IX hereof, the Combined Disclosure Statement and Plan contains Debtor Releases, releases of the Released Parties by the Releasing Parties, and an exculpation of the Exculpated Parties.  Please carefully review the release and exculpation provisions.**

### ARTICLE II
### CONFIRMATION AND VOTING PROCEDURES

**A.  Confirmation Procedure**

1.  Confirmation Hearing

On May 15, 2026, the Bankruptcy Court approved the Conditional Approval and Procedures Order conditionally approving the Combined Disclosure Statement and Plan, for solicitation purposes only and authorizing the Debtors to solicit acceptances of the Combined Disclosure Statement and Plan.  The Confirmation Hearing has been scheduled for June 22, 2026 at 10:00 am (prevailing Central Time) in Courtroom 402, Floor 4, 515 Rusk Avenue, Houston, Texas 77002 to consider, among other things, (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code, and (b) confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.  Parties wishing to participate in the Confirmation Hearing may do so in person or remotely through video or audio access as provided on the Bankruptcy Court's website.

2.  Procedure for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or

11

4922-0660-6194

Confirmation of the Combined Disclosure Statement and Plan must be made in writing and Filed with the Bankruptcy Court and served on (a) counsel to the Debtors, Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath, Matthew J. Pyeatt, and Trevor G. Spears, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; (b) counsel to the Prepetition ABL Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue New York, New York 10017, Attn: Elisha D. Graff, Dov Gottlieb, and Zachary J. Weiner; (c) counsel to the Prepetition 2L Agent, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606, Attn: Stephen L. Iacovo and Michael K. Wheat; (d) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jana Whitworth and Ha Nguyen; (e) counsel to the Committee, Pachulski Stang Ziehl & Jones, LLP 1700 Broadway, 36th Floor, New York, New York 10019, Attn: Robert J. Feinstein and Bradford J. Sandler and 700 Louisiana Street, Suite 4500, Houston, Texas 77002, Attn: Michael D. Warner, Maxim B. Litvak, and Theodore S. Heckel; and (f) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002, in each case, by no later than **June 18, 2026 at 5:00 p.m. (CT)**. **Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

3.    Eligibility to Vote on the Combined Disclosure Statement and Plan

Unless otherwise ordered by the Bankruptcy Court, only Holders of Claims in Classes 3, 4, and 5 may vote on the Combined Disclosure Statement and Plan. Further, subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Disclosure Statement and Plan, you must hold a Claim in Class 3, 4, or 5.

4.    Solicitation Notice

All Holders of Claims in Classes 3, 4, and 5 will receive (a) notice of the Confirmation Hearing on the Combined Disclosure Statement and Plan (the "***Confirmation Hearing Notice***") setting forth: (i) the deadline to vote on the Combined Disclosure Statement and Plan, (ii) the deadline to object to Confirmation of the Combined Disclosure Statement and Plan, (iii) procedures for Filing objections and responses to the final approval of the adequacy of the Combined Disclosure Statement and Plan or to confirmation thereof, (iv) the time, date, and place of the Confirmation Hearing, and (v) a QR Code that provides electronic access to the website maintained by the Claims and Noticing Agent which contains all documents required to vote on the Combined Disclosure Statement and Plan; and (b) a form of ballot.

**The Debtors are soliciting votes from Holders of Claims or Interests in Classes 3, 4, and 5. All other Classes of Claims and Interests are not being solicited (collectively, the "*Non-Voting Classes*"). Holders of Claims and Interests in the Non-Voting Classes will receive the Notice of Non-Voting Status that allows such Holders to opt out of the releases provided and disclosed in this Combined Disclosure Statement and Plan. In addition, subject to approval by the Bankruptcy Court, the Debtors proposed not to distribute Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice and Opt-Out Form to: (a) any party to whom the notice of the Disclosure Statement Motion was sent but was subsequently returned as undeliverable without a forwarding address; and (b) the Holders of Class 6 Intercompany Claims, Class 7 Subordinated Claims, Class 8**

4922-0660-6194

**Intercompany Interests, and Class 9 E3 Holdings Interests.**

**The deadline for Holders of Claims and Interests in the Non-Voting Classes to submit their Opt-Out Forms is June 18, 2026 at 5:00 p.m. (prevailing Central Time) (the "*Opt-Out Deadline*").**

5.      Procedure/Voting Deadlines for Classes 3, 4, and 5

In order for your ballot to count, you must either (1) complete an electronic ballot at *https://dm.epiq11.com/AXIP*, and under the case action section of the website clicking on the "E-Ballot" and following the instructions for ballot submission or (2) complete, date, sign and properly mail, courier or personally deliver a paper ballot to the Claims and Noticing Agent at the applicable following addresses (a) if by first-class mail, Axip Energy Services, LP, Claims Processing c/o Epiq Corporate Restructuring, LLC P.O. Box 4422, Beaverton, OR 97005 or (b) if by hand delivery or overnight mail, Axip Energy Services, LP, Claims Processing c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd., Beaverton, OR 97005.  BALLOTS SENT BY FACSIMILE TRANSMISSION OR E-MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Ballots must be submitted electronically, or the Claims and Noticing Agent must physically receive original ballots by mail or overnight delivery, on or before **June 18, 2026 at 5:00 p.m. (CT)** (unless such time is extended by the Debtors) (the "*Voting Deadline*").  Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a ballot is submitted electronically, or the Claims and Noticing Agent receives your original paper ballot.

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection, or abstention, as the case may be, of the Combined Disclosure Statement and Plan.

6.      Acceptance of the Combined Disclosure Statement and Plan

Your acceptance of the Combined Disclosure Statement and Plan is important.  In order for the Combined Disclosure Statement and Plan to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and at least two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Combined Disclosure Statement and Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.  The Debtors recommend that you vote to accept the Combined Disclosure Statement and Plan. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

7.      Elimination of Vacant Classes

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim

13

4922-0660-6194

temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

**B.    Statutory Requirements for Confirmation**

The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if it meets all of the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, because certain Impaired Classes are deemed to reject the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to such Classes and must be feasible.  The Bankruptcy Court must also find, among other things, that:

> a.    the Combined Disclosure Statement and Plan has classified Claims and Interests in a permissible manner;
>
> b.    the Combined Disclosure Statement and Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and
>
> c.    the Combined Disclosure Statement and Plan has been proposed in good faith.

1.    Classification of Claims and Interests

Section 1122 of the Bankruptcy Code requires the Combined Disclosure Statement and Plan to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class.  The Debtors believe that the Combined Disclosure Statement and Plan's classifications place substantially similar Claims or Interests in the same Classes, and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

2.    Impaired Claims or Interests

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes Impaired by the Combined Disclosure Statement and Plan and that may potentially receive a payment or distribution under the Combined Disclosure Statement and Plan may vote on the Combined Disclosure Statement and Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Interests may be Impaired if the Combined Disclosure Statement and Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class.  The Holders of Claims in Classes not Impaired by the Combined Disclosure Statement and Plan are deemed to accept the Combined Disclosure Statement and Plan and do not have the right to vote on the Combined Disclosure Statement and Plan.  The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Combined Disclosure Statement and Plan are deemed to reject the Combined Disclosure Statement and Plan and do not have the right to vote.  Finally, the Holders of Claims or Interests whose Claims or Interests are not classified under the Combined Disclosure Statement and Plan are not entitled to vote on the Combined Disclosure Statement and Plan.

4922-0660-6194

3.    Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Combined Disclosure Statement and Plan or (b) receive or retain under the Combined Disclosure Statement and Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  A hypothetical chapter 7 liquidation analysis is attached hereto as **Exhibit A**.

To calculate the probable distribution to Holders of each Impaired Class of Claims and Interests if the Debtors were liquidated under chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Assets if the Chapter 11 Cases were converted to chapter 7 cases under the Bankruptcy Code.  Because the Combined Disclosure Statement and Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan.  The Debtors believe, however, that in a chapter 7 liquidation, there would be additional costs, expenses and delays that would be incurred as a result of the appointment of a chapter 7 trustee who likely would hire a new and different set of professional advisors to evaluate the situation before making any distributions to creditors in accordance with the priorities established under chapter 7 of the Bankruptcy Code.

Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of counsel and other professionals retained by the chapter 7 trustee, all unpaid expenses incurred by the Debtors in these Chapter 11 Cases (such as compensation of attorneys, financial advisors and accountants that are allowed in the chapter 7 cases), litigation costs, and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases. Moreover, a chapter 7 trustee would be entitled to statutory fees relating to the distribution of the Debtors' Assets.  Accordingly, a portion of the Cash currently estimated to be available for distribution to Holders of Claims would instead be paid to a chapter 7 trustee and her/his advisors.

The Debtors believe that anticipated recoveries to each Class of Impaired Claims under the Combined Disclosure Statement and Plan implies a greater or equal recovery to Holders of Claims in Classes than the recovery available in a chapter 7 liquidation.  Accordingly, the Debtors believe that the "best interests" test of section 1129 of the Bankruptcy Code is satisfied.

4.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan).  Based on the Debtors' analysis and its existing cash on hand, the Plan Administrator will have sufficient assets pursuant to the Wind-Down Budget to accomplish its tasks and satisfy its obligations under the Combined Disclosure Statement and Plan. Therefore, the Debtors believe that the liquidation pursuant to the Combined Disclosure Statement and Plan will meet the feasibility requirements of the Bankruptcy Code.

4922-0660-6194

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, DIP Claims, Adequate Protection Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

A. **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator on behalf of the Post-Sale Estates, as applicable, each Holder of an Allowed Administrative Claim (other than Professional Claims, Assumed Purchaser Administrative Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the Claims Reserve equal to the unpaid amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Plan Administrator on behalf of the Post-Sale Estates, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court. Notwithstanding the foregoing, Assumed Purchaser Administrative Claims shall be (and have been) assumed by the Purchaser and shall be paid by the Purchaser. From and after the Effective Date, each Holder of an Allowed Assumed Purchaser Administrative Claim shall have recourse for payment of such Claim solely against the Purchaser and its assets and property and shall be deemed to have waived and released any recourse against the Debtors, the Plan Administrator, the Post-Sale Estates, or their respective assets or property for payment or recovery on such Claims.

B. **Statutory Fees**

All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Plan Administrator, on behalf of the Post-Sale Estates, shall pay any and all Statutory Fees when due and payable. The Plan Administrator on behalf of the Post-Sale Estates shall file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Plan Administrator on behalf of the Post-Sale Estates, shall file with the Bankruptcy Court quarterly, Post-Confirmation Reports when they become due. Each and every one of the Debtors shall be and shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S.

4922-0660-6194

Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Combined Disclosure Statement and Plan.

## C.   **Administrative Claims Bar Date**

Except as otherwise provided herein, requests for payment of Administrative Claims, including Claims arising from liabilities incurred by a Debtor in the ordinary course of business on or after the Petition Date but prior to the Effective Date and not paid within 20 days of the Effective Date (other than Professional Claims) must be Filed and served on the Debtors or the Plan Administrator, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 30 days after the Effective Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Plan Administrator, the Post-Sale Estates, the Estates, or their respective properties. Objections to such requests, if any, must be Filed and served on the Debtors or the Plan Administrator, as applicable, and the requesting party no later than the 60 days after the Effective Date.

## D.   **Professional Claims**

### 1.   Final Fee Applications and Payment of Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date; *provided that*, the Debtors or the Plan Administrator may pay Professionals or other Entities in the ordinary course of business for services rendered after the Effective Date; *provided*, *further*, that the Debtors or the Plan Administrator shall pay the retained Professionals for fees and expenses incurred after the Effective Date in connection with the preparation of final fee applications in the ordinary course without the need for approval of the Bankruptcy Court. Objections to any Professional Claim, if any, must be Filed and served on the Debtors or the Plan Administrator and the applicable Professional no later than 21 days after such Professional Claim is filed with the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and opportunity for a hearing in accordance with the Interim Compensation Order. The Debtors or Plan Administrator, as applicable, shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Reserve Account, which will be held in trust for the Professionals and funded with Cash equal to the Professional Claim Reserve Amount on the Effective Date.

### 2.   Professional Fee Reserve Account

On the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve Account with Cash equal to the Professional Claim Reserve Amount (it being understood that the Professional Fee Escrow Account shall serve as the Professional Fee Reserve Account). The Professional Fee Reserve Account shall be maintained in trust solely for the benefit of the Professionals. Such funds shall not be considered property of the Debtors' Estates or of the Post-Sale Estates. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Plan Administrator from the Professional Fee Reserve Account as soon as

4922-0660-6194

reasonably practicable after such Professional Claims are Allowed.  When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Reserve Account shall promptly be irrevocably paid to the ABL Agent without any further action or order of the Bankruptcy Court.

3.    Professional Claim Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, as well as the estimated fees and expenses to be incurred in connection with preparing and filing any final fee applications, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or the Plan Administrator may estimate the unpaid and unbilled fees and expenses of such Professional.

4.    Post-Plan Effective Date Professional Fees and Expenses

Except as otherwise specifically provided in this Combined Disclosure Statement and Plan, from and after the Effective Date, subject only to the terms of the Combined Disclosure Statement and Plan and the Plan Administrator Agreement, the Plan Administrator may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

## E.   DIP Claims

Upon the Closing of the 363 Asset Sale, or as soon as reasonably practicable thereafter, in accordance with the DIP Orders and Sale Order, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of any DIP Claims the DIP Claims were repaid in full by the Debtors.

## F.   Adequate Protection Claims

On the Effective Date, any Adequate Protection Claims shall be deemed to be waived and released.

Pursuant to the DIP Orders, the Prepetition 2L Lenders received the 2L Payments in exchange for agreeing to cooperate with the Debtors to support the Sales Process and this Combined Disclosure Statement and Plan.

## G.   Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of such Allowed Priority Tax Claim (other than Assumed Purchaser Priority Tax Claims) will be paid in full in Cash from the Claims Reserve on or as soon

4922-0660-6194

as reasonably practicable after the latest of:  (a) the Effective Date; (b) the date such Priority Tax Claim is Allowed; and (c) the date such Allowed Priority Tax Claim becomes due and payable.

Notwithstanding the foregoing, a Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.  Any such Claims or demands for any such penalty shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Combined Disclosure Statement and Plan, if not subordinated to General Unsecured Claims pursuant to an order of the Bankruptcy Court.  The Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Plan Administrator, the Post-Sale Estates or their respective property (other than as a Holder of a General Unsecured Claim and treated in accordance with Article IV of the Combined Disclosure Statement and Plan).

Notwithstanding the foregoing, Assumed Purchaser Priority Tax Claims shall (and have been) assumed by the Purchaser and shall be paid by the Purchaser.  From and after the Effective Date, each Holder of an Allowed Assumed Purchaser Priority Tax Claim shall have recourse for payment of such Claim solely against the Purchaser and its assets and property and shall be deemed to have waived and released any recourse against the Debtors, the Plan Administrator, the Post-Sale Estates, or their respective assets or property for payment or recovery on such Claims.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.  Classification of Claims and Interests

Except for the Claims addressed in Article III hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Class(es) to the extent that any portion of the Claim or Interest fits within the description of such other Class(es).  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  Holders of Allowed Claims against more than one Debtor shall be treated as having a single Allowed Claim solely for purposes of any distribution.

The classification of Claims and Interests against the Debtors pursuant to the Combined Disclosure Statement and Plan is as follows:

4922-0660-6194

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Senior Priority Lien Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition ABL Claims | Impaired | Entitled to Vote |
| Class 4 | Prepetition 2L Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | E3 Holdings Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## B.   Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Combined Disclosure Statement and Plan the treatment described below, and such Claims and Interests shall, for the avoidance of doubt, be subject to the injunction contained in Article IX.E. of this Combined Disclosure Statement and Plan, except to the extent different treatment is agreed to by the Debtors or the Plan Administrator, as applicable, on the one hand, and the Holder of such Allowed Claim or Allowed Interest, on the other hand.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is considered Disallowed and shall be expunged without further action by the Debtors or the Plan Administrator, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.   Class 1 – Senior Priority Lien Claims

a.   *Classification*: Class 1 consists of all Senior Priority Lien Claims.

b.   *Treatment:* To the extent there are any Allowed Senior Priority Lien Claims, unless the Holder of such Claim and the applicable Debtor or the Plan Administrator, as applicable, agree to a different treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Senior

20

4922-0660-6194

Priority Lien Claim (if any) shall receive, at the option of the applicable Debtor or the Plan Administrator:

(i)      payment in full in Cash from the Claims Reserve of its Allowed Senior Priority Lien Claim;

(ii)     the collateral securing its Allowed Senior Priority Lien Claim; or

(iii)    such other treatment that renders its Allowed Senior Priority Lien Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

c.    *Voting*: Class 1 is Unimpaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

2.    <u>Class 2 – Other Priority Claims</u>

a.    *Classification*: Class 2 consists of all Other Priority Claims.

b.    *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash from the Claims Reserve, on the Effective Date, or as soon as practicable thereafter, unless the Holder of such Claim and the applicable Debtor or the Plan Administrator, as applicable, agree to a different treatment.

c.    *Voting*: Class 2 is Unimpaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

3.    <u>Class 3 – Prepetition ABL Claims</u>

a.    *Classification*: Class 3 consists of all Prepetition ABL Claims.

b.    *Allowance*:  On the Effective Date, the Prepetition ABL Claims shall be Allowed, without setoff, subordination, defense, or counterclaim, in the aggregate principal amount equal to (x) $110,992,378,[11] plus (y) any and all accrued and unpaid interest, fees, expenses, and indemnification or other

---

[11]   Since the interest on the Prepetition ABL Claims is payable in kind, the final Allowed amount of Prepetition ABL Claims will be determined on the Effective Date.

4922-0660-6194

obligations of any kind payable under the Prepetition ABL Credit Documents under the DIP Orders;

c. *Treatment*: In exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Prepetition ABL Claim, each Holder of an Allowed Prepetition ABL Claim shall receive, in addition to the payments made from Net Sale Proceeds upon the closing of the 363 Asset Sale: (i) its (a) Pro Rata share of the Prepetition ABL Cash Distribution, payable on the Effective Date or as soon as reasonably practicable thereafter and (b) its Pro Rata share of the Residual Payment, or (ii) such other treatment as agreed by the Debtors and the applicable Holder of an Allowed Prepetition ABL Claim.

d. *Voting*: Class 3 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4. <u>Class 4 – Prepetition 2L Claims</u>

a. *Classification*: Class 4 consists of all Prepetition 2L Claims.

b. *Allowance*: On the Effective Date, the Prepetition 2L Claims shall be Allowed, without setoff, subordination, defense, or counterclaim, in the aggregate principal amount of $19,500,550.59.

c. *Treatment*: Holders of Prepetition 2L Claims have received the 2L Payments during the pendency of the Chapter 11 Cases. On the Effective Date, all Prepetition 2L Claims will be canceled, released, extinguished and discharged. Holders of Prepetition 2L Claims will receive no further recovery or distribution on account of such Claims other than the releases provided by the Releasing Parties to the Released Parties pursuant to the Combined Disclosure Statement and Plan.

d. *Voting*: Class 4 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

5. <u>Class 5 – General Unsecured Claims</u>

a. *Classification*: Class 5 consists of all General Unsecured Claims.

b. *Treatment*: In exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed General Unsecured Claim not assumed by the Purchaser pursuant to the 363 Asset Sale each Holder of an Allowed General Unsecured Claim not assumed by the Purchaser pursuant to the 363 Asset Sale shall receive: its (i) Pro Rata share of the GUC Recovery, payable on the Effective Date or as soon as reasonably practicable thereafter, but in no event later than 150 days

22

4922-0660-6194

following the Effective Date, or (ii) such other treatment as agreed by the Debtors and the applicable Holder of an Allowed General Unsecured Claim. For the avoidance of doubt, to the extent not waived, each Holder of an Allowed Deficiency Claim shall not be entitled to any distribution from the GUC Recovery.  Further, for the avoidance of doubt, each Holder of an Allowed Prepetition Sponsor Claim shall receive the same treatment as each Holder of any other Allowed General Unsecured Claim that is not an Allowed Deficiency Claim, subject in all respects to the Agreed Prepetition Sponsor Claim Reduction.

    *c.*    *Voting*: Class 5 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

6.    Class 6 – Intercompany Claims

    *a.*    *Classification*: Class 6 consists of all Intercompany Claims.

    *b.*    *Treatment*: Holders of Intercompany Claims will not receive any distribution on account of such Claims and shall be canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect.

    *c.*    *Voting*: Class 6 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 6 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

7.    Class 7 – Subordinated Claims

    *a.*    *Classification*: Class 7 consists of all Subordinated Claims.

    *b.*    *Treatment*: Holders of Subordinated Claims shall not receive any distribution on account of such Subordinated Claims.  On the Effective Date, all Subordinated Claims shall be discharged, cancelled, released, and extinguished as of the Effective Date, and shall be of no further force or effect.

    *c.*    *Voting*: Class 7 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 7 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

8.    Class 8 – Intercompany Interests

    *a.*    *Classification*: Class 8 consists of all Intercompany Interests.

23

4922-0660-6194

b.    *Treatment*: Holders of Intercompany Interests will not receive any distribution on account of such Interests and shall be canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect.

c.    *Voting*: Class 8 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 8 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

9.    <u>Class 9 – E3 Holdings Interests</u>

a.    *Classification*: Class 9 consists of E3 Holdings Interests.

b.    *Treatment*: Holders of E3 Holdings Interests will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

c.    *Voting*: Class 9 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 9 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

## C.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided herein, nothing under the Combined Disclosure Statement and Plan shall affect the Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## D.    **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Combined Disclosure Statement and Plan for purposes of voting to accept or reject the Combined Disclosure Statement and Plan and for purposes of determining acceptance or rejection of the Combined Disclosure Statement and Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.    **Voting Classes, Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Combined Disclosure Statement and Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Combined Disclosure Statement and Plan.

24

4922-0660-6194

**F.   Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**G.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Combined Disclosure Statement and Plan by one or more of the Classes entitled to vote pursuant to Article IV.B herein.   The Debtors shall seek Confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.   The Debtors reserve the right to modify the Combined Disclosure Statement and Plan in accordance with Article XI herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**H.   Subordinated Claims**

Except as described in the Combined Disclosure Statement and Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Combined Disclosure Statement and Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Plan Administrator, as applicable, reserve the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION**
**OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.   Vesting of Certain Assets and Abandonment of Certain Assets**

Unless otherwise specified in this Combined Disclosure Statement and Plan, all Assets (other than the Non-Vesting Assets) not sold pursuant to the 363 Asset Sale or otherwise prior to the Effective Date will vest in the Post-Sale Estates for the purpose of winding down the Estates pursuant to this Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan shall constitute a motion to abandon the Non-Vesting Assets.   The Confirmation Order shall constitute (i) an authorization of the Bankruptcy Court to abandon the Non-Vesting Assets under section 554 of the Bankruptcy Code and (ii) an order of abandonment of the Non-Vesting Assets as of the Effective Date.   The Non-Vesting Assets shall not vest in the Post-Sale Estates, and the Post-Sale Estates shall have no ownership interest in the Non-Vesting Assets.

25

4922-0660-6194

### B.   Post-Sale Estates

On and after the Effective Date, the Post-Sale Estates shall continue in existence for purposes of (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget, (ii) resolving Disputed Claims, (iii) making distributions on account of Allowed Claims as provided hereunder, (iv) funding distributions in accordance with the Combined Disclosure Statement and Plan, (v) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (vi) filing appropriate tax returns and regulatory notices, (vii) complying with their respective continuing obligations under the Combined Disclosure Statement and Plan, the Confirmation Order, the 363 Asset Sale Documents, if any, and the DIP Orders (as applicable), and (viii) administering the Combined Disclosure Statement and Plan in an efficacious manner.

### C.   Plan Administrator

On and after the Effective Date, the Plan Administrator shall act for the Post-Sale Estates in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body, subject to the provisions hereof.  In doing so, the Plan Administrator shall use best efforts to operate in a manner consistent with the Wind-Down Budget.

### D.   Abandonment of Other Assets

Unless otherwise specified in this Combined Disclosure Statement and Plan, the Debtors or Plan Administrator, as applicable, may, on no less than 14 days' written notice to the U.S. Trustee, abandon any Assets not sold pursuant to the 363 Asset Sale or otherwise which the Debtors or Plan Administrator, as applicable, determine are burdensome to the Debtors or the Post-Sale Estates, including any pending adversary proceeding or other legal action commenced or commenceable by any Debtor prior to the Effective Date; *provided* that if the U.S. Trustee provides a written objection to the Debtors or Plan Administrator, as applicable, prior to the expiration of such 14 day period with respect to the proposed abandonment of any Asset of the Debtors, then such property may be abandoned only pursuant to an order by the Bankruptcy Court; *provided*, *further*, that upon the occurrence of the Effective Date, all Avoidance Actions against non-insiders of each of the Debtors shall be automatically and irrevocably waived and/or abandoned by the Debtors or the Plan Administrator, as applicable.

### E.   General Settlement of Claims and Interests

On May 6, 2026, following arms'-length good faith negotiations, the Global Settlement Parties agreed to the Global Settlement and entered into the Global Settlement Term Sheet.  The terms of the Global Settlement are incorporated into the Combined Disclosure Statement and Plan and include, among other things, the treatment of Class 5 described below and the Committee's agreement to support the Combined Disclosure Statement and Plan.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Combined Disclosure Statement and Plan, upon the Effective Date, the provisions of the Combined

26

4922-0660-6194

Disclosure Statement and Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with the Debtors and the Chapter 11 Cases, except for those expressly preserved by the Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, issues, disputes and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to the provisions herein, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

## F.  **Segregated Accounts for Distributions**

### 1.  Claims Reserve

The Claims Reserve shall be held in trust in a segregated account by the Plan Administrator for distributions and/or payment in accordance with the terms herein.  After all applicable distributions are made from the Claim Reserves, any surplus Cash in the Claims Reserve shall be distributed pursuant to this Combined Disclosure Statement and Plan and the Confirmation Order. Such surplus shall be determined by the Debtors or the Plan Administrator based on the potential amount of Allowed Senior Priority Lien Claims, Administrative Claims, and Other Priority Claims that remain unpaid as of such date of determination.

### 2.  Professional Claim Reserve Escrow Account

The Professional Claim Reserve Amount shall be held in trust in a segregated Professional Fee Reserve Account by the Plan Administrator for distributions or payment in accordance with the terms of Article III of the Combined Disclosure Statement and Plan. Any Cash held in the Professional Fee Reserve Account after all applicable distributions and/or payments are made shall be distributed pursuant to this Combined Disclosure Statement and Plan and the Confirmation Order.

## G.  **Corporate Existence and Dissolution Transactions**

On or after the Effective Date, each of the Debtors will be subject to a Dissolution Transaction.  The equity or membership interests of each Debtor entity that is not subject to a Dissolution Transaction on the Effective Date will vest in the Post Sale Estates pursuant to this Disclosure Statement and Plan.  For the avoidance of doubt, the Debtor entities that are not subject to a Dissolution Transaction on the Effective Date will continue to exist after the Effective Date for the limited purpose of completing the Wind Down.  Promptly after completing the Wind Down, such entities shall be dissolved by the Plan Administrator.

The actions to effect the Dissolution Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation,

27

4922-0660-6194

disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Combined Disclosure Statement and Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Combined Disclosure Statement and Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that the Plan Administrator determines to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

## H.  Cancellation of Existing Securities and Agreements

On the Effective Date, except to the extent otherwise provided in the Combined Disclosure Statement and Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (including the DIP Documents, the Prepetition ABL Credit Documents, Prepetition 2L Credit Documents, and E3 Holdings Interests), and any E3 Holdings Interests that are not represented by certificates or other instruments shall be cancelled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be of no force or effect against the Debtors, without any further action on the part of the Debtors, the Plan Administrator, or any other party.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Combined Disclosure Statement and Plan.

Notwithstanding anything to the contrary herein, but subject to any applicable provisions of the Combined Disclosure Statement and Plan, the Prepetition ABL Credit Documents, and Prepetition 2L Credit Documents shall continue in effect as between all non-Debtors to permit: (i) Holders of DIP Claims, Prepetition ABL Claims, and Prepetition 2L Claims to receive their respective distributions under the Combined Disclosure Statement and Plan, as applicable; and (ii) the respective agents or trustees under any of the foregoing to assert any charging or similar liens or future claims against the Plan Administrator and the Post-Sale Estates for indemnification obligations under the applicable DIP Documents, Prepetition ABL Credit Documents and Prepetition 2L Credit Documents, and to make distributions on account of the Allowed Claims under the relevant documents and deduct therefrom such reasonable compensation, fees, and expenses due to the agents or trustees under such documents.

Notwithstanding anything to the contrary in this Article V, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article V shall be deemed null and void and shall be of no force and effect.

4922-0660-6194

**I.    Release of Liens**

Except as otherwise provided in the Combined Disclosure Statement and Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Combined Disclosure Statement and Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Articles III and IV, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or Interests in property of any Estate shall be deemed fully released and discharged.

**J.    Corporate Governance, Directors, and Officers**

1.    Certificates of Incorporation and Bylaws

Consistent with the terms hereof, each of the Debtors will cease to exist, and all existing certificates of incorporation, certificates of formation, and bylaws of each of the Debtors will be deemed canceled, without notice, leave, action, or Order of the Bankruptcy Court, effective as of the Effective Date.

2.    Directors and Officers

As of the Effective Date, the term of the current members of the board of directors, board of managers, or executive committee, as applicable, of each of the Debtors shall expire automatically and each person serving as a director, manager, or officer of the Debtors shall be removed and shall automatically be deemed to have resigned and cease to serve.  Consistent with the terms hereof and subject to Article V.C, each of the Debtors will cease to exist effective as of the Effective Date and, thus, no individuals will serve as directors, managers, or officers after the Effective Date.

**K.    Director and Officer Liability Insurance**

The Debtors (i) have made arrangements to continue the Debtors' current fiduciary liability policy through the purchase of a run-off or "tail" policy or policies, for the six-year period from and after the Effective Date, for the benefit of any person who is serving or has served as one of the Debtors' directors, officers, managers, members of the executive committee of any Debtor, or employees at any time prior to the Effective Date, and (ii) have fully paid the premium for such insurance.  Any and all directors and officers liability insurance and fiduciary liability insurance in existence as of the Effective Date shall be continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Post-Sale Estates pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the foregoing deemed assumption of such insurance in existence as of the Effective Date.  All directors, officers, managers, members of the executive committee of any Debtor, or employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies, to the extent set forth therein, regardless of whether such directors, officers, managers, members of the executive committee of any Debtor, or employees remain in such positions after the Effective Date.

29

4922-0660-6194

**L.    Preservation of Causes of Action**

Except as provided herein or in any contract, instrument, release or other agreement entered into or delivered in connection with this Combined Disclosure Statement and Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Post-Sale Estates will retain and may enforce, as successors to the Debtors, any claims, demands, rights and Causes of Action that any Estate may hold against any Person to the extent not satisfied, settled, and released under this Combined Disclosure Statement and Plan or otherwise, including the Retained Causes of Action; *provided that*, the Post-Sale Estates will not retain any Causes of Action that were assigned to the Purchaser in connection with the 363 Asset Sale or that constitute Avoidance Actions against non-insiders of the Debtors, each of which are automatically and irrevocably waived and/or abandoned hereunder.  The Plan Administrator shall have standing and authority to pursue any such retained claims, demands, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Post-Sale Estates.  Except as otherwise provided herein, in accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Debtors or Estates may hold against any Person.  The Debtors intend to preserve all such claims, demands, rights, or causes of action as Retained Causes of Action (except as assigned to the Purchaser in connection with the 363 Asset Sale or otherwise provided herein or to the extent any such claim is specifically satisfied, settled, and released herein).

**M.    Substitution in Pending Legal Actions**

On the Effective Date, the Post-Sale Estates or the Plan Administrator, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court and (iii) any state court or federal or state administrative proceedings pending as of the Petition Date. The Plan Administrator and each of their professionals, as applicable, are not required to, but may take such steps as are appropriate to provide notice of such substitution.

**N.    Effectuating Documents; Further Transactions**

The Debtors (prior to the Effective Date) and the Plan Administrator on behalf of the Post-Sale Estates (following the Effective Date) are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and evidence the terms and conditions of this Combined Disclosure Statement and Plan and the Dissolution Transactions, in each case, in the name of and on behalf of any Debtor or the Post-Sale Estates, as applicable, without the need for any approvals, authorization or consents except those expressly required pursuant to this Combined Disclosure Statement and Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording Tax, stamp Tax, conveyance fee, intangibles or similar Tax, real estate transfer Tax, sale or use Tax, mortgage recording Tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar Tax: (a) any sales of assets made

30

4922-0660-6194

by the Debtors under section 363 of the Bankruptcy Code, to the extent that title to the assets being sold transfers after the Confirmation Date; (b) the making or assignment of any lease or sublease; (c) any Dissolution Transactions; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Combined Disclosure Statement and Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Combined Disclosure Statement and Plan.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to reject all Executory Contracts and Unexpired Leases, other than the Retained Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, except for any Executory Contract or Unexpired Lease: (1) that has been assumed by the Debtors and assigned to the Purchaser in connection with the 363 Asset Sale; (2) that has been previously rejected or assumed by a Final Order; (3) that is the subject of a separate motion to assume or reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) that is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; (5) that is a Retained Executory Contract or Unexpired Lease, or (6) that has previously expired or terminated pursuant to its own terms or by agreement of the parties thereto.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's order approving the rejection of Executory Contracts or Unexpired Leases as set forth herein pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, the rejection of Executory Contracts and Unexpired Leases pursuant to the Combined Disclosure Statement and Plan are effective as of the Effective Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

### B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Combined Disclosure Statement and Plan or the Confirmation Order if any, must be Filed with the Bankruptcy Court in accordance with the Bar Date Order by the Rejection Damages Bar Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, or the Post-Sale Estates, or any of their respective properties without the need**

4922-0660-6194

**for any objection by the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of this Combined Disclosure Statement and Plan.

## C.   Insurance Contracts

On the Effective Date, the Debtors' rights under and to each Insurance Contract shall automatically vest in the Post-Sale Estates as of the Effective Date without necessity for further approvals or orders.  Confirmation and consummation of this Combined Disclosure Statement and Plan, and the vesting of the Insurance Contracts in the Post-Sale Estates as set forth herein, shall not impair or otherwise affect (x) any party's rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, including any claims pursued or made by the Plan Administrator on behalf of the Post-Sale Estates, or (y) any available defenses of the Debtors or the Plan Administrator or any Insurer under the Insurance Contracts.

To the extent that any Insurance Contracts are deemed Executory Contracts or Unexpired Leases, unless such Insurance Contracts have been rejected pursuant to an order of the Bankruptcy Court, notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan: (a) from and after the Effective Date, all Insurance Contracts will be assumed by the Post-Sale Estates pursuant to section 365 of the Bankruptcy Code or continued in accordance with their terms, such that each of the parties' contractual, legal and equitable rights under each Insurance Contract shall remain unaltered; (b) the parties to each Insurance Contract will continue to be bound by such Insurance Contract as if the Chapter 11 Cases had not occurred; (c) nothing in the Combined Disclosure Statement and Plan shall affect, impair or prejudice the rights and defenses of the insurers or the Plan Administrator under the Insurance Contracts in any manner, and such insurers and the Plan Administrator shall retain all rights and defenses under the Insurance Contracts, and the Insurance Contracts shall apply to, and be enforceable by and against, the Plan Administrator and the applicable Insurer(s) as if the Chapter 11 Cases had not occurred; and (d) nothing in the Combined Disclosure Statement and Plan shall in any way operate to, or have the effect of, impairing any party's legal, equitable or contractual rights, obligations and/or claims under any Insurance Contract, if any, in any respect, and any such rights and obligations shall be determined under the Insurance Contracts, any agreement of the parties and applicable law.

## D.   Reservation of Rights

Nothing contained in the Combined Disclosure Statement and Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Post-Sale Estates have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Plan Administrator, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

4922-0660-6194

**E.    Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contract or Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**F.    Contracts and Leases Entered into After the Petition Date**

All of the Debtors' rights and obligations under the 363 Asset Purchase Agreement or any transaction documents related to the 363 Asset Sale shall be assigned to and vest in the Post-Sale Estates.

Unless otherwise provided herein, contracts and leases entered into or assumed by the Debtors after the Petition Date that are not assigned to the Purchaser or the Post-Sale Estates shall be considered repudiated by the Debtors as of the Effective Date, and the counterparties to such contracts, if they believe that such repudiation constitutes a breach of such contract or lease, must File a Claim within 30 days of the Effective Date in accordance with this Combined Disclosure Statement and Plan or have their rights forever satisfied, settled, released, and discharged.

**ARTICLE VII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.    Distributions for Claims Allowed as of the Effective Date**

Unless otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth herein.  Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered before, on or at any time after the Effective Date.

Distributions to the Holders of Allowed General Unsecured Claims shall be made no later than 150 days of the Effective Date.

**B.    Entitlement to Distributions**

On and after the Effective Date, the Disbursing Agent shall be authorized to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date. Accordingly, the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of

33

business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

## C.  **Disbursing Agent**

All distributions under the Combined Disclosure Statement and Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Sale Estates.

## D.  **Rights and Powers of Disbursing Agent**

### 1.  Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Combined Disclosure Statement and Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Combined Disclosure Statement and Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Combined Disclosure Statement and Plan.

### 2.  Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including Taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Plan Administrator.

### 3.  No Liability

Except on account of gross negligence or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with this Combined Disclosure Statement and Plan or in reliance upon information provided to it in accordance with this Combined Disclosure Statement and Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of this Combined Disclosure Statement and Plan.

4922-0660-6194

E. **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

    1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    2.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator.

    3.    Minimum Distributions

No distribution shall be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

    4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of Allowed Claims (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Post-Sale Estates automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

    5.    Surrender of Cancelled Instruments or Securities

On the Effective Date, and as a condition precedent to receiving any distribution, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Except as provided otherwise in Article V, such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which

35

shall continue in effect for purposes of allowing Holders to receive distributions under the Combined Disclosure Statement and Plan, charging liens, priority of payment, and indemnification rights.  On the Effective Date each Holder of a E3 Holdings Interest that is not represented by a certificate or other instrument shall be deemed to have surrendered such E3 Holdings Interests to the Disbursing Agent, which E3 Holdings Interests shall be cancelled in accordance with the immediately preceding sentence.

### F.   Manner of Payment

All distributions of Cash to the Holders of the applicable Allowed Claims under the Combined Disclosure Statement and Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### G.   Compliance with Tax Requirements

In connection with the Combined Disclosure Statement and Plan, to the extent applicable, the Debtors, Plan Administrator, Disbursing Agent, and any applicable withholding agent shall comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Combined Disclosure Statement and Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Combined Disclosure Statement and Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Combined Disclosure Statement and Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Debtors, Plan Administrator, Disbursing Agent, and any applicable withholding agent to comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, including an Internal Revenue Service Form W-8 or W-9, as applicable, and any other applicable tax forms.  The Debtors and Plan Administrator reserve the right to allocate all distributions made under the Combined Disclosure Statement and Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.  Any amounts withheld pursuant to the Combined Disclosure Statement and Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Combined Disclosure Statement and Plan. Notwithstanding any other provision of the Combined Disclosure Statement and Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other Tax obligations, on account of such distribution.  Further, notwithstanding any provision of the Combined Disclosure Statement and Plan, nothing contained herein shall alter the Purchaser's obligations with regard to any Assumed Purchaser Priority Tax Claims.

36

4922-0660-6194

## H.  Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## I.  No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Combined Disclosure Statement and Plan, the Confirmation Order or the Final DIP Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. For the avoidance of doubt, Holders of Prepetition ABL Claims and Holders of Prepetition 2L Claims shall be entitled to interest accruing on or after the Petition Date on such Claims at the applicable interest rates specified in the Final DIP Order.  As discussed herein, upon the closing of the 363 Asset Sale all DIP Claims were satisfied in full, including all interest accruing on or after the Petition Date on such Claims.

## J.  Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

## K.  Setoffs and Recoupment

Except as expressly provided herein, the Plan Administrator or Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtors held against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Plan Administrator and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor, the Plan Administrator, or the Disbursing Agent, of any Retained Causes of Action that the Post-Sale Estates may possess against the Holder of a Claim.

## L.  No Double Payment of Claims

To the extent that a Claim is Allowed against more than one Debtor's Estate, the Holder of such Allowed Claim against more than one Debtor may recover Distributions under the Combined Disclosure Statement and Plan for all co-obligor Debtors until the Holder has received payment in full on such Allowed Claim.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Combined Disclosure Statement and Plan only until payment in full on that Allowed Claim.

4922-0660-6194

**M.   Claims Paid or Payable by Third Parties**

1.   Claims Paid by Third Parties

Any Claim will be deemed satisfied in full or in part (as applicable) without a Claims objection having to be Filed by the Debtors or Plan Administrator (as applicable) and without any further order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim (a) receives payment in full or in part (as applicable) on account of such Claim from an entity that is not a Debtor (as applicable) and (b) does not File an objection to such Claim being deemed satisfied within 21 days from service of notice thereof.  To the extent a Holder of a Claim receives, on account of such Claim, both a Distribution under the Combined Disclosure Statement and Plan and a payment from a party that is not a Debtor or the Plan Administrator, as applicable, on account of such Claim, the Debtors or Plan Administrator (as applicable) will serve a notice of such duplicative payment and such Holder must, within 21 days of receipt thereof, either (a) repay or return the Distribution to the Debtors or Plan Administrator (as applicable) to the extent the Holder's total recovery on account of such Claim from the third party and under the Combined Disclosure Statement and Plan exceeds the Allowed amount of such Claim or (b) file an objection setting forth the reasons that the Holder asserts that such distribution does not have to be returned.

2.   Claims Payable by Third Parties

No distributions under the Combined Disclosure Statement and Plan will be made on account of an Allowed Claim that is payable pursuant to an Insurance Contract until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract.  If the Debtors or Plan Administrator (as applicable) believe a Holder of an Allowed Claim has recourse to an Insurance Contract and intend to withhold a Distribution pursuant to this Article VII, the Debtors or Plan Administrator (as applicable) shall cause the Disbursing Agent to provide written notice to such Holder as to what the Debtors or Plan Administrator (as applicable) believe to be the nature and scope of applicable insurance coverage.  To the extent that one or more of the Debtors' insurers (as applicable) agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim (or the applicable portion of such Claim) may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Contracts

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract.  Nothing contained in the Combined Disclosure Statement and Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

38

4922-0660-6194

## ARTICLE VIII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

### A.   Allowance of Claims

On or after the Effective Date, the Plan Administrator with respect to all Claims, shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date.  Except as expressly provided in the Combined Disclosure Statement and Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Combined Disclosure Statement and Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Final DIP Order and the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.  All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court (including the Final DIP Order and the Confirmation Order), pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

### B.   Claims and Interests Administration Responsibilities

Except as otherwise specifically provided herein, the Debtors (prior to the Effective Date) and the Plan Administrator (following the Effective Date), with respect to all Claims, have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Plan Administrator with respect to all Claims, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Combined Disclosure Statement and Plan.  Solely with respect to General Unsecured Claims, the Plan Administrator shall complete its reconciliation of such General Unsecured Claims within 120 days of the Effective Date.

### C.   Authority to Amend Schedules

The Debtors (prior to the Effective Date) and the Plan Administrator (following the Effective Date) will have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules (if no proof of claim is timely filed in response thereto) without approval of the Bankruptcy Court; *provided that* if any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors or the Plan Administrator will provide the holder of such Claim with notice of such amendment and such parties will have 21 days to file a proof of claim with respect to such claim.

### D.   Estimation of Claims

The Debtors (prior to the Effective Date) and the Plan Administrator (following the Effective Date) may (but are not required to) at any time request that the Bankruptcy Court estimate

4922-0660-6194

any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Combined Disclosure Statement and Plan (including for purposes of distributions and the Claims Reserve), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### E.   Adjustment to Claims or Interests without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Plan Administrator, without the Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest; *provided* that the Plan Administrator shall file a notice and serve the same on the Holders of such Claims or Interests, or seek an Order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claims or Interests.

### F.   Time to File Objections to Claims

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

### G.   Disallowance of Claims or Interests

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Plan Administrator.

ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE

40

4922-0660-6194

EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.

EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

## H. Amendments to Claims

On or after the Effective Date, except as provided herein or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

## I. No Distributions Pending Allowance

No payment or distribution provided under the Combined Disclosure Statement and Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth herein, unless and until such Disputed Claim becomes an Allowed Claim; provided that any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Combined Disclosure Statement and Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

## J. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes Allowed, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of herein. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Combined Disclosure Statement and Plan as of the Effective Date, without any interest to be paid on account of such Claim.

## ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A. Release and Channeling of Claims and Termination of Interests

Except as otherwise specifically provided herein or in any contract, instrument, or other agreement or document created or entered into pursuant to the Combined Disclosure Statement and Plan, the Holders of Claims and Interests subject to this Combined Disclosure Statement and Plan shall, on account of their Claims and Interests, only be entitled to the distributions, rights, and

4922-0660-6194

treatment set forth in the Combined Disclosure Statement and Plan, and such Claims and Interests and any other Causes of Action treated, exculpated or released under this Combined Disclosure Statement and Plan shall be subject to Article IX.  For the avoidance of doubt, the Claims and Interests subject to this Combined Disclosure Statement and Plan, include all Claims against and Interests in the Debtors, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, and any interest accrued on such Claims or Interests from and after the Petition Date, regardless of whether any property shall have been distributed or retained pursuant to the Combined Disclosure Statement and Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Combined Disclosure Statement and Plan.

## B.   Releases by the Debtors

**Notwithstanding anything contained herein to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on the Effective Date, each Released Party is deemed released by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors or the Estates, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or the Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the DIP Facility, the Prepetition Superpriority Facility, the Prepetition ABL Facility, the Prepetition 2L Facility, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the DIP Facility, the Plan Supplement, or the 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the DIP Facility, the Plan Supplement, the 363 Asset Sale, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the Global Settlement, the administration and implementation of the Combined Disclosure Statement and Plan and the Sales Process, the Global Settlement, including the issuance or distribution of any securities pursuant to the Combined Disclosure Statement and Plan, the Sales Process, or Global Settlement, or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, the Global Settlement, or any**

42

4922-0660-6194

other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Combined Disclosure Statement and Plan, any 363 Asset Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Combined Disclosure Statement and Plan or the 363 Asset Sale or (b) any Entity from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Chapter 11 Cases and implementing the Combined Disclosure Statement and Plan; (b) a good faith settlement and compromise of the claims released by the Debtor Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Releases. Notwithstanding anything to the contrary in the foregoing, to the extent that the Independent Member determines to recommend that any Debtor and the Estate thereto should not grant releases in favor of any party with respect to any claims, obligation, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including those that are proposed to be released herein by the Debtors, any such releases given by the Debtors will be null and void against such party and its Related Parties.

## C.   Releases by the Releasing Parties Other Than the Debtors

Notwithstanding anything contained herein to the contrary, upon and as of the Effective Date, each Releasing Party (other than the Debtors and the Estates) releases each Debtor, the Estates, and each other Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors and the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the DIP Facility, the Prepetition Superpriority Facility, the Prepetition ABL Facility, the Prepetition 2L Facility, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the DIP Facility, the Plan Supplement, or the 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the DIP Facility, the Plan

43

4922-0660-6194

Supplement, the 363 Asset Sale, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the Global Settlement, the administration and implementation of the Combined Disclosure Statement and Plan, the Sales Process, or the Global Settlement, including the issuance or distribution of securities pursuant to the Combined Disclosure Statement and Plan, the Sales Process, or the Global Settlement, or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, the Global Settlement, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Combined Disclosure Statement and Plan, any 363 Asset Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Combined Disclosure Statement and Plan or the 363 Asset Sale or (b) any Person from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing releases, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are:  (a) consensual; (b) essential to the Confirmation of the Combined Disclosure Statement and Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the claims released by the Releasing Parties; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing releases.

## D. Exculpation

Except as otherwise specifically provided herein, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby exculpated from any Cause of Action for any claim related to any act or omission taking place between the Petition Date and the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the DIP Facility, the Plan Supplement, or the 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the DIP Facility, the Plan Supplement, the 363 Asset Sale, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the Global Settlement, the administration and implementation of the Combined Disclosure Statement and Plan, the Sales Process, or the Global Settlement, including the issuance or distribution of securities pursuant to the Combined Disclosure Statement and Plan, the Sales Process, or the Global Settlement, or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, or the Global Settlement, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the

44

4922-0660-6194

**Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence;** *provided* **that, to the fullest extent permitted by applicable law, such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities regarding the Chapter 11 Cases and pursuant to the Combined Disclosure Statement and Plan.**

**The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Combined Disclosure Statement and Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Combined Disclosure Statement and Plan or distributions made pursuant to the Combined Disclosure Statement and Plan.**

### E.    Injunction

**Except as otherwise expressly provided herein or for obligations issued or required to be paid pursuant to the Combined Disclosure Statement and Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that are treated under this Combined Disclosure Statement and Plan, or are subject to exculpation, are enjoined, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in the Purchaser or the Post-Sale Estate, as applicable, has been liquidated and distributed to the Purchaser, creditors, or otherwise in accordance with the terms of the Combined Disclosure Statement and Plan, and the Confirmation Order and the Combined Disclosure Statement and Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or in connection with or with respect to any such Claims or Interests treated under the Combined Disclosure Statement and Plan.**

45

4922-0660-6194

No Person or Entity may commence or pursue a claim or Cause of Action, as applicable, of any kind against the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action, as applicable, subject to Article IX hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or Cause of Action, as applicable, represents a colorable claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party. At the hearing for the Bankruptcy Court to determine whether such claim or Cause of Action represents a colorable claim of any kind, the Bankruptcy Court may, or shall if any Exculpated Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

## F.   Protections Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entity, including Governmental Units, shall discriminate against the Plan Administrator or the Post-Sale Estates or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Plan Administrator, or another Entity with whom the Plan Administrator has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## G.   Document Retention

On and after the Effective Date, the Plan Administrator may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Plan Administrator.

## H.   Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final

46

4922-0660-6194

Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE X**
**CONDITIONS PRECEDENT TO**
**CONFIRMATION AND CONSUMMATION**
**OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.   Conditions Precedent to Confirmation**

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to the terms herein:

1. The Bankruptcy Court shall have entered an Order approving the adequacy of the Combined Disclosure Statement and Plan.

2. The Combined Disclosure Statement and Plan shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan as Filed, unless such material amendment, alteration or modification has been made in accordance with the terms herein.

**B.   Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the terms herein:

1. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Combined Disclosure Statement and Plan and each of the other transactions contemplated herein;

2. the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order is not subject to any stay;

3. the Claims Reserve shall have been established and fully funded with Cash in the amount equal to satisfy the Claims subject to the Claims Reserve;

4. the Professional Fee Reserve Account shall have been established and fully funded with Cash in the amount equal to the Professional Claim Reserve Amount;

5. the Combined Disclosure Statement and Plan and all documents in the Plan Supplement shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan and Plan Supplement as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with the terms herein; and

47

4922-0660-6194

6.  the final version of all schedules, documents, and exhibits in the Plan Supplement shall have been Filed.

## C.  Waiver of Conditions

The conditions to Confirmation and/or consummation set forth herein may be waived by the Debtors without notice, leave, or Order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Combined Disclosure Statement and Plan.

## D.  Effect of Failure of Conditions

If consummation does not occur, the Combined Disclosure Statement and Plan shall be null and void in all respects and nothing contained in the Combined Disclosure Statement and Plan shall: (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.

## E.  Substantial Consummation

"Substantial Consummation" of the Combined Disclosure Statement and Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI
## MODIFICATION, REVOCATION, OR
## WITHDRAWAL OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

## A.  Modification and Amendments

Except as otherwise specifically set forth herein, the Debtors reserve the right to modify the Combined Disclosure Statement and Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Combined Disclosure Statement and Plan; *provided* that any such amendment or modification shall at all times remain consistent with the terms of the Global Settlement unless otherwise agreed to in writing by the Debtors, the Committee, and the Prepetition ABL Agent. Subject to those restrictions on modifications set forth herein and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Combined Disclosure Statement and Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Combined Disclosure Statement and Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Combined Disclosure Statement and Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Combined Disclosure Statement and Plan.

48

4922-0660-6194

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Combined Disclosure Statement and Plan without further Order or approval of the Bankruptcy Court.

## B.   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Combined Disclosure Statement and Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

Holders of Claims that have accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim of such Holder; provided, however, that any Holders of Claims who were deemed to accept the Combined Disclosure Statement and Plan because such Claims were Unimpaired shall continue to be deemed to accept the Combined Disclosure Statement and Plan only if, after giving effect to such amendment, modification, or supplement, such Claims continue to be Unimpaired.

## C.   Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Combined Disclosure Statement and Plan as to any individual Debtor, combination of Debtors or all of the Debtors prior to the Confirmation Date and to File subsequent plans of reorganization or liquidation or disclosure statements.  If the Debtors revoke or withdraw the Combined Disclosure Statement and Plan, or if Confirmation or consummation does not occur as to any or all of the Debtors, then: (1) the Combined Disclosure Statement and Plan shall be null and void in all respects with respect to such Debtor(s); (2) any settlement or compromise embodied in the Combined Disclosure Statement and Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Combined Disclosure Statement and Plan, and any document or agreement executed pursuant to the Combined Disclosure Statement and Plan, shall be deemed null and void as to such Debtor(s); and (3) nothing contained in the Combined Disclosure Statement and Plan shall: (a) constitute a waiver or release of any Claims or Interests as to such Debtor(s); (b) prejudice in any manner the rights of such Debtor(s) or any other Entity; (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity; or (d) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims. The revocation or withdrawal of the Combined Disclosure Statement and Plan with respect to one or more Debtors shall not require the resolicitation of the Combined Disclosure Statement and Plan with respect to the remaining Debtors.

4922-0660-6194

**ARTICLE XII**
**CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**

THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH HEREIN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION.

A.   **General Bankruptcy Law and Combined Disclosure Statement and Plan Considerations**

1.   The Combined Disclosure Statement and Plan May Not Be Accepted

The Debtors can make no assurances that the requisite acceptances to the Combined Disclosure Statement and Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, may be forced to liquidate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Holders of Allowed Claims as those proposed in the Combined Disclosure Statement and Plan.

2.   The Debtors May Not Be Able to Secure Confirmation of the Combined Disclosure Statement and Plan or Confirmation May Be Delayed

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is not confirmed, it is unclear what distributions Holders of Allowed Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation.

3.   Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the Claims Reserve available for distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Disclosure Statement and Plan are correct. If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for Distribution to such Class are lower than the Debtor's estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

50

4922-0660-6194

4.      Failure to Consummate the Combined Disclosure Statement and Plan

The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Combined Disclosure Statement and Plan, there can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived).

5.      Plan Releases May Not Be Approved

There can be no assurance that the releases, as provided in Article IX of the Combined Disclosure Statement and Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Combined Disclosure Statement and Plan, or the Combined Disclosure Statement and Plan not being confirmed.

**B.      Risks Associated with Forward Looking Statements**

The financial information contained in this Combined Disclosure Statement and Plan has not been audited.  In preparing this Combined Disclosure Statement and Plan, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided in herein, and while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

**C.      Alternatives to Confirmation and Consummation of the Combined Disclosure Statement and Plan**

The Debtors believe that the Combined Disclosure Statement and Plan affords the Holders of Claims the potential for a better realization on the Debtors' Assets than a chapter 7 liquidation, and therefore, is in the best interests of such Holders.  If, however, the Combined Disclosure Statement and Plan is not confirmed, the theoretical alternatives include (a) formulation of an alternative plan or plans of liquidation under chapter 11, or (b) liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

## ARTICLE XIII
## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

The following discussion summarizes certain U.S. federal income tax consequences of the Combined Disclosure Statement and Plan to the U.S. Holders (as defined below) of Allowed Prepetition ABL Claims.  This discussion is provided for informational purposes only and is based on the Internal Revenue Code of 1986, as amended (the "***Tax Code***"), the Treasury regulations promulgated thereunder (the "***Treasury Regulations***"), judicial authority and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject

51

to change, possibly with retroactive effect.  Events subsequent to the date of this Combined Disclosure Statement and Plan, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the U.S. federal income tax consequences of the Combined Disclosure Statement and Plan and the transactions contemplated thereunder.  No representations are being made regarding the particular tax consequences of the Combined Disclosure Statement and Plan to any specific holder of a Claim.  The Debtors will not seek a ruling from the Internal Revenue Service (the "*IRS*") and have not obtained an opinion of counsel regarding any tax consequences of the Combined Disclosure Statement and Plan to any holder of a Claim.  No assurances can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.  This discussion only addresses U.S. federal income tax consequences and does not address any other U.S. federal tax consequences (such as estate and gift tax consequences), or the tax consequences arising under the laws of any foreign, state, local or other jurisdiction or any income tax treaty.  This discussion assumes that the Prepetition ABL Claims are treated in accordance with their form for U.S. federal income tax purposes.

This discussion does not address any U.S. federal income tax consequences to a beneficial owner of an Allowed Prepetition ABL Claim that is an individual, corporation (or other entity taxable as a corporation), estate or trust that is not a U.S. Holder (a "*Non-U.S. Holder*").  Non-U.S. Holders should consult their own independent tax advisors regarding the U.S. federal and state income tax consequences of the implementation of the Combined Disclosure Statement and Plan, including whether Non-U.S. Holders may be subject to any U.S. federal withholding tax or U.S. federal income tax with respect to any payment on Allowed Prepetition ABL Claims.

This discussion does not describe all of the tax consequences that may be relevant in light of a U.S. Holder's particular circumstances, including, but not limited to, the potential application of provisions of the Medicare tax on net investment income, or tax consequences applicable to U.S. Holders that are otherwise subject to special treatment under the Tax Code, such as: financial institutions; banks; broker-dealers; insurance companies; tax-exempt organizations; retirement plans or other tax-deferred accounts; mutual funds; real estate investment trusts; traders in securities that elect mark-to-market treatment; persons subject to the alternative minimum tax; persons who hold Allowed Prepetition ABL Claims as part of a hedge, straddle, constructive sale, conversion or other integrated transaction; persons that have a functional currency other than the U.S. dollar; persons who hold Allowed Prepetition ABL Claims through non-U.S. brokers or other non-U.S. intermediaries; governments or governmental organizations; partnerships or other pass-through entities or holders of interests therein; persons required to accelerate the recognition of any item of gross income with respect to the Allowed Prepetition ABL Claims as a result of such income being recognized on an "applicable financial statement" (within the meaning of Section 451(b) of the Tax Code); and holders not entitled to vote on the Combined Disclosure Statement and Plan.  The following discussion assumes that U.S. Holders hold their Allowed Prepetition ABL Claims as "capital assets" (as defined in Section 1221 of the Tax Code).  If an entity that is classified as a partnership for U.S. federal income tax purposes holds Allowed Prepetition ABL Claims, the U.S. federal income tax treatment of a partner will generally depend on the status of such partner and the activities of the partnership.  Partnerships holding Allowed Prepetition ABL Claims and partners in such partnerships should consult their tax advisors as to the particular U.S. federal income tax consequences of owning and disposing of the Allowed Prepetition ABL Claims.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of an Allowed Prepetition ABL Claim that is, for U.S. federal income tax purposes:

4922-0660-6194

- an individual who is a U.S. citizen or U.S. resident alien;

- a corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, that was created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- an estate the income of which is subject to U.S. federal income taxation regardless of its source; or

- a trust (a) the administration of which is subject to the primary supervision of a U.S. court and that has one or more United States persons that have the authority to control all substantial decisions of the trust or (b) that has made a valid election under applicable Treasury Regulations to be treated as a United States person.

**THE FOLLOWING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A U.S. HOLDER.  ALL U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

**A.    Certain U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Prepetition ABL Claims**

Pursuant to the Combined Disclosure Statement and Plan, a U.S. Holder will be treated as exchanging an Allowed Prepetition ABL Claim on the Effective Date for its Pro Rata share of the Distributable Cash, in accordance with the Waterfall Recovery.

### 1.    Taxable Exchange

Each U.S. Holder should recognize gain or loss in a taxable exchange of such Claim equal to the difference between (x) the amount of Distributable Cash received by such U.S. Holder for such Claim (excluding any amount attributable to accrued but unpaid interest or original issue discount ("**OID**"), if any, on such Claim, which amount will be taxable as described below), and (y) such U.S. Holder's adjusted basis, if any, in such Claim.  Whether such gain or loss is capital or ordinary in character will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Allowed Prepetition ABL Claim in such U.S. Holder's hands, whether such Claim was purchased at a discount, whether there is any accrued but unpaid interest or OID on such Claim, and whether and to what extent the U.S. Holder previously has claimed a bad debt deduction with respect to such Claim.  *See* Articles XIII.A(2) and XIII.A(3) below entitled "Accrued Interest" and "Market Discount."

### 2.    Accrued Interest

To the extent that any amount received by a U.S. Holder is attributable to accrued but unpaid interest (or OID, if any) on the debt instruments constituting such surrendered Allowed Prepetition ABL Claim, the receipt of such amount should be taxable to the U.S. Holder as ordinary interest income (to the extent not already taken into account by the U.S. Holder).  Conversely, a U.S. Holder may be able to recognize a deductible loss (or, possibly, a write off against a reserve

53

4922-0660-6194

for worthless debts) to the extent any accrued interest (or OID, if any) was previously included in the U.S. Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

If the fair market value of the consideration is not sufficient to fully satisfy all principal and interest on an Allowed Prepetition ABL Claim, the extent to which such consideration will be attributable to accrued but unpaid interest is unclear. Under the Combined Disclosure Statement and Plan, the aggregate consideration to be distributed to U.S. Holders will be allocated first to the principal amount of such Allowed Prepetition ABL Claims, with any excess allocated to unpaid interest that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes, and certain case law generally indicates that a final payment on a distressed debt instrument that is insufficient to repay outstanding principal and interest will be allocated to principal, rather than interest, while certain Treasury Regulations treat payments as allocated first to any accrued but unpaid interest. The IRS could take the position that the consideration received by a U.S. Holder should be allocated in a manner other than as provided in the Combined Disclosure Statement and Plan, which could include allocating consideration first to any accrued but unpaid interest under the aforementioned Treasury Regulations.

**U.S. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE ALLOCATION OF CONSIDERATION RECEIVED UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE U.S. FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST (AND OID, IF ANY).**

3. **Market Discount**

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the holder's adjusted tax basis in the debt instrument is less than (i) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (ii) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a specified de minimis amount. Any gain recognized by a U.S. Holder on the taxable disposition of an Allowed Prepetition ABL Claim that had been acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such Claim was considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

**U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS CONCERNING THE APPLICATION OF THE MARKET DISCOUNT RULES TO THEIR ALLOWED PREPETITION ABL CLAIMS.**

B. **Back-up Withholding and Information Reporting**

Under the Tax Code, interest and other reportable payments may, under certain circumstances, be subject to backup withholding. Backup withholding may apply to payments made pursuant to the Combined Disclosure Statement and Plan, unless the U.S. Holder provides to the applicable withholding agent its taxpayer identification number, certified under penalties of

54

4922-0660-6194

perjury, as well as certain other information or otherwise establish an exemption from backup withholding.  Backup withholding is not an additional tax.  Amounts withheld under the backup withholding rules may be credited against such U.S. Holder's U.S. federal income tax liability, and such U.S. Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

In addition, information reporting may apply to (i) payments made to a U.S. Holder and (ii) certain transactions under the Plan that result in such U.S. Holder claiming a loss in excess of specified thresholds.  U.S. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Combined Disclosure Statement and Plan would be subject to these Treasury Regulations and require disclosure on the U.S. Holders' tax returns.

## ARTICLE XIV
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Disclosure Statement and Plan are carried out.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of the Chapter 11 Cases and the Combined Disclosure Statement and Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.      To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

3.      To issue such Orders in aid of execution and consummation of the Combined Disclosure Statement and Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

4.      To consider any amendments to or modifications of the Combined Disclosure Statement and Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

5.      To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

6.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan;

7.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any

4922-0660-6194

request by the Debtors or the Plan Administrator for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

8.    To hear any other matter not inconsistent with the Bankruptcy Code;

9.    To enter a final decree closing the Chapter 11 Cases;

10.    To ensure that distributions to Holders of Claims and Interests are accomplished pursuant to the provisions of the Combined Disclosure Statement and Plan;

11.    To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

12.    To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Disclosure Statement and Plan, except as otherwise provided herein;

13.    To determine any other matters that may arise in connection with or related to the Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Disclosure Statement and Plan;

14.    To hear any disputes and determine any other matters that may arise in connection with or related to the 363 Asset Sale, or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the 363 Asset Sale;

15.    To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

16.    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

17.    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the General Bar Date, the Governmental Bar Date, the Rejection Damages Bar Date, the Amended Schedules Bar Date, the Administrative Expense Bar Date, and/or the conditional or final hearing on the approval of the Combined Disclosure Statement and Plan for the purpose of determining whether a Claim, or Interest is released, satisfied and/or enjoined hereunder or for any other purpose; and

18.    To resolve any other matter or for any purpose specified in the Combined Disclosure Statement and Plan, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

4922-0660-6194

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

### A.   Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect.

### B.   Severability

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Disclosure Statement and Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Disclosure Statement and Plan.

### C.   Binding Effect

The Combined Disclosure Statement and Plan shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims, and the Holders of Interests, and their respective successors and assigns.

### D.   Notices

All notices, requests and demands to or upon the Debtors or Plan Administrator (as applicable) to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the notice of the Effective Date.

### E.   Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Disclosure Statement and Plan provides otherwise, the rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law of such jurisdiction.

### F.   Withholding and Reporting Requirements

In connection with the consummation of the Combined Disclosure Statement and Plan, the Debtors, the Plan Administrator or the Disbursing Agent (as applicable) shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim or, if applicable,

57

4922-0660-6194

Allowed Interest, that is to receive a Distribution under the Combined Disclosure Statement and Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Debtors, the Plan Administrator, the Disbursing Agent or any withholding agent (as applicable) has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations.  The Debtors, the Plan Administrator, the Disbursing Agent or any withholding agent (as applicable) may require, as a condition to receipt of a Distribution, that Holder of the applicable Claim or Interest, complete and return an Internal Revenue Service Form W-8, W-9 or a similar tax form, as applicable to each such Holder.  If the Debtors, the Plan Administrator, the Disbursing Agent or any withholding agent (as applicable) makes such a request and Holder fails to comply before the date that is 90 days after the request is made, the applicable requester, in its sole discretion may (i) make a Distribution net of any applicable withholding or (ii) determine that such Holder shall be deemed to have forfeited the right to receive any Distribution, in which case, (a) any such Distribution shall revert to the Debtors, the Plan Administrator or the Disbursing Agent (as applicable) for Distribution to the other Holders of Claims in accordance with the Combined Disclosure Statement and Plan and (b) the Allowed Claim or Interest of the Holder originally entitled to such Distribution shall be waived and forever barred without further order of the Bankruptcy Court.

## G.  Headings

Headings are used in the Combined Disclosure Statement and Plan for convenience and reference only and shall not constitute a part of the Combined Disclosure Statement and Plan for any other purpose.

## H.  Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Combined Disclosure Statement and Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## I.  Reference to Monetary Figures

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## J.  Exhibits/Schedules

All exhibits and schedules to the Combined Disclosure Statement and Plan, including the Plan Supplement, are incorporated into and are a part of the Combined Disclosure Statement and Plan as if set forth in full herein.

4922-0660-6194

**K.  Filing of Additional Documents**

On or before substantial consummation of the Combined Disclosure Statement and Plan, the Debtors shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

**L.  No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Disclosure Statement and Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**M.  Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**N.  Reservation of Rights**

Except as expressly set forth herein, the Combined Disclosure Statement and Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Combined Disclosure Statement and Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or Holders of Claims or Interests before the Effective Date.

**O.  Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Disclosure Statement and Plan.

**P.  Inconsistency**

In the event of any inconsistency among the Combined Disclosure Statement and Plan and any other instrument or document created or executed pursuant to the Combined Disclosure Statement and Plan, the provisions of the Combined Disclosure Statement and Plan shall govern.

**Q.  Dissolution of the Committee**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be discharged and released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of its Professionals or attending to any other issues related to applications for payment of fees and reimbursement of expenses of its Professionals, (iii) any motions or motions for other actions

4922-0660-6194

seeking enforcement of implementation of the provisions of this Combined Disclosure Statement and Plan, and (iv) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

## R. Closing of the Chapter 11 Cases

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to issue a final decree closing the Chapter 11 Cases. The Plan Administrator may determine to close certain of the Debtors' Chapter 11 Cases before others.

## S. Request for Expedited Determination of Taxes

The Debtors and the Plan Administrator shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to the determination of any unpaid tax liability of each Debtor or its Estate, for any and all taxable periods ending after the Petition Date through the liquidation of such Debtors as determined under applicable tax laws.

## T. Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Combined Disclosure Statement and Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective agents, representatives, members, principals, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Post-Sale Estates or Plan Administrator, as applicable, will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Combined Disclosure Statement and Plan.

**ARTICLE XVI**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

## A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:[12]

1. "*2L Payments*" means cash payments of $950,000, $300,000 of which was payable upon entry of the Interim DIP Order, $300,000 of which was payable upon entry of the Final DIP Order, and $350,000 of which was payable upon the closing of the 363 Asset Sale.

2. "*363 Asset Sale*" means the sale of all of the Acquired Assets approved by the Sale Order.

---

[12]   Copies of all Filings in the Chapter 11 Cases (as defined herein) can be obtained and viewed free of charge at the following web address:  *https://dm.epiq11.com/AXIP*.

4922-0660-6194

3. "***363 Asset Purchase Agreement***" means the asset purchase agreement by and between the Debtors and Purchaser effectuating the 363 Asset Sale.

4. "***363 Asset Sale Transaction Documents***" means, collectively, the 363 Asset Purchase Agreement and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time in connection with the 363 Asset Sale.

5. "***503(b)(9) Claim***" means any Claim against the Debtors under section 503(b)(9) of the Bankruptcy Code for the value of goods sold to the Debtors in the ordinary course of business and received by the Debtors within 20 days before the Petition Date.

6. "***510(b) Claim***" means any Claim, whether or not the subject of an existing lawsuit, (a) arising from rescission of a purchase or sale of any debt or equity securities of the Debtors issued as Interests existing immediately prior to the Effective Date; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) for reimbursement, contribution, or indemnification on account of any such Claim.

7. "***Acquired Assets***" means substantially all of the Assets of the Debtors which were sold pursuant to the 363 Asset Sale.

8. "***Adequate Protection Claim***" means, collectively, the Prepetition 507(b) Claims, the Adequate Protection Claims, and the Prepetition 2L Secured Parties' Adequate Protection Claims (each as defined in the Final DIP Order).

9. "***Administrative Claim***" means a Claim (other than DIP Claims and Adequate Protection Claims) arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration of the Chapter 11 Cases that is entitled to priority or superpriority under sections 365, 503(b), 503(c), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; (c) Allowed Professional Claims; and (d) any cure payment in connection with the assumption and assignment of any Executory Contract or Unexpired Lease to the Purchaser which has not been satisfied pursuant to the 363 Asset Sale Documents.

10. "***Administrative Claims Bar Date***" means the date by which a request for payment of an Administrative Claim (other than a Professional Claim or any Statutory Fees) must be Filed and is 30 days after the Effective Date.

11. "***Advisors***" means, collectively, Ankura, Evercore, and V&E.

12. "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the Entity were a debtor in a case under the Bankruptcy Code.

4922-0660-6194

13.     "***Agreed Prepetition Sponsor Claim Reduction***" means that any Allowed Prepetition Sponsor Claim shall be reduced by seventy-five percent (75%) for the purposes of calculating the applicable Pro Rata share of the GUC Recovery attributable to any such Allowed Prepetition Sponsor Claim.

14.     "***Allowed***" means with respect to any Claim, (a) a Claim that is timely Filed and is evidenced by a Proof of Claim or request for payment of an Administrative Claim; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to this Combined Disclosure Statement and Plan, or a Final Order of the Bankruptcy Court; *provided that* with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that (i) such Claim is not otherwise a Disputed Claim (including as to the priority of such Claim), (ii) with respect to such Claim no objection, request for estimation to the allowance, or other dispute with respect to priority or classification thereof has been Filed (or no motion to deem the Schedules amended has been Filed) and the applicable period of time fixed by the Combined Disclosure Statement and Plan to file an objection or such motion has passed, or such an objection or motion is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order and (iii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code.  Except as otherwise provided in the Combined Disclosure Statement and Plan or an order of the Bankruptcy Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable. "Allow" and "Allowing" shall have correlative meanings.

15.     "***Amended Schedules Bar Date***" means the date that is 30 days after service of a notice to an applicable Creditor of an amendment to, or the addition of, its Claim reflected on the Schedules.

16.     "***Assets***" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

17.     "***Assumed Purchaser Administrative Claims***" means all Administrative Claims that are assumed by Purchaser pursuant to the 363 Asset Purchase Agreement.

18.     "***Assumed Purchaser Priority Tax Claims***" means all Priority Tax Claims that are assumed by Purchaser pursuant to the 363 Asset Purchase Agreement.

19.     "***Ankura***" means Ankura Consulting LLC.

20.     "***Avoidance Actions***" means all avoidance and recovery actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 550, 551, 552, or 553 of the Bankruptcy Code.

21.     "***Axip***" means Axip Energy Services, LP.

62

4922-0660-6194

22.     "*Axip Holdings*" means Axip Holdings, LLC.

23.     "*Axip Leasing*" means Axip Leasing Company, LLC.

24.     "*Axip Management*" means Axip Energy Services Management, LLC.

25.     "*Axip Marcellus*" means Axip Producer Services – Marcellus I, LLC.

26.     "*Axip Services*" means Axip Producer Services, LLC.

27.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

28.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

29.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court, as amended from time to time.

30.     "*Bar Date Order*" means the Order setting the General Bar Date, Governmental Bar Date, Administrative Claims Bar Date, Amended Schedules Bar Date, and Rejection Claims Bar Date [Docket No. 271].

31.     "*Bidding Procedures*" has the meaning set forth in the Bidding Procedures Order.

32.     "*Bidding Procedures Order*" means the *Order (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Designating Stalking Horse Bidder and Authorizing Debtors to Provide Bid Protections; (C) Scheduling Auction, Sale Hearing, and Related Deadlines; (D) Approving (I) Sale Of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 135].

33.     "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

34.     "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

35.     "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff or counterclaim and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542,

63

4922-0660-6194

543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law equivalents of any of the foregoing.

36.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under the case caption *In re Axip Energy Services, LP., et al.*, Case No. 26-90338 (CML).

37.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor or its Estate.

38.    "*Claims and Noticing Agent*" means Epiq, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

39.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court, (b) 90 days after the Filing of a Proof of Claim, or (c) such other period of limitation as may be fixed by the Combined Disclosure Statement and Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to a Claim; provided that the deadline for objecting to Administrative Claims (other than Professional Claims) filed by the Administrative Claims Bar Date shall be 90 days after the Effective Date.

40.    "*Claims Reserve*" means the reserve for payment of Administrative Claims (excluding Professional Fee Claims), Priority Tax Claims, Senior Priority Lien Claims, and Other Priority Claims, funded pursuant to this Combined Disclosure Statement and Plan.

41.    "*Claims Reserve Amount*" means the sum of (a) the Other Priority Claims Reserve Amount, (b) the Senior Priority Claims Reserve, (c) the estimated aggregate face amount of accrued but unpaid Administrative Claims (excluding Professional Fee Claims) against the Debtors as of the Effective Date, (d) the Priority Tax Claims Reserve, and (e) the Statutory Fees due to the U.S. Trustee.

42.    "*Class*" means a class of Claims or Interests as set forth in the Combined Disclosure Statement and Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

43.    "*Clerk*" means the clerk of the Bankruptcy Court.

44.    "*Combined Disclosure Statement and Plan*" means this disclosure statement and chapter 11 plan including, without limitation, the Plan Supplement, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time in accordance with the terms hereof.

45.    "*Committee*" means the official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in the Chapter 11 Cases on March 5, 2026, pursuant to section 1102 of the Bankruptcy Code.

4922-0660-6194

46.     "*Company*" means the Debtors and the Non-Debtor Affiliates.

47.     "*Conditional Approval and Procedures Order*" means the Order conditionally approving the Combined Disclosure Statement and Plan, for solicitation purposes only and authorizing the Debtors to solicit acceptances of the Combined Disclosure Statement and Plan.

48.     "*Confirmation Date*" means the date on which the Confirmation Order is entered on the Docket.

49.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the Docket of the Chapter 11 Cases, subject to all conditions specified in the Combined Disclosure Statement and Plan having been (a) satisfied or (b) waived pursuant to the Combined Disclosure Statement and Plan.

50.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Disclosure Statement and Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

51.     "*Confirmation Order*" means the Order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.

52.     "*Consenting Creditor Representatives*" means, together, Huron Consulting Group, Inc. and Simpson Thacher & Bartlett LLP.

53.     "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

54.     "*D&O Tail Coverage*" means coverage under an applicable D&O Liability Insurance Policy that extends beyond the end of the policy period.

55.     "*Davis Polk*" means Davis Polk & Wardwell LLP.

56.     "*Debtor Releases*" means the releases granted pursuant to Article IX.B of the Combined Disclosure Statement and Plan.

57.     "*Debtor*" or "*Debtors*" mean Axip Energy Services, LP, Axip Energy Services Management, LLC, Axip Holdings, LLC, Axip Leasing Company, LLC, Axip Producer Services - Marcellus I, LLC, Axip Producer Services, LLC, and E3 Compression Holdings LLC.

58.     "*Deficiency Claim*" means the portion of the (i) Allowed Prepetition ABL Claims and (ii) Allowed Prepetition 2L Claims that is, in each case, unsecured.

59.     "*DIP Agent*" means JPMorgan Chase Bank, N.A., solely in its capacity as administrative agent and collateral agent under the DIP Facility (in such capacity, together with its successors and permitted assigns).

65

60.      "*DIP Claims*" means any Claims derived from, evidenced by, arising under or in connection with the DIP Documents.

61.      "*DIP Documents*" means the DIP Credit Agreement and all other loan documentation related to the DIP Facility, any fee letters, and such other documents that may be reasonably requested by the DIP Agent and the DIP Lenders in connection with the DIP Facility, in each case, as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and the DIP Orders, and the DIP Orders.

62.      "*DIP Facility*" means the debtor-in-possession financing facility provided by the DIP Lenders on the terms and conditions set forth in the DIP Orders.

63.      "*DIP Fees and Expenses*" means the non-refundable payment to the DIP Agent and the other DIP Secured Parties, as the case may be, of all fees and rights received as consideration under, or in connection with, the DIP Facility, including any amendment fees, prepayment premiums, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment fees, closing date fees, indemnities and reasonable and documented professional fees and expenses (the payment of which fees shall be irrevocable, and shall be, and shall be deemed to have been, approved upon entry of the Interim DIP Order, whether any such fees arose before or after the Petition Date, and whether or not the transactions contemplated by the Interim DIP Order are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise by any person or entity) and any amounts due (or that may become due) in respect of any indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement or DIP Documents, and the reasonable and documented costs and expenses as may be due from time to time in accordance with the DIP Documents, including, without limitation, reasonable and documented fees and expenses of the professionals retained by, or on behalf of, the DIP Agent (*provided* that such professionals shall be limited to Simpson Thacher & Bartlett LLP, Huron Consulting Group Inc., and one local counsel or replacement counsel or financial advisor).

64.      "*DIP Lenders*" means the several financial institutions or other entities who have agreed to provide the New Money DIP Loans (as defined in the DIP Orders) from time-to-time party thereto as "Lenders".

65.      "*DIP Liens*" means all security interests and liens granted to the DIP Agent, for its benefit and for the benefit of the other DIP Secured Parties, pursuant to the Interim DIP Order and the DIP Documents.

66.      "*DIP Motion*" means the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 14].

66

4922-0660-6194

67. "***DIP Orders***" means the Interim DIP Order and the Final DIP Order.

68. "***DIP Secured Parties***" means the DIP Lenders and the DIP Agent.

69. "***Disallowed***" means, with respect to any Claim, or any portion thereof, that is not Allowed, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is considered Disallowed and shall be expunged without further action by the Debtors or the Plan Administrator, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.; *provided, further*, that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order or by agreement between the holder thereof and the Debtors or the Plan Administrator, as applicable.

70. "***Disbursing Agent***" means the Debtors, the or the Plan Administrator, or the Entity or Entities selected by the Debtors or the Plan Administrator, as applicable, to make or facilitate distributions pursuant to the Combined Disclosure Statement and Plan. For the avoidance of doubt, to the extent any distribution is made by the Prepetition ABL Agent under this Plan, the Prepetition ABL Agent shall be deemed a "Disbursing Agent" under this Plan for the purposes of such distribution.

71. "***Disclosure Statement Motion***" means the motion filed by the Debtors requesting that the Bankruptcy Court (i) schedule a hearing on this Combined Disclosure Statement and Plan, (ii) establish objection deadlines, (iii) approve the Solicitation Materials, (iv) and grant related relief.

72. "***Disputed***" means, with respect to any Claim or Interest, that such Claim or Interest (a) is not yet Allowed, (b) is not Disallowed by the Combined Disclosure Statement and Plan, the Bankruptcy Code, or a Final Order, as applicable, (c) as to which a dispute is being adjudicated by the Bankruptcy Court, including a dispute about the priority or the extent of the secured amount of such claim under section 506(a) of the Bankruptcy Code or otherwise, or another court of competent jurisdiction in accordance with non-bankruptcy law, or (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order or the Combined Disclosure Statement and Plan.

73. "***Dissolution Transactions***" means the transactions that the Debtors or Plan Administrator determine to be necessary or appropriate to implement the terms of the Combined Disclosure Statement and Plan and ultimately result in the dissolution or other termination of the corporate entities that comprise the Debtors.

74. "***Distribution Date***" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Plan Administrator, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Combined Disclosure Statement and Plan.

75. "***Distribution Record Date***" means 5:00 p.m., Central Time, on the Confirmation Date.

4922-0660-6194

76.     "**_Docket_**" means the docket in the Chapter 11 Cases maintained by the Clerk.

77.     "**_E3 Holdings_**" means E3 Compression Holdings, LLC.

78.     "**_E3 Holdings Interests_**" means an Interest in E3 Holdings that was issued prior to the Petition Date.

79.     "**_Effective Date_**" means the day, as determined by the Debtors, that is the Business Day as soon as reasonably practicable after all conditions precedent to the effectiveness of the Combined Disclosure Statement and Plan set forth herein have been satisfied or waived in accordance with the requirements of the Combined Disclosure Statement and Plan.

80.     "**_Entity_**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

81.     "**_Epiq_**" means Epiq Corporate Restructuring, LLC.

82.     "**_Estate_**" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

83.     "**_Evercore_**" means Evercore Group, L.L.C.

84.     "**_Excluded Assets_**" has the meaning set forth in the 363 Asset Purchase Agreement.

85.     "**_Excluded Liabilities_**" has the meaning set forth in the 363 Asset Purchase Agreement.

86.     "**_Exculpated Parties_**" means the following Entities, each in their respective capacities as such: (a) the Debtors; (b) the Independent Member; (c) the Committee; and (d) the members of the Committee and any other statutory committee appointed in the Chapter 11 Cases.

87.     "**_Executory Contract_**" means a contract to which one or more of the Debtors is a party and that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

88.     "**_File_**," "**_Filed_**," or "**_Filing_**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

89.     "**_Final DIP Order_**" means the _Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief_ [Docket No. 178].

90.     "**_Final Order_**" means as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved

68

4922-0660-6194

by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

91.     "*First Day Declaration*" means the *Declaration of Ben Chesters in Support of Chapter 11 Cases and First-Day Motions*.

92.     "*Forbearance Agreement*" means that certain *Forbearance and Omnibus Amendment* dated as of September 23, 2025, by and among the Borrower, the Guarantors, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent and as collateral agent.

93.     "*General Bar Date*" means May 4, 2026, at 5:00 p.m. (prevailing Central Time), pursuant to the Bar Date Order.

94.     "*General Unsecured Claim*" means any Claim against any Debtor that is not a Secured Claim, Administrative Claim, Professional Claim, Priority Tax Claim, Senior Priority Lien Claim, Other Priority Claim, DIP Claim, Adequate Protection Claim, Prepetition ABL Claim, Prepetition 2L Claim, Intercompany Claim, or 510(b) Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases or assumed by the Purchaser under the 363 Asset Purchase Agreement.

95.     "*Global Settlement*" means the global settlement agreed between the Global Settlement Parties.

96.     "*Global Settlement Parties*" means the Committee, the Debtors, the DIP Agent, the Prepetition Superpriority Agent, and the Prepetition ABL Agent.

97.     "*Global Settlement Term Sheet*" means the term sheet dated as of May 6, 2026 by and between the Global Settlement Parties documenting the Global Settlement.

98.     "*Governmental Bar Date*" means August 21, 2026, at 5:00 p.m. (prevailing Central Time), pursuant to the Bar Date Order.

99.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

100.     "*GUC Recovery*" means Cash in an amount equal to the lesser of (i) $500,000 and (ii) fifty-percent (50%) of the quantum of all Allowed General Unsecured Claims, excluding (a) all Allowed General Unsecured Claims assumed by the Purchaser pursuant to the 363 Asset Sale and (b) all Allowed Deficiency Claims.  For the avoidance of doubt, the GUC Recovery shall be placed in a separate escrow account and shall not be reduced by any fees or expenses payable to, by, or on behalf of the Plan Administrator.

101.     "*Holder*" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

102.     "*HP*" means horsepower.

69

4922-0660-6194

103.    "*Independent Member*" means Peter Laurinaitis in his capacity as the independent member of the executive committee of E3 Holdings.

104.    "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

105.    "*Insurance Contract*" means any policy of insurance under which any of the Debtors could have asserted, did assert or may in the future assert a right to coverage for any claim, together with any other contracts, documents or instruments that pertain or relate to such policy.

106.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate against a Debtor or an Affiliate.

107.    "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

108.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

109.    "*Interim Compensation Order*" means the Order approving procedures for the interim compensation of Professionals in the Chapter 11 Cases.

110.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 83].

111.    "*Investigation*" means the investigation by the Independent Member into potential claims or causes of action the Company may hold related to: (i) directors, officers, agents, or any other person affiliated with the Company; or (ii) any transactions involving affiliates or insiders of the Company.

112.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

113.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

114.    "*Net Sale Proceeds*" means the net Cash proceeds from the 363 Asset Sale.

115.    "*Non-Debtor Affiliates*" means Axip Gas Solutions GP, LLC, Axip Gas Solutions Partners, LP, Axip MLP Holdings, LLC, Axip Leasing Company II, LLC, and Axip International, LLC.

70

116.    "*Non-Vesting Asset*" means (i) property of any Debtor's Estate that is abandoned under section 554 of the Bankruptcy Code prior to the Effective Date, (ii) all of the Debtors' equity interests in all of the Non-Debtor Affiliates which shall be abandoned under section 554 of the Bankruptcy Code on the Effective Date; and (iii) any asset, right, arrangement, non-executory contract, or other property that is listed in the Plan Supplement as a Non-Vesting Asset.

117.    "*Non-Voting Classes*" means all Classes under this Combined Disclosure Statement and Plan other than Classes 3, 4, and 5.

118.    "*Notice of Non-Voting Status*" means the notice to Holders of Claims or Interests not entitled to vote on this Combined Disclosure Statement and Plan informing those Holders of their non-voting status.

119.    "*Opt-Out Deadline*" means June 18, 2026 at 5:00 p.m. (prevailing Central Time).

120.    "*Opt-Out Form*" means the form that Holders of Claims and Interests who receive a Notice of Non-Voting Status receive that allows such Holders to opt out of the releases provided and disclosed in the Combined Disclosure Statement and Plan.

121.    "*Order*" means an order or judgment of the Bankruptcy Court as entered on the Docket.

122.    "*Other Priority Claims*" means any Claim that is entitled to priority of payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

123.    "*Other Priority Claims Reserve*" means the aggregate amount of Claims that are (i) included on the Other Priority Claims Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be an Other Priority Claim.

124.    "*Other Priority Claims Schedule*" means the schedule of Claims that the Debtors identify as Other Priority Claims.

125.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

126.    "*Petition Date*" means the date on which each Debtor filed its voluntary petition for relief commencing the Chapter 11 Cases.

127.    "*Plan Administrator*" means the Person selected by the Debtors to serve as plan administrator for each of the Debtors and their Post-Sale Estates pursuant to the Combined Disclosure Statement and Plan and the Plan Administrator Agreement.

128.    "*Plan Administrator Agreement*" means the agreement between the Debtors and the Plan Administrator identifying the Plan Administrator and governing the rights, duties, and obligations of the Plan Administrator.

129.    "*Plan Objection Deadline*" means the date the Bankruptcy Court establishes as the deadline to File an objection to Confirmation of the Combined Disclosure Statement and Plan.

71

4922-0660-6194

130. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Combined Disclosure Statement and Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors seven (7) days before the earlier of (i) the Voting Deadline and (ii) the Plan Objection Deadline, including the following, as applicable: (a) the Schedule of Retained Causes of Action; (b) the Plan Administrator Agreement; (c) the identity of, and the proposed compensation to be paid to, the Plan Administrator; (d) the Other Priority Claim Schedule; (e) the Schedule of Retained Executory Contracts and Unexpired Leases; and (f) a schedule identifying the Non-Vesting Assets.

131. "*Post-Confirmation Report*" means post-confirmation reports in accordance with the U.S. Trustee's Region 7 Guidelines for Debtors-in-Possession.

132. "*Post-Sale Estates*" means the Estates to be wound down, dissolved, and liquidated, as applicable, pursuant to and under the Combined Disclosure Statement and Plan on or after the Effective Date.

133. "*Prepetition 2L Agent*" means Permico Inc. solely in its capacity as administrative agent under the Prepetition 2L Facility (in such capacity, together with its successors and permitted assigns).

134. "*Prepetition 2L Claims*" means any Claim arising under, derived from, secured by, based on, or related to the Prepetition 2L Facility or any other agreement, instrument, or document executed at any time in connection therewith any guaranty thereof.

135. "*Prepetition 2L Credit Agreement*" means that certain *Amended and Restated Second Lien Term Loan Credit Agreement*, dated as of September 22, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

136. "*Prepetition 2L Credit Documents*" means the Prepetition 2L Credit Agreement, the other Loan Documents (as defined in the Prepetition 2L Credit Agreement), and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date.

137. "*Prepetition 2L Facility*" means the credit facility evidenced by the Prepetition 2L Credit Agreement.

138. "*Prepetition 2L Lenders*" means the lenders from time-to-time party to the Prepetition 2L Credit Documents.

139. "*Prepetition ABL Agent*" means JPMorgan Chase Bank, N.A., solely in its capacity as administrative agent and collateral agent under the Prepetition ABL Facility (in such capacity, together with its successors and permitted assigns).

140. "*Prepetition ABL Cash Distribution*" means Cash in the amount of $100,000.00.

4922-0660-6194

141.    "***Prepetition ABL Claims***" means any Claim arising under, derived from, secured by, based on, or related to the Prepetition ABL Facility or any other agreement, instrument, or document executed at any time in connection therewith any guaranty thereof.

142.    "***Prepetition ABL Credit Agreement***" means that certain *Fourth Amended and Restated Credit Agreement*, dated as of September 23, 2022 (as amended by that certain Forbearance and Omnibus Amendment Agreement dated as of September 23, 2025, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

143.    "***Prepetition ABL Credit Documents***" means the Prepetition ABL Credit Agreement, the other Loan Documents (as defined in the Prepetition ABL Credit Agreement), and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date.

144.    "***Prepetition ABL Facility***" means the credit facility evidenced by the Prepetition ABL Credit Documents.

145.    "***Prepetition ABL Lenders***" means the lenders from time-to-time party to the Prepetition ABL Credit Documents.

146.    "***Prepetition ABL Liens***" means the senior, first priority, security interest in and continuing lien on the Prepetition Collateral granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties in connection with the Prepetition ABL Credit Documents.

147.    "***Prepetition Collateral***" means substantially all of the Prepetition Superpriority Borrower's and the Prepetition Superpriority Guarantors' assets and property, including a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the Collateral (as defined in the Prepetition Superpriority Credit Agreement) (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.

148.    "***Prepetition Credit Agreements***" means, collectively, the Prepetition Superpriority Credit Agreement, the Prepetition ABL Credit Agreement, and the Prepetition 2L Credit Agreement.

149.    "***Prepetition Secured Parties***" means the Prepetition Superpriority Agent, the Prepetition Superpriority Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition 2L Agent and the Prepetition 2L Lenders.

150.    "***Prepetition Senior Secured Parties***" means the Prepetition Superpriority Agent, the Prepetition Superpriority Lenders the Prepetition ABL Agent and the Prepetition ABL Lenders.

151.    "***Prepetition Sponsor Claim***" means any General Unsecured Claim that arises from, is related to, or is asserted by or on behalf of the Supporting Sponsor Parties.

73

4922-0660-6194

152.    *"Prepetition Superpriority Agent"* means JPMorgan Chase Bank, N.A., solely in its capacity as administrative agent and collateral agent under the Prepetition Superpriority Facility (in such capacity, together with its successors and permitted assigns).

153.    *"Prepetition Superpriority Borrower"* means the borrower under the Prepetition Superpriority Credit Agreement.

154.    *"Prepetition Superpriority Claims"* means any Claim arising under, derived from, secured by, based on, or related to the Prepetition Superpriority Facility or any other agreement, instrument, or document executed at any time in connection therewith any guaranty thereof.

155.    *"Prepetition Superpriority Credit Agreement"* means that certain *Term Loan Credit Agreement*, dated as of September 23, 2025 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date).

156.    *"Prepetition Superpriority Credit Documents"* means the Prepetition Superpriority Credit Agreement, the other Loan Documents (as defined in the Prepetition Superpriority Credit Agreement), and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date.

157.    *"Prepetition Superpriority Facility"* means the credit facility evidenced by the Prepetition Superpriority Credit Documents.

158.    *"Prepetition Superpriority Guarantors"* means the guarantors party to the Prepetition Superpriority Credit Agreement.

159.    *"Prepetition Superpriority Lenders"* means the lenders from time-to-time party to the Prepetition Superpriority Credit Documents.

160.    *"Prepetition Superpriority Loans"* means the loans under the Prepetition Superpriority Facility.

161.    *"Priority Tax Claim"* means a Claim held by a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

162.    *"Priority Tax Claim Reserve"* means the aggregate amount of Claims that are (i) included on the Priority Tax Claims Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be a Priority Tax Claim.

163.    *"Priority Tax Claims Schedule"* means the schedule of Claims that the Debtors identify as Priority Tax Claims.

164.    *"Pro Rata"* means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.   Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their face amount for purposes of calculating Pro Rata distributions of property

74

to Holders of Allowed Claims in such Class, and Disputed Claims that do not specify an amount shall be treated as Allowed Claims in an amount to be determined in the reasonable discretion of the Debtors or the Plan Administrator, as applicable, for purposes of calculating Pro Rata distributions of property to Holders of Allowed Claims in such Class.

165. "*Professional*" means any professional Person employed in the Chapter 11 Case pursuant to section 327, 328 or 1103 of the Bankruptcy Code pursuant to an Order of the Bankruptcy Court and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

166. "*Professional Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Professional Claim.

167. "*Professional Claim Reserve Amount*" means the reasonable estimate of the aggregate amount of Allowed Professional Claims relating to the period prior to the Effective Date as well as an estimated aggregate amount related to the preparation, filing and prosecution of fee applications following the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article III.D of the Combined Disclosure Statement and Plan.

168. "*Professional Fee Escrow Account*" means the escrow account at Epiq Corporate Restructuring LLC the Debtors were authorized and directed to fund pursuant to the DIP Orders for the sole purpose of reserving for and paying unpaid Allowed Professional Fees.

169. "*Professional Fee Reserve Account*" means an account funded by the Debtors with Cash as soon as possible after Confirmation and not later than the Effective Date in an amount equal to the Professional Claim Reserve Amount.  For the avoidance of doubt, (i) to the extent that the Professional Fee Reserve Account is not sufficient to satisfy in full all Allowed Professional Claims, such Allowed Professional Claims shall nevertheless be paid in full in Cash by the Plan Administrator from other available Cash in the Claims Reserve prior to making any distributions to the Holders of Allowed Claims, and (ii) any fees and expenses by Professionals in connection with preparing fee applications shall be paid by the Plan Administrator from the Professional Fee Reserve Account or, if exhausted, from other available Cash in the Claims Reserve prior to making any distributions to the Holders of Allowed Claims.

170. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

171. "*Purchaser*" means the Entity or Entities which acquired the Acquired Assets in connection with the 363 Asset Sale.

172. "*Qualified Bid*" has the meaning set forth in the Bidding Procedures Order.

4922-0660-6194

173.   "*Refinancing Process*" means the prepetition process of attempting to refinance the Prepetition ABL Credit Agreement described in Art. I(D)(1)(c) of the Combined Disclosure Statement and Plan.

174.   "*Rejection Damages Bar Date*" means the deadline to File a Proof of Claim for damages relating to the rejection of an Executory Contract or Unexpired Lease, which, pursuant to the Bar Date Order, is the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Central Time) on the date that is 30 days after service of an Order approving rejection of any Executory Contract or Unexpired Lease of the Debtors.

175.   "*Related Party*" means, with respect to any Entity, such Entity's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective managed accounts or funds or investment vehicles, and each of their respective current and former direct and indirect equity holders, officers, directors, managers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in each case acting in such capacity.

176.   "*Released Party*" means each of the following solely in its capacity as such: (a)(i) the Debtors; (ii) the Estates; and (iii) with respect to each Debtor, each Debtor's directors, managers, members, officers, principals, Independent Member, committees (including executive committees or any special committees) and their respective members, employees, predecessors, successors, assigns, subsidiaries, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (including its Professionals); (b)(i) the DIP Agent; (ii) the DIP Lenders; (iii) the Prepetition ABL Agent; (iv) the Prepetition ABL Lenders; (v) the Prepetition Superpriority Agent; (vi) the Prepetition Superpriority Lenders; (vii) the Prepetition 2L Lenders; (viii) the Prepetition 2L Agent; (ix) the Supporting Sponsor Parties, (x) each Holder of a Claim or Interest who votes in favor of the Combined Disclosure Statement and Plan; and (xi) each Related Party of each Entity in clauses (b)(i) through (b)(x); and  (c)(i) the Committee and its members, each in their capacities as such; and (ii) with respect to the Committee, its retained Professionals, including its attorneys, and financial advisors; *provided, however*, that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases set forth in Article IX of the Combined Disclosure Statement and Plan; or (y) timely objects to the releases set forth in Article IX of the Combined Disclosure Statement and Plan and such objection is not resolved before Confirmation.

177.   "*Releasing Parties*" means each of the following, solely in its capacity as such: (a)(i) the Debtors; and (ii) the Estates; (b)(i) the DIP Agent; (ii) the DIP Lenders; (iii) the Prepetition ABL Agent; (iv) the Prepetition ABL Lenders; (v) the Prepetition Superpriority Agent; (vi) the Prepetition Superpriority Lenders; (vii) the Prepetition 2L Lenders; (viii) the Prepetition 2L Agent; (ix) the Supporting Sponsor Parties; (x) all Holders of Claims and Interests that vote to accept the Combined Disclosure Statement and Plan but do not opt out of granting the releases set forth herein; (xi) all Holders of Claims or Interests whose vote to accept or reject the Combined Disclosure Statement and Plan is solicited but that do not vote either to accept or to reject the Combined Disclosure Statement and Plan and do not opt out of granting the releases set forth herein; (xii) all Holders of Claims or Interests that are presumed to accept the Combined Disclosure

4922-0660-6194

Statement and Plan but do not opt out of granting the releases set forth herein; (xiii) with respect to each of the foregoing parties in clauses (b)(i) through (b)(xii), each of such Entity's current and former Affiliates; (xiv) with respect to each of the foregoing parties in clauses (b)(i) through (b)(xii), each of such Entity's Related Party for which such Entity is legally entitled to bind such Related Party to the releases contained in the Combined Disclosure Statement and Plan under applicable law (in each case, solely in its capacity as such); and (c)(i) the members of any statutory committee, including the Committee, appointed in the Chapter 11 Cases and (ii) such committee's Professionals.

178.   "***Residual Payment***" means residual cash or other property, whether held by the Post-Sale Estates or in escrow pursuant to the Combined Disclosure Statement and Plan, including (i) any remaining amounts in the Professional Fee Reserve Account after all Allowed Professional Claims have been paid in full, (ii) any remaining amounts not applied to the Net Working Capital Adjustment under the 363 Asset Purchase Agreement, and (iii) any other amounts held by the Plan Administrator and Post-Sale Estates after the Effective Date in excess of the Wind-Down Budget budgeted amounts for any time after the Effective Date.

179.   "***Required Lenders***" means the DIP Lenders until the DIP Facility is paid in full, the Prepetition ABL Lenders until the Prepetition ABL Claims are paid in full and the Prepetition 2L Lenders until the Prepetition 2L Claims are paid in full.

180.   "***Retained Causes of Action***" means those Causes of Action identified on the Schedule of Retained Causes of Action.  The Retained Causes of Action will not include any Acquired Assets or Causes of Action released pursuant to the Combined Disclosure Statement and Plan or by separate agreement of the Debtors and approval of the Bankruptcy Court.

181.   "***Retained Executory Contracts and Unexpired Leases***" means those Executory Contracts and Unexpired Leases identified on the Schedule of Retained Executory Contracts and Unexpired Leases.

182.   "***Sale Order***" means the Order approving the sale of the Acquired Assets [Docket No. 270].

183.   "***Sales Process***" means, together, the sales process for the Debtors' Assets conducted pursuant to the Bidding Procedures Order and the sales process described in Art. I(E) of the Combined Disclosure Statement and Plan.

184.   "***Schedule of Retained Causes of Action***" means the schedule of Retained Causes of Action that are to be retained by the Debtors and vested in the Post-Sale Estates, which schedule will be filed with the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

185.   "***Schedule of Retained Executory Contracts and Unexpired Leases***" means the schedule of Retained Executory Contracts and Unexpired Leases that are to be retained by the Debtors and vested in the Post-Sale Estates, which schedule will be filed with the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

4922-0660-6194

186.   "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

187.   "*Second Forbearance Agreement*" means that certain *Second Forbearance to Term Loan Credit Agreement* dated as of November 25, 2025, by and among the Borrower, the Guarantors party thereto, lenders party thereto, and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent.

188.   "*Secured*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Combined Disclosure Statement and Plan as a Secured Claim.

189.   "*Senior Priority Liens*" means all enforceable, valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case that are senior to the DIP Liens, Prepetition ABL Liens, and Prepetition 2L Liens as determined by a Final Order (which may include the Final DIP Order or the Confirmation Order) or by agreement between the Holder of such Lien and the Debtors or the Plan Administrator (in each case, with the consent of the Required Lenders).

190.   "*Senior Priority Lien Claims*" means any Claims Secured by Senior Priority Liens.

191.   "*Senior Priority Lien Claims Reserve*" means the aggregate amount of Claims that are (i) included on the Senior Priority Lien Claims Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be a Senior Priority Lien Secured Claim*.*

192.   "*Senior Priority Lien Claims Schedule*" means the schedule of Claims that the Debtors identify as Senior Priority Lien Claims.

193.   "*SC*" means Service Compression LLC.

194.   "*Solicitation Package*" means all ballots, notices, and other materials used by the Debtors in respect of the solicitation of votes to accept or reject the Combined Disclosure Statement and Plan.

195.   "*Stalking Horse Agreement*" means the stalking horse agreement between the Debtors and SC.

196.   "*Stalking Horse Bid*" means the bid submitted by SC prior to the Petition Date and designated as the Stalking Horse Bid under the Bid Procedures Order.

78

4922-0660-6194

197.  "***Stalking Horse Bidder***" means SC.

198.  "***Statutory Fees***" means any fees due and payable pursuant to 28 U.S.C. § 1930, together with the statutory rate of interest set forth in 31 U.S.C. § 3717 to the extent applicable.

199.  "***Subordinated Claim***" means any Claim against a Debtor arising from rescission of a purchase or sale of a Security in any Debtor or an Affiliate of any Debtor, purchase or sale of such a Security, or reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

200.  "***Supporting Sponsor Parties***" means each of Energy Spectrum Partners VIII LP, Energy Spectrum Capital VIII LP, ESP Investment Advisors LLC, and Energy Spectrum Securities Corporation.

201.  "***Tax***" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, gross margin, sales, use, ad valorem, value added, transfer, franchise, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, escheat, unclaimed property or windfall, custom, duty or other tax, governmental fee or like assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

202.  "***Third Forbearance Agreement***" means that certain *Third Forbearance to Term Loan Credit Agreement* dated as of December 17, 2025, by and among the Borrower, the Guarantors party thereto, lenders party thereto, and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent.

203.  "***U.S.***" means the United States of America.

204.  "***U.S. Trustee***" means the Office of the United States Trustee for the Southern District of Texas.

205.  "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

206.  "***Unimpaired***" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

207.  "***Unsecured***" means, with respect to a Claim, not Secured.

208.  "***V&E***" means Vinson & Elkins LLP.

209.  "***Voting Deadline***" means **June 18, 2026 at 5:00 p.m. (CT)** (unless such time is extended by the Debtors).

4922-0660-6194

210.  "***Wind Down***" means the process following the Effective Date for making distributions pursuant to the Combined Disclosure Statement and Plan; liquidating or abandoning any Non-Vesting Assets; pursuing, settling, or abandoning Causes of Action; implementing the Dissolution Transactions; and winding-down, dissolving, and liquidating the Estates.

211.  "***Wind Down Budget***" means the budget agreed to by the Prepetition ABL Agent and pursuant to which the Plan Administrator shall (i) resolve all Disputed Claims, (ii) make all distributions to Holders of Allowed Claims in accordance with the terms of the Combined Disclosure Statement and Plan, (iii) otherwise implement the Wind Down; and (iv) otherwise implement the Combined Disclosure Statement and Plan and carry out its duties hereunder subject to and to the extent set forth in the Combined Disclosure Statement and Plan, the Confirmation Order, or any other order of the Bankruptcy Court entered in connection therewith; provided, that in no event shall the amounts included in the Wind Down Budget be less than the Wind Down Budget Amount.

212.  "***Wind Down Budget Amount***" means the amount required for the Plan Administrator to implement the Wind Down and perform the duties and responsibilities described in section V(F)(1) of the Combined Disclosure Statement and Plan, and as agreed to by the Prepetition ABL Agent.

213.  "***Winning Bidder***" has the meaning set forth in the Bidding Procedures Order.

## B.  Rules of Interpretation.

For purposes hereof: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of the Combined Disclosure Statement and Plan; (viii) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the rights and obligations arising pursuant to the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Combined Disclosure Statement and Plan; (x) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

80

(xi) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Docket; (xiii) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xiv) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (xv) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (xvi) any immaterial effectuating provisions may be interpreted by the Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Combined Disclosure Statement and Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xvii) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

Dated:  May 15, 2026

E3 Compression Holdings LLC,
on behalf of itself and all other Debtors

By:     /s/  Ben Chesters
        Ben Chesters
        Chief Restructuring Officer

81

4922-0660-6194

**EXHIBIT A**

**Liquidation Analysis**[1]

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan

**Introduction**

The "best interests" test, section 1129(a)(7) of the Bankruptcy Code, requires the Bankruptcy Court to find, as a condition to confirmation of the Combined Disclosure Statement and Plan, that each Holder of a Claim or Interest in each Class that is Impaired (an "***Impaired Class***," and each Holder of a Claim or Interest in such Classes, a "***Holder of an Impaired Claim or Interest***") has either (a) voted to accept the Combined Disclosure Statement and Plan or (b) received or retained under the Combined Disclosure Statement and Plan property of a value that is not less than the amount such Holder would receive or retain in a hypothetical liquidation under chapter 7 of the Bankruptcy Code (the "***Liquidation Analysis***").

The Debtors, with the assistance of their restructuring advisor, Ankura Consulting Group, LLC, and other advisors, prepared the Liquidation Analysis to include: (a) estimated cash proceeds that a chapter 7 trustee (the "***Trustee***") would generate if the Debtors' Chapter 11 Cases were converted to chapter 7 cases on the assumed Conversion Date (as defined below) and the remaining Assets of the Debtors' Estates were liquidated under chapter 7 of the Bankruptcy Code; (b) estimated distributions that each Holder of an Impaired Claim or Interest would receive from the liquidation proceeds under the Combined Disclosure Statement and Plan; and (c) a comparison of the estimated distribution and recovery that each Holder of an Impaired Claim or Interest would receive under a chapter 7 liquidation to the distribution and recovery under the Combined Disclosure Statement and Plan.

The Liquidation Analysis is based upon certain assumptions, and, as such, certain aspects may be different from those represented in the Combined Disclosure Statement and Plan. The Liquidation Analysis should be read in conjunction with the Combined Disclosure Statement and Plan.

**Statement of Limitations**

The Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in making the determination described above and should not be used for any other purpose.

The determination of the hypothetical proceeds, and costs of the liquidation of the Debtors' Assets, is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business and economic uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results. The Debtors prepared the Liquidation Analysis for the sole purpose of producing a reasonable, good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code after conversion of the Chapter 11 Cases. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis.  Additionally, the Debtors have not estimated, and the Liquidation Analysis does not take into account:  (a) the tax consequences that may result from the liquidation of the Debtors' Assets under chapter 7 of the Bankruptcy Code; and (b) the avoidance of any prepetition liens and recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions.

**ACCORDINGLY, WHILE DEEMED REASONABLE BASED ON THE FACTS CURRENTLY AVAILABLE, NEITHER THE DEBTORS NOR THEIR PROFESSIONALS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules of Assets and Liabilities and Proofs of Claim that have been filed. In addition, the Liquidation Analysis includes estimates for Claims that are not currently asserted in the Chapter 11 Cases or that are currently contingent, which may or may not be asserted and Allowed in a chapter 7 liquidation. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analysis.

Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Combined Disclosure Statement and Plan.

**NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

**Basis of Presentation**

The Debtors prepared the Liquidation Analysis assuming the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code on or about June 25, 2026 (the "*Conversion Date*").  The Debtors have assumed that the Conversion Date is a reasonable proxy for the anticipated Effective Date.  The *pro forma* values referenced herein are projected as of the Conversion Date and utilize the Debtors' forecasted cash flow over the projection period to the assumed Conversion Date.

Unless otherwise specified, the Liquidation Analysis is based on the Debtors' remaining Assets as of the Conversion Date, and compares projected distributions under the Combined Disclosure Statement and Plan against those in a hypothetical chapter 7 liquidation.

The Debtors' Combined Disclosure Statement and Plan contemplates the appointment of a Plan Administrator to effectuate the reconciliation of Claims, distributions to Holders of Allowed Claims, and the winddown of the Estates after the Effective Date. As set forth in the Combined Disclosure Statement and Plan, substantially all of the Debtors' Assets were sold pursuant to the 363 Asset Sale.  Pursuant to the Sale Order, the Debtors retained a portion of the Net Sale Proceeds resulting from the 363 Asset Sale as agreed between the Debtors, the Prepetition ABL Agent, and the Committee (the "*Holdback Amount*").   The Combined Disclosure Statement and Plan incorporates a Global Settlement by and among the Debtors, the Prepetition ABL Secured Parties, and the Committee.  Under the terms of the Global Settlement, the Debtors, the Prepetition ABL Secured Parties, and the Committee agreed to utilize a portion of the Holdback Amount for distribution to the Holders of the Allowed General Unsecured Claims in an amount equal to the

lesser of (a) $500,000 and (b) fifty-percent (50%) of the quantum of all Allowed General Unsecured Claims, subject to certain exclusions described in the Combined Disclosure Statement and Plan, to be implemented through the Combined Disclosure Statement and Plan.  In addition, pursuant to the Global Settlement, in exchange for the other consideration provided thereunder, the Prepetition ABL Secured Parties may waive any deficiency claims.

The terms and features of the Global Settlement described above would not materialize in a chapter 7 scenario.  Estate Assets would instead be utilized to fund the payment of Trustee fees, professional fees payable to attorneys, other professionals, and other persons engaged by the Trustee, and other Administrative Claims arising in the chapter 7 cases to fund the liquidation and wind-down of the Estates. As a result, the recoveries available to Holders of Impaired Claims or Interests would be reduced in chapter 7 as compared to chapter 11. The Global Settlement therefore represents a critical component of the Combined Disclosure Statement and Plan, as it provides for distributions to Holders of Allowed General Unsecured Claims that would not otherwise be available in a chapter 7 liquidation scenario.

In the event of a chapter 7 liquidation, on the Conversion Date, it is assumed that the Bankruptcy Court would appoint a Trustee to oversee the liquidation of the Debtors' Estates. Under section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally in a distressed process) as is compatible with the best interests of parties-in-interest.  Although it is expected that the Trustee would seek to accomplish a similar liquidation of the Debtors' remaining Assets, the Trustee would be incentivized to do so on an expedited timeline that may yield less proceeds as compared to a chapter 11 scenario.  In addition, the Trustee would be required to address the disposition of certain offshore assets held by the Estates, complete the remaining obligations of the Estates and reconciliation steps under the Asset Purchase Agreement, and complete other wind-down tasks.

The liquidation of the Debtors' Estates is assumed to occur through the disposition of the Debtors' remaining Assets, and the Cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with applicable law, including, among other things: (a) fees due to the Trustee; (b) professional fees attributable to the liquidation and wind-down of the Estates; (c) expenses associated with the liquidation and wind-down of the Estates; (d) costs and expenses of other Administrative Claims that may arise in a chapter 7 liquidation; and (e) prepetition Claims.

In addition, in the event of a chapter 7 liquidation, it is possible that a chapter 7 liquidation would result in increased costs and expenses arising from fees payable to the Trustee and professional advisors to the Trustee. This Liquidation Analysis assumes that the Debtors' costs of liquidation under chapter 7 includes the fees payable to the Trustee as well as those fees that might be payable to attorneys and other professionals that the Trustee might separately engage. The foregoing types of Claims, costs, expenses, fees, and such other Claims that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition priority, secured, and unsecured Claims, or available for distribution to the Holders of Interests.

**Conclusion**

The Liquidation Analysis demonstrates that each Holder of a Claim in an Impaired Class would receive a recovery under the Combined Disclosure Statement and Plan that is not less than

the amount such Holder would receive under a hypothetical chapter 7 liquidation. Therefore, the "best interests" test described above has been met.

**AXIP ENERGY SERVICES, LP et al.**
Liquidation Analysis
*Figures are in $000s*

| # | | Recovery Value | |
|---|---|---|---|
| | | **Chapter 11** | **Chapter 7** |
| **Illustrative Estate Assets** | | | |
| 1. | Cash at Bank | $ 1,819 | $ 1,819 |
| | **Total, Estate Assets** | **$ 1,819** | **$ 1,819** |
| | | | |
| **Illustrative Distribution** | | | |
| | **Administrative Expenses** | | |
| 2. | Chapter 7 Trustee Fees | $ - | $ 71 |
| 3. | Professional Fees | 363 | 852 |
| 4. | Winddown Costs | 856 | 906 |
| | Administrative Claims | - | - |
| | **Total, Administrative Expenses** | **$ 1,219** | **$ 1,828** |
| | **Net Proceeds Available After Administrative Expenses** | **$ 600** | **$ -** |
| | | | |
| | **Secured Claims** | | |
| 5. | DIP Financing | $ - | $ - |
| | Class 1 - Senior Priority Lien Claims | - | - |
| | Class 2 - Other Priority Claims | - | - |
| 6. | Class 3 - Pre-Petition ABL Claims | 100 | - |
| 7. | Class 4 - Pre-Petition 2L Claims | - | - |
| | **Total, Secured Claims** | **$ 100** | **$ -** |
| | **Net Proceeds Available After Secured Claims** | **$ 500** | **$ -** |
| | | | |
| | **Unsecured Claims** | | |
| 8. | Class 5 - General Unsecured Claims | $ 500 | $ - |
| | Class 6 - Intercompany Claims | - | - |
| | Class 7 - Subordinated Claims | - | - |
| | Class 8 - Intercompany Interests | - | - |
| | Class 9 - E3 Holdings Interests | - | - |
| | **Total, Unsecured Claims** | **$ 500** | **$ -** |
| | **Remaining Distributable Value After Unsecured Claims** | **$ -** | **$ -** |

*Disclaimer: This Liquidation Analysis was prepared by Ankura Consulting Group, LLC as restructuring advisor to the Debtors, with the assistance their other advisors, solely for the purpose of demonstrating compliance with the 'best interests of creditors' test under the Bankruptcy Code. The Analysis is necessarily speculative and based on estimates and assumptions subject to significant uncertainty. The Debtors believe that any analysis of a hypothetical liquidation is inherently uncertain. There can be no assurance that actual results would not vary materially from those presented herein. THE DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN. THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH HEREIN SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THIS ANALYSIS.*

**Notes:**

**General Assumption —** This Liquidation Analysis reflects estimated asset recoveries and distributions as of the proposed effective date (June 25, 2026). The sale of substantially all assets has been consummated in both scenarios. Administrative Expenses shown in the analysis represent forward-looking obligations to be satisfied from available post-effective proceeds.

**1. Cash at Bank —** Estimated cash balance as of the proposed effective date calculated using budgeted weekly cash flows per the Cash Collateral Budget, Docket 342.

**2. Chapter 7 Trustee Costs —** Computed per Section 326(a) of the Bankruptcy Code on post-effective date disbursements.

**3. Professional Fees —** Estimated post-effective date professional fees through the completion of the wind-down, retained by the Plan Administrator in Chapter 11 and the Trustee in Chapter 7.  The Chapter 7 amount reflects a premium above the Chapter 11 amount representing: (i) one-time conversion costs, including retention of legal and financial advisors; and (ii) inefficiencies arising from the absence of institutional knowledge of the estates, including the trustee's need to independently diligence post-closing APA obligations and unresolved offshore assets, resulting in duplicative diligence and extended administration timelines.

**4. Wind-Down Costs —** Estimated post-effective date administrative costs, including APA post-closing obligations, U.S. Trustee quarterly fees, Epiq post-closing fees, final tax returns, and entity dissolution. Chapter 7 wind-down costs would likely be higher than reflected, as a Chapter 7 trustee would need to independently diligence APA post-closing obligations and determine the treatment of offshore assets rather than abandoning them pursuant to the plan, making this assumption conservative.

**5. DIP Financing —** Repaid in full ($96.5M) on April 15, 2026 in connection with the closing of the Service Compression sale, inclusive of the Roll-Up Prepetition ABL Loans and Roll-Up Prepetition Super priority Obligations.

**6. Class 3 — Prepetition ABL Claims —** Chapter 11 recovery reflects the distribution to Prepetition ABL as provided in the Combined Disclosure Statement and Plan, Docket 339. Chapter 7 reflects nil recovery as available proceeds are fully exhausted by Administrative Expenses prior to any distribution to secured creditors. $35.1M was repaid on April 15, 2026 in connection with the closing of the Service Compression sale.

**7. Class 4 — Prepetition 2L Claims —** No recovery in either scenario.  Since petition date, $950K in total payments have been made pursuant to the settlement under the DIP Financing Order.

**8. Class 5 — General Unsecured Claims —** Chapter 11 recovery reflects the UCC settlement, equal to the lesser of 50% of claims or $500K. Chapter 7 reflects $0 recovery as all proceeds are exhausted before reaching unsecured creditors.